1  **ANDREW CAMERON BAILEY**
   **CONSTANCE BAXTER MARLOW**
2  153 Western Avenue
3  Glendale, CA 91201

4  Phone: (928) 451-2043
   Email: andrew@cameronbaxter.net
5

6  *Plaintiffs in pro per*

7  **ORIGINAL** IN THE UNITED STATES DISTRICT COURT

8
9              **CENTRAL DISTRICT OF CALIFORNIA**



FILED
CLERK, U.S. DISTRICT COURT
APR 1 5 2011
CENTRAL DISTRICT OF CALIFORNIA
BY ___ DEPUTY

10 | **ANDREW CAMERON BAILEY** **CONSTANCE BAXTER MARLOW** | CASE NO. **CV11-3227** (GW (CWx)) |
|---|---|
11 | | |
12 | **Plaintiffs** | |
13 | Vs | |
14 | U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2; WELLS FARGO BANK NA; WELLS FARGO HOME MORTGAGE; WELLS FARGO ASSET SECURITIES CORPORATION; LEHMAN BROTHERS INC; and all persons claiming by, through, or under such person, all persons unknown, claiming any legal or equitable right, title, estate, lien, or interest in the property described in the complaint adverse to Plaintiffs' title thereto; and JOHN DOES "1-10" inclusive, **Defendants** | **VERIFIED COMPLAINT TO QUIET TITLE TO REAL PROPERTY; NOTICE; APPLICATION FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY AND PERMANENT INJUNCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES** Amount in controversy exceeds $75,000 |

22 Pursuant to 28 U.S.C. § 2201(a) and Rule 57 of the Federal Rules of Civil Procedure,

24 Plaintiffs Andrew Cameron Bailey and Constance Baxter Marlow allege as follows:



– 1 –

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred on this Court by 28 U.S.C. § 2201(a).

2.    Plaintiffs' action for declaratory relief is authorized by Rule 57 of the Federal Rules of Civil Procedure.

3.    This Court has supplemental jurisdiction over Defendant's state law claims pursuant to 28 U.S.C. § 1367.

4.    This Complaint is also filed under the Truth in Lending Act, 15 U.S.C. § 1601 ("Act") to enforce the Plaintiff's right to rescind a consumer credit transaction, to void the Defendants' security interest in the Plaintiff's home, and to recover statutory damages, reasonable attorney's fees and costs by reason of the Defendant's violations of the Act and Regulation Z, 12 C.F.R. § 226 ("Regulation Z").

**Background Material Facts**

5. Plaintiffs reside in Los Angeles County, California.

6. The events giving rise to this lawsuit occurred in Los Angeles County, California.

7. The amount in controversy is over $75,000.00.

8. Defendant US BANK NA ("US Bank") is, and at all times herein mentioned, was a Corporation organized and existing under the laws of the State of Delaware, and doing business in the State of California

9. Defendant WELLS FARGO BANK NA, a/k/a WELLS FARGO HOME MORTGAGE; a/k/a WELLS FARGO ASSET SECURITIES CORPORATION (collectively "Wells") is, and at all times herein mentioned, was a Corporation organized and existing under the laws of the State of South Dakota and doing business in the State of California

10. Defendant Lehman Brothers, Inc, ("Lehman") is, and at all times herein mentioned, was a Corporation or bankrupt Corporation organized and existing under the laws of the State of New York, and doing business in the State of California

11. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES "1-10", inclusive, and therefore sue these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained.

12. Plaintiffs are at all times herein mentioned the lawful resident owners of the property located at 153 Western Avenue, Glendale, CA 91201.

13. The subject property (the "Property") is legally described as: LOT 4, BLOCK 6, TRACT NO. 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN BY THE MAP ON FILE IN BOOK 143 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

14. Plaintiff Andrew C. Bailey filed for Chapter 11 protection in the United States Bankruptcy Court for the District of Arizona on or about May 28, 2009. Case No: 2:09-bk-06979-PHX-RTBP. The Chapter 11 case is ongoing.

15. The Bankruptcy Court granted defendant Wells, as the alleged owner of the promissory note, relief from the automatic stay on or about October 2, 2009.

16. The record shows that, as the result of the securitization of the plaintiffs' loan,

defendant Wells was not the owner of the promissory note on or about October 2, 2009 and had not been such since February 27, 2006.

17. Plaintiff's companion Adversary Case No: 2:09-ap-01727-RTBP filed on December 23, 2009 against these same defendants was dismissed without discovery or evidentiary hearing. Defendants avoided all discovery including Plaintiff's interrogatories and requests for production of documents.

18. The Property was sold pursuant to a credit bid at Trustee's Sale on August 24, 2010. Defendant Wells Fargo conducted the nonjudicial foreclosure as the alleged beneficiary, but a different party, Defendant US Bank, was the beneficiary of record.

19. A Trustee's Deed Upon Sale was recorded at the Los Angeles County Recorder's Office on or about September 14, 2010 granting title to US Bank NA as Trustee for WFMBS 2006-AR2.

20. Plaintiffs are informed and believe and thereon allege that the foreclosure was wrongful and that the Trustee's Deed Upon Sale is defective and fraudulent.

21. This complaint is supported by the included Memorandum of Points and Authorities, and Exhibits "A" "B" "C" and "D".

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**FIRST CAUSE OF ACTION**

**TO QUIET TITLE**

(Against All Defendants)

Plaintiffs re-allege paragraphs 1-21

22. The basis of Plaintiffs' title is a Grant Deed dated August 5, 2005 (attached hereto as Exhibit "A") granting the Property in fee simple to Plaintiffs and recorded on September 28, 2005 in the official records of Los Angeles County, CA as Instrument # 20052336464 APN # 5626-005-004.

23. There is slander of Plaintiffs' title and a cloud on Plaintiffs' title. Plaintiffs are informed and believe and on such information and belief allege that defendants US Bank, Wells, and Lehman claim or appear to claim an interest adverse to Plaintiffs in the Property as purported holders of a Deed of Trust against the subject property.

24. Some of the other known and unknown defendants described as DOES "1 – 10" as set forth above may also claim interests in the Property adverse to plaintiffs as assignees and successors of defendants.

25. Plaintiffs seek to quiet title against the claims of defendants, the claims of successor defendants, the claims of all unknown defendants whether or not the claim or cloud is known to plaintiffs and the unknown, uncertain or contingent claim, if any, of any defendant. The claims of defendants are without any right whatsoever and such defendants have no right, title, estate, lien or interest whatever in the Property or any part thereof.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

26. Plaintiffs seek to quiet title as of the date of this complaint.

**Memorandum of Points and Authorities**

27. Plaintiffs entered into a mortgage loan agreement with "lender" Wells Fargo Bank NA on or about Nov 17, 2005. (Note attached hereto as Exhibit "B")

28. On information and belief, it was intended by Defendants and by parties known and unknown that the plaintiffs' mortgage loan be securitized pursuant to an undisclosed pre-existing Purchase Agreement among Wells Fargo Asset Securities Corporation, Wells Fargo Bank, NA and Lehman Brothers, Inc dated May 10, 2004. (Exhibit 10.2. Mortgage Loan Purchase Agreement.)

29. The fact of this pre-existing agreement among parties unknown to the plaintiffs was not disclosed to Plaintiffs in violation of the Federal Truth in Lending Act (TILA). The party identified as the "lender" in the loan documents (Wells Fargo Bank NA) was in fact not the true lender, who was and remains undisclosed. The funds for the "loan" were provided by an undisclosed party or parties (the lender) not Wells Fargo Bank NA.

30. The "loan" was purportedly sold and transferred pursuant to a Pooling and Servicing Agreement (PSA) into the WFMBS 2006-AR2 Trust, which closed on or about February 27, 2006.

31. On information and belief, as set forth below, the parties to the agreement failed to comply with the terms of their own PSA. The promissory note was not timely assigned, transferred or conveyed to the WFMBS 2006-AR2 Trust. Since the actual securitization

documents provided for a closing and manner of transfer of the loan that was not followed, it is not possible that any entity ever legally received or accepted the transfer.

32. The Deed of Trust was not assigned to the Trustee for the WFMBS 2006-AR2 Trust until three years after the REMIC Trust was closed, in violation of the requirements of the PSA and Prospectus and New York trust law.

33. A fundamental matter before the Court is to determine whether the defendant Trust in this action is in fact the owner of the promissory note secured by a mortgage upon which the defendant has foreclosed and claimed ownership.

34. Discovery and disclosure is required. Much of the evidence required to adjudicate Plaintiffs' claim remains in the exclusive possession and control of the Defendants, including but not limited to the collateral file associated with Plaintiffs' loan.

35. Plaintiffs with their advisors have reviewed the securitization documents including the Trust Agreement, Mortgage Loan Purchase Agreement, and Prospectus for the Trust (collectively the "Trust Agreement" or "PSA").

36. The Trust Agreement which created the Trust that is the defendant in this action is filed under oath with the Securities and Exchange Commission and is available online through the Edgar website at SEC.gov. The internet link to this PSA is:
http://www.secinfo.com/dRSm6.vj6.b.htm - 9wkt

37. Certain industry standards, customs and practices, which existed at the time of this securitization, continue in force through the date of this complaint.

38. Section 5.03 of the PSA ("page" 109 of 121) is the election by the parties to the Trust that the Trust will be governed under the laws of the State of New York. This Court would be required to consider the impact of the actions of any party to the Trust Agreement which violated the Trust Agreement under New York Law.

> *Section 5.03. Governing Law. This Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.*

39. The Trust Agreement sets forth how the trust acquires its assets and sets forth both the powers and the limits of the powers of the Trust.

40. The PSA and the Mortgage Loan Purchase Agreement when read together require that each party to the sale of the mortgage loans endorse each promissory note to the next party in the chain of title until the promissory note is endorsed to the Trustee for the benefit of the certificateholders in the Trust. This requirement is included in Exhibit "L" of the Mortgage Loan Purchase Agreement found in Section 6(a). In the PSA this requirement is found at Section 2.01 (on the 5th "page" of 121.)

41. The Trust Agreement requires a series of endorsements of the promissory note reflective of each party who had an ownership interest in the promissory note culminating with a blank endorsement from the depositor. The industry standards, customs and practices would have required the depositor's endorsement to be filled in, naming the Trustee for the benefit of the Trust. This chain of endorsements, in order to comply with this PSA, would have had to be complete on or before the closing date of this deal but in no event more than 90 days from the closing date pursuant to Section 2.02(a) of the PSA. This would have been

the industry standards, customs and practices, and the absence of these endorsements on this promissory note is very compelling. (Note attached hereto as Exhibit "B")

42. The copy of the promissory note submitted as a "true and correct copy" on July 9, 2009 in support of Wells' motion for stay relief (attached as Exhibit "B") carries no endorsement or allonge assigning it to the Trust or to anyone else. If the note was transferred to the Trust by February 27, 2006, as required by the PSA, then clearly Wells, three and a half years later, was no longer the owner and holder of the note as of July 9, 2009, as its pleadings falsely assert in the stay relief proceedings.

43. The Court should note the contradictions between defendants' position then (Wells allegedly owner of the note as of July 9, 2009) and now (US Bank allegedly owner because note was put into Trust in Feb 2006, three and a half years earlier.) Either the note was lawfully and timely in the trust, or it was not. They can't have it both ways.

44. There is no evidence of timely transfer of the mortgage. Any assignments which would have been necessary to transfer the mortgage to the Trust would have been required to be dated prior to the Trust closing day, February 27, 2006, irrespective of whether they were recorded or not. The mortgage was belatedly assigned to the Trustee as of January 29, 2009, three years after the trust was closed.

45. There is thus no evidence of timely lawful transfer of either the promissory note or the mortgage into this trust.

46. The evidence shows a complete failure of the parties to this securitization to convey this

promissory note to this Trust. The defendants have offered no proof of ownership, and the evidence offered by the defendants clearly demonstrates that this loan was not securitized nor was it transferred to this Trust. Again, since the governing securitization documents provided for a closing and manner of transfer of the loans that was not followed, it is not possible that any entity ever legally received or accepted the transfer.

47. Based upon the public information available and the documents that Plaintiffs have reviewed, it seems certain that the promissory note was never transferred, assigned or conveyed to the Defendant Trust on or before February 27, 2006 or at most 90 days thereafter, as strictly required by the Trust Agreement.

48. Further, any attempt to effect a transfer of the promissory note now would violate the REMIC provisions of the IRS tax code, for three reasons:

(i) First, the loan is in default at this time. Therefore the loan cannot be a "qualified mortgage loan" under the IRS tax code because a qualified mortgage loan is a performing mortgage loan.

(ii) Second, in the event of an attempted transfer to the trust now, years after the closing day and long after the certificates were issued to the investors, the defendant would be claiming to have transferred an asset to a trust that has by its own terms been closed for more that four years.

(iii) Third, the promissory note was not endorsed to the trust by the depositor and is devoid of the chain of endorsements required by the Trust Agreement and which any reasonable market participant would expect to be present for the purposes of establishing the series of true sales set forth in the PSA to establish the chain of title on the promissory note for the purposes of bankruptcy remoteness. Such an attempt would be an extreme

deviation from the industry standards, customs and practices which prevailed at all times material to this transaction and which prevail today.

49. Two related cases and relevant discussion:

(i) *In Re: Horace vs LaSalle Bank NA*, March 25, 2011, Circuit Court of Russell County, Alabama, Case no. 57-CV-2008-000362.00 (finding that no securitization of the Horace loan occurred. The trustee for the securitization trust had no authority or standing to foreclose or take title. LaSalle Bank NA permanently enjoined from foreclosing.).

(ii) *In Re Kemp vs Countrywide Bank,* November 16, 2010, US Bankruptcy Court, District of New Jersey, Case no. 08-18700-JHW (finding that the note was not properly endorsed to the transferee and was never placed in the transferee's possession. [t]he note, as a negotiable instrument, is not enforceable... under these circumstances.)

On direct examination, [Countrywide declarant Linda] DeMartini testified that it was "not the custom for the notes to go the trust but for the original notes to stay with us [Countrywide]." She also testified that Countrywide "had possession of the original documents [in Kemp] from the outset" up to and including the day of the hearing. She also clearly testified that Countrywide transferred the "rights" to the Trust, but not "the physical documents," without any testimony or knowledge as to how said transferred occurred, She also testified that this "was standard operating procedure in the mortgage business." The Judge stated that regardless of whether it was standard operating procedure, such practices are invalid under the law pursuant to the UCC. The judge gave Countrywide more time to try to establish ownership of the Trust by the transfer without negotiation exception or pursuant to the Pooling and Servicing Agreement, pursuant to some hypothetical special provision in the PSA, the

existence of which neither DeMartini nor Countrywide's attorney could establish. Because the Note had never left possession of Countrywide, as was standard operating procedure in all cases, the transfer without negotiation exception would obviously not work.

Additionally, as was made firmly clear by Kemp's attorney at the hearing, the PSA would be of no help, because it states what everyone knowledgeable in the field knows to be the case: it is impossible for the originator to transfer a note directly to the Trust. They all require that the note be physically transferred from the originator to the sponsor, from the sponsor to the depositor, and from the depositor to the trust, with all intervening endorsements, after which the Trustee delivers the note and other documents to the custodian for the Trust. Moreover, the loan related to a Trust that was formed and closed out in 2006. Evidence in the form of a fabricated allonge or any other form of transfer documentation created in 2009 cannot under any circumstances transfer to loan to such a trust in 2009, nor be backdated.

**Plaintiffs Have the Right to Raise Securitization Issue**

50. As to the right-to-raise-the-ownership issue, the Plaintiffs do not have to be beneficiaries of the PSA to raise the issue of the trust's ownership of their loan. The Plaintiffs are not trying to enforce the Trust Agreement, they are simply showing that the foreclosing trust has no interest in the loan and consequently does not have standing. Standing is a threshold issue to any litigation and the Plaintiffs axiomatically have the right to raise it.

51. *Horace* is just one example of thousands, as here, where servicers were trying to force through a foreclosure in the name of a trust that clearly had no interest in the underlying loan according to the terms of their own PSA. This conduct is a fraud on the borrower, a fraud on the investors and a fraud on the court. In *Horace*, Judge Johnson recognized the utter failure of the securitization transaction and would not overlook the fact that the trust had no interest in this loan.

52. In *Horace*, Judge Johnson stopped a fraud in progress. This Court should consider the very serious issues that are easily obscured in the flood of foreclosures overwhelming our courts and reject the systemic and ongoing fraud that is being perpetrated by the trustees and mortgage servicers. Until the courts actively push back against the massive documentary fraud being shoveled at them by the trustees and mortgage servicers, this fraudulent conduct will continue.

**Additional Issues of Material Fact**

53. There are a number of irregularities, issues of material fact, and additional causes of action that Plaintiffs reserve the right to raise in later pleadings, if and when necessary, including but not limited to:

54. The August 24, 2010 foreclosure sale upon which Defendant US Bank bases its claim was conducted by a party which was neither the beneficiary of record nor the authorized agent of the beneficiary of record. The foreclosure sale is void.

55. Notice requirements were not met. The December 22, 2008 Notice of Default and August 3, 2010 Notice of Trustee's Sale recorded with the Los Angeles County Recorders Office are defective because the January 23, 2009 Substitution of Trustee was defective. The fiduciary trustee appears to have improperly substituted itself as the foreclosing trustee.

56. The assignment of the mortgage to US BANK occurred on January 29, 2009. Prior to that date, neither US BANK nor the WFMBS 2006-AR2 Trust is mentioned in any of the publically recorded documents, despite the implied assertion (and the requirement of the PSA) that Plaintiff's note was sold to and placed into the Trust on or before February 26, 2006. There are three undated, unrecorded true sales in the (broken) chain of title.

57. The Bankruptcy Court lifted the automatic stay in reliance upon a Limited Power of Attorney (LPOA)(attached hereto as Exhibit "C"). The July 9, 2009 Motion for Stay Relief was filed by Wells Fargo Bank NA (Wells) who claimed they were the holder and owner of the Note as of the date of filing the motion. When challenged, Wells admitted that the assertion of owner/holder status was false, but claimed alternative authority by virtue of the LPOA. However, the LPOA was a false, backdated instrument improperly fabricated by US Bank on December 11, 2008, one-and-a-half months before the Deed of Trust was assigned to them on January 29, 2009. Furthermore, upon close examination of the document itself, the vague and ambiguous language of the LPOA neither asserts nor confers any authority. The Bankruptcy Court clearly erred in overruling Plaintiff's objection to the false LPOA and sustaining the stay relief on the basis thereof.

58. The Defendants clearly violated California Civil Code § 2923.5. *Inter alia*, the 2923.5 certificate provided to the Plaintiffs by Defendants as evidence of compliance is unsigned

1   and unexecuted, and no box is checked. (Attached hereto as Exhibit "D") Defendants failed

2   to contact or negotiate with Plaintiffs prior to moving forward with foreclosure proceedings.

3

4   **Notice of Pendency of Claim, Supplemental Memoranda, Exhibits and Declarations**

5

6   59. Plaintiffs are preparing and will submit a Notice of Pendency of Claim, and such

7   Supplemental Memoranda, Exhibits and Declarations as may be required to support this

8   Complaint.

9

10  **CONCLUSION**

11

12  A preponderance of the evidence, when fully disclosed in discovery, will show that US

13  Bank NA as Trustee for WFMBS 2006-AR2 has no legitimate claim to title of the Property.

14  Plaintiffs' loan was never lawfully placed in the WFMBS 2006-AR2 trust. Therefore US

15  Bank NA has no interest whatsoever in the Property. There was no securitization and

16  consequently, the foreclosure sale and subsequent Trustee's Deed are defective and

17  fraudulent. The Defendants, and each of them, have no right to title to, or possession of the

18  Property. The Plaintiffs are the sole rightful holders of title to the Property.

19

20  **WHEREFORE**, Plaintiffs pray for judgment against Defendants and each of them, as

21  follows:

22  A. For a declaration and determination that Plaintiffs are the rightful holders of title to the

23  Property and that Defendants herein, and each of them, be declared to have no estate, right,

24  title or interest in said property;

25

B. For an order compelling said Defendants, and each of them, to transfer legal title and right of possession of the subject property to Plaintiffs herein;

C. For a judgment forever enjoining said defendants, and each of them, from claiming any estate, right, title or interest in the subject property;

D. For costs of suit herein incurred;

E. For such other and further relief as the court may deem just and proper.

Respectfully submitted this April 14th, 2011

_____
Andrew C. Bailey, Plaintiff, Pro Se

_____
Constance B. Marlow, Plaintiff, Pro Se

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## VERIFICATION

**Andrew C. Bailey and Constance B. Marlow**, are the Plaintiffs in the above-titled action. We have carefully researched and prepared the foregoing complaint and know the contents thereof. The same is true of our own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe them to be true. We declare under penalty of perjury that the foregoing is true and correct to the best of our knowledge.

Dated: April 14th, 2011.

Andrew C. Bailey, Plaintiff, Pro Se

Constance B. Marlow, Plaintiff, Pro Se

# SECOND CAUSE OF ACTION

## INJUNCTIVE RELIEF

Plaintiffs re-allege paragraphs 1-59

## NOTICE; APPLICATION FOR THE ISSUANCE OF A TEMPORARY RESTRAINING ORDER AND ORDER TO SHOW CAUSE RE: PRELIMINARY AND PERMANENT INJUNCTIONS; MEMORANDUM OF POINTS AND AUTHORITIES

To all interested parties and their attorneys of record:

Plaintiffs ANDREW CAMERON BAILEY AND CONSTANCE BAXTER MARLOW (hereinafter "Plaintiffs") hereby apply for the issuance of a temporary restraining order for good cause against Defendant U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2 (hereinafter "Defendant") and their agents, officers, employees, partners, successors, and representatives; and all persons acting in concert or participating with them; and each of them restraining and enjoining them from seizing, selling, attempting to sell, or causing to be seized or sold the trust property described in the foregoing Complaint, neither under the power of sale in the deed of trust nor by foreclosure or unlawful detainer action; and an order to show cause why an injunction should not be granted, enjoining Defendants and their agents from taking possession of Plaintiffs' real property located at 153 Western Avenue, Glendale, CA 91201, (hereinafter "Property").

**The request for said order is based upon:**

(1.) Plaintiffs' pending complaint to quiet title to the Property;

(2.) The Defendants' clear violation of California Civil Code § 2923.5

(3.) The Defendants' failure to provide disclosures required by law;

(4.) Rescission of subject Property pursuant to 15 U.S.C. § 1635(a) and Regulation Z § 226.23(a)(3).

(5.)    The Defendants' failure to prove that is has any interest in the Property.

An ex parte application must comply with California Rule of Court 379 which provides that it must be made for good cause. Good cause exists for an order on the ex-parte application because Plaintiffs' real property is unique and Plaintiffs stand to lose the Property pursuant to Defendant's unlawful detainer action, which is currently scheduled to be heard on April 20, 2011 at 8:30 a.m. in the Glendale Superior Court.

This ex parte application is made for good cause on the ground that Plaintiff will suffer great and irreparable injury if the status quo is not preserved until this matter can be adjudicated in a court of law. Additionally, a declaratory judgment in the Plaintiffs' favor will be rendered ineffectual by a seizure of Plaintiffs' home. This application is made based on the Quiet Title Complaint in this case, the Memorandum of Points and Authorities, and on such other arguments and evidence as may be presented by Plaintiffs at the hearing in this matter.

This application is further made for good cause on the grounds it is filed under the Truth In Lending Act, 15 U.S.C. §§ 1601 et seq. ("TILA") to enforce Plaintiffs' right to rescind consumer transactions, to void any security interest in the subject property claimed by defendants, and to recover reasonable attorney's fees and costs by reason of defendant's violations of TILA and Regulation Z, 12 C.F.R. 226 et seq. ("Regulation Z").

Good cause is shown in the attached Memorandum Of Points And Authorities.

Dated April 14th, 2011.

Andrew C. Bailey, Plaintiff, Pro Se

Constance B. Marlow, Plaintiff, Pro Se

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs re-allege paragraphs 1-59

Plaintiffs ANDREW CAMERON BAILEY AND CONSTANCE BAXTER MARLOW (hereinafter "Plaintiffs") hereby apply for the issuance of a temporary restraining order for good cause against Defendant U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2 (hereinafter "Defendant"). Plaintiffs seek a temporary restraining order ("TRO") and the issuance of a preliminary injunction to maintain the status quo and prevent irreparable harm pending judgment in this action. The TRO seeks to prevent U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2 from foreclosing on and taking possession of Plaintiff's property, which is located at 153 Western Avenue, Glendale, CA 91201 (hereinafter "Property"). The need for this emergency relief is caused by the pending unlawful detainer action on the Property brought by the Defendant in California Superior Court, which is set for hearing in the Glendale Courthouse on April 20, 2011 at 8:30 AM.

**The request for said order is based upon:**

(1.) Plaintiffs' quiet title complaint before this Court which will necessarily determine right of possession;

(2.) The Defendants' clear violation of California Civil Code § 2923.5;

(3.) The Defendants' failure to provide disclosures required by law;

1    Preliminary injunctive relief is compelled in order to maintain the status quo

2    pending Plaintiffs' ultimate prevailing on the merits of its claims against all Defendants.

3    The subject property, like any real estate, is unique property. If Plaintiffs do not obtain

4    provisional relief pending judgment, Plaintiffs will be forced to vacate the Property, and

5

6    Defendant will be unjustly enriched as Plaintiffs have contributed over three years of

7    payments on subject Loan.

8    Plaintiffs will prevail on the merits of this action. In addition, if this Application is

9    denied, the interim irreparable harm to Plaintiffs will be substantial as the Property will be

10   lost to foreclosure and money damages will not be sufficient to compensate Plaintiffs.

11   Interim harm to Defendants will be minimal.

12

13

14                          **ARGUMENT**

15

16   **A.     This Court Should Issue a Temporary Restraining Order and Preliminary**

17           **Injunction To Maintain The Status Quo**

18

19           A temporary restraining order has long been recognized by California courts as a

20   means of preserving the status quo pending hearing on an order to show cause. See, e.g.,

21   *Biasca v. Superior Court*, 194 Cal. 366, 367 (1924). In evaluating an application for

22   interim relief, the court must consider: (1) the "likelihood that the plaintiff will prevail on

23   the merits of the trial," and (2) the "interim harm that the plaintiff is likely to sustain if the

24   injunction were denied as compared to the harm that the defendant is likely to suffer if the

25

1  preliminary injunction were issued." *IT Corp. v. County of Imperial,* 35 Cal.3d 63, 69-70

2  (1983).

3       As shown by the facts above and the arguments which follow, Plaintiff will prevail

4  on the merits of this action. If, however, this application is denied, the interim harm to

5  Plaintiff will be substantial whereas any interim harm to Defendants would be relatively

6  minimal. Defendants will merely be delayed in taking the Property until the action to quiet

7  title has been adjudicated.

8

9  **B.**    **Plaintiff Will Likely Prevail on the Merits at Trial**

10

11       In order to obtain a temporary restraining order Plaintiff must demonstrate that "it

12  appears ... that the plaintiff is entitled to the relief demanded." Cal. Civ. Proc. Code

13  §526a(1). That showing is easily met here. Plaintiffs have filed a quiet title complaint

14  against Defendants wherein Plaintiffs allege that Defendants have no interest in the

15  Property and that Defendants failed to make certain disclosures to Plaintiffs which are a

16  per se violation of the Truth in Lending Act. Plaintiffs will prevail pursuant to the

17  following:

18       (1.)    Defendants' clear violation of California Civil Code § 2923.52;

19       (2.)    Defendants' failure to provide disclosures required by law;

20       (3.)    Resolution of the instant action to quiet title will show that Defendants have

21              no interest in the Property.

22

23  **C.**    **Plaintiff Will Suffer Irreparable Harm If a Temporary Restraining Order and**

24      **Preliminary Injunction are not Issued.**

25

1    The Court should exercise its discretion "in favor of the party most likely to be

2    injured ... [i]f denial of an injunction would result in great harm to the plaintiff, and the

3    defendants would suffer little harm if it were granted, then it is an abuse of discretion to

4    fail to grant the preliminary injunction." *Robbins v. Sup.Ct. (County of Sacramento)*, 38

5    Cal. 3d 199, 205 (1985).

6    An injunction may be granted when it appears by the complaint or declarations that

7    the commission or continuance of some act during the litigation would produce great or

8    irreparable injury to a party to the action. California Code of Civ. Proc. §§526(a)(2);

9    *Volpicelli v. Jaret Sydney Torrance Memorial Hosp.,* 109 Cal. App. 3d 242, 248 (1980).

10   If Defendants are not immediately enjoined from taking the Property, Plaintiffs are at risk

11   of losing a unique real property.

12

13   **D.     Plaintiff Does Not Have An Adequate Remedy At Law**

14       As set forth above, if Defendants prevail in their unlawful detainer action against

15   the Property, Plaintiffs and family members will be forced out of their home and will lose

16   a unique property. The loss of a unique, real estate like the Property cannot be adequately

17   compensated by money damages. Real property is sufficiently unique to require the

18   issuance of a preliminary injunction to prevent improper foreclosure and seizure. In

19   general, real property is deemed "unique," so that injury or loss cannot be compensated in

20   damages, and injunctive relief is therefore readily granted. See, e.g., Cal. Civ. Code §

21   3387 (damages presumed inadequate for breach of agreement to convey real property).

22   See for example *Jessen v. Keystone Sav. & Loan Ass'n*, 142 Cal.App.3d 454, 458 (1983)

23   (finding that an injunction to prevent foreclosure was warranted).

24

25   **E.     The Court Has Broad Discretion to Issue A Preliminary Injunction**

1
2
3
4
5
6
7
8
9

The Court's discretion to issue a preliminary injunction is very broad. *Palo Alto-Menlo Park Yellow Cab Co. v. Santa Clara County Transit Dist.*, 65 Cal. App. 3d 121, 132 (1976). This is so because while a permanent injunction is a determination, on the merits, that the plaintiff has prevailed against the defendant on a cause of action and that equitable relief is proper, a preliminary injunction is merely rendered to maintain the status quo while the cause of action is decided. *Art Movers v. Ni West*, 3 Cal. App. 4th 640, 646 (1992); *Dawson v. East Side Union High School Dist.*, 28 Cal. App. 4th 998, 1041 (1994).

## IV. CONCLUSION

10
11
12
13
14
15

As set forth above, it is necessary and proper that the Court grant a temporary restraining order and issue a preliminary injunction to preserve the status quo. If Defendants are not enjoined from taking possession of the Property, Plaintiffs will suffer immediate and irreparable injury with no adequate remedy at law.

16
17
18

Dated: April 14th, 2011.

19
20
21
22

_____
**Andrew C. Bailey, Plaintiff, Pro Se**

23
24

_____
**Constance B. Marlow, Plaintiff, Pro Se**

25

- 24 -

9/28/05

3

**RECORDING REQUESTED BY**
**California Title**
**AND WHEN RECORDED MAIL TO:**

05 2336464

Constance Baxter Marlow  and Andrew Cameron
Bailey
153 Western Avenue
Glendale, CA 91201

Order No.: 05-37548-01
Escrow No.. 20055510-JFJ

A.P.N.: 5626-005-004                                    SPACE ABOVE THIS LINE IS FOR RECORDER'S USE

## GRANT DEED

(26)

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $473.00
☒ computed on full value of property conveyed, or
☐ computed on full value less value of liens or encumbrances remaining at time of sale.
☐ unincorporated area      ☒ city of Glendale                    AND

FOR A VALUABLE CONSIDERATION receipt of which is hereby acknowledged,
John L. Baxter, Trustee of the John L. Baxter Revocable Trust dated 12/9/97

hereby GRANT(S) to Constance Baxter Marlow , an unmarried woman, as to an undivided 50% interest and
Andrew Cameron Bailey, a married man, as his sole and separate property, as to an undivided **
the following described real property in the County of LOS ANGELES, State of California:

Lot 4 in Block 6 of Tract No. 10116, in the City of Glendale, County of Los Angeles, State of California, as per map recorded
in Book 143, Pages 98 and 99 of Maps, in the office of the County Recorder of said County.

** 50% interest, as tenants in common.

Document Date: August 5, 2005
STATE OF CALIFORNIA OREGON )SS
COUNTY OF MULTNOMAH )
On 8/17/05 before me, Pat Kester
personally appeared John L. Baxter

personally known to me (or proved to me on the basis of satisfactory evidence)
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s) or the entity upon behalf of which the person(s) acted, executed
the instrument

WITNESS my hand and official seal

Signature _Patricia C Kester_

The John L. Baxter Revocable Trust dated
December 9, 1997:

_John L. Kester Trustee_

John L. Baxter, Trustee

OFFICIAL SEAL
PATRICIA A. KESTER
NOTARY PUBLIC-OREGON
COMMISSION NO 387875
MY COMMISSION EXPIRES MARCH 11, 2009

MAIL TAX STATEMENTS TO  SAME AS ABOVE or Address Noted Below

| Constance Baxter Marlowe and Andrew Cameron Bailey | 153 Western Avenue | Glendale, CA  91201 |
|---|---|---|
| Name | Street Address | City & State |

SMS Vision Form GD

_Exhibit A_

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE

### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

NOVEMBER 07, 2005      SAN DIEGO          CALIFORNIA

       [Date]                  [City]               [State]

153 WESTERN AVENUE, GLENDALE, CA  91201

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****480,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on JANUARY 01, 2006
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on DECEMBER 01, 2035 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304

or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $ *********2,200.00 . This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

The First P&I Payment Due Date is        01/01/16

0060412178

NMFL #8380 (MS1C) Rev 5/9/2005
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT
                                                      Form 5507 5/04 (rev. 1/05)

 -191N (0501)

VMP Mortgage Solutions, Inc. (800)521-7291

Page 1 of 5             Initials: ACR

 Exhibit B



# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE

*(1-Year Treasury Index - Rate Caps)*
*(Assumable after Initial Period)*

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

NOVEMBER 07, 2005                SAN DIEGO                        CALIFORNIA
      [Date]                                                [City]                                    [State]

153 WESTERN AVENUE, GLENDALE, CA   91201

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****480,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      5.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month on the first day of the month beginning on JANUARY 01, 2006 I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on DECEMBER 01, 2035         , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $ *********2,200.00     . This amount may change in accordance with subsection (C) below.

**(C) Monthly Payment Changes**

The First P&I Payment Due Date is                         01/01/16

0060412178

NMFL #8380 (MS1C) Rev 5/9/2005
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT

 -191N (0501)
    VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5                        Initials: 



Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of DECEMBER, 2010 , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS percentage point(s) ( 2.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than 10.500 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than TWO percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.500 %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.





If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of                    15    calendar days
after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be               5.000 % of
my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 5507 5/04 (rev 7/05)
Initials: _____

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Form 5507 5/04 (rev. 6/05)
Initials:



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ANDREW CAMERON BAILEY                     -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

_____ (Seal)
                                          -Borrower

*[Sign Original Only]*

WHEN RECORDED MAIL TO:

## LIMITED POWER OF ATTORNEY

**U.S. Bank National Association** ("U.S. Bank"), a national banking association organized and existing under the laws of the United States of America, 1 Federal St., Corporate Trust, 3rd Floor, Boston, MA 02110, hereby constitutes and appoints Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc. and in its name, aforesaid Attorney-In-Fact, by and through any officer appointed by the Board of Directors of Wells Fargo Bank, NA, to execute and acknowledge in writing or by facsimile stamp all documents customarily and reasonably necessary and appropriate for the tasks described in the items (1) through (4) below; provided however, that the documents described below may only be executed and delivered by such Attorneys-In-Fact if such documents are required or permitted under the terms of the related servicing agreements and no power is granted hereunder to take any action that would be adverse to the interests of the Trustee of the Holder. This Power of Attorney is being issued in connection with Wells Fargo Bank, N.A., successor by merger to Wells Fargo Home Mortgage, Inc.'s, responsibilities to service certain mortgage loans (the "Loans") held by U.S. Bank in its capacity as Trustee. These Loans are comprised of Mortgages, Deeds of Trust, Deeds to Secure Debt and other forms of Security instruments (collectively the "Security Instruments") and the Notes secured thereby.

1. Demand, sure for, recover, collect and receive each and every sum of money, debt, account and interest (which now is, or hereafter shall become due and payable) belonging to or claimed by U.S. Bank National Association, and to use or take any lawful means for recovery by legal process or otherwise.

2. Transact business of any kind regarding the Loans, and obtain an interest therein and/or building thereon, as U.S. Bank National Association's act and deed, to contact for, purchase, receive and take possession and evidence of title in and to the property and/or to secure payment of a promissory note or performance of any obligation or agreement.

3. Execute bonds, notes, mortgages, deeds of trust and other contracts, agreements and instruments regarding the Borrowers and/or the Property, including but not limited to the execution of releases,

Exhibit C

satisfactions, assignments, and other instruments pertaining to mortgages or deeds of trust, and execution of deeds and associated instruments, if any, conveying the Property, in the interest of U.S. Bank National Association.

4. Endorse on behalf of the undersigned all checks, drafts and/or other negotiable instruments made payable to the undersigned.

Witness my hand and seal this 11th day of December, 2008.

Witness: Marjorie Huang

Witness: Ana Wang

Attest: Paul J. Gobin,
Account Administrator

U.S. Bank National Association, as Trustee

By: _____
James H. Byrnes, Vice President

By: _____
Lorie October, Vice President

FOR CORPORATE ACKNOWLEDGMENT

State of Massachusetts

County of Suffolk

On this 11th day of December, 2008, before me, the undersigned, a Notary Public in and for said County and State, personally appeared James H. Byrnes and Lorie October personally known to me (or proved to me on the basis of satisfactory evidence) to be the persons who executed the within instrument as Vice President and Vice President, respectively of U.S. Bank National Association, and known to me to be the person who executed the within instrument on behalf of the corporation therein named, and acknowledge to me that such corporation executed the within instrument pursuant to its by-laws or a resolution of its Board of Directors.

WITNESS my hand and official seal.

Signature: _____
Catherine R. Brown
My commission expires: 07/11/2014

(SEAL)



Name:   ANDREW CAMERON BAILEY                     T.S. #   20089070810770
PA:     153 WESTERN AVENUE
        GLENDALE, CA 91201

# DECLARATION OF COMPLIANCE

*(California Civil Code Section2923.5(c))*

The undersigned mortgagee, beneficiary or authorized agent hereby declares under penalty of perjury, under the laws of the State of California, as follows:

☐   The mortgagee, beneficiary or authorized agent contacted the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure in compliance with Cal. Civ. Code Section 2923.5.

☐   The mortgagee, beneficiary or authorized agent tried with due diligence but has been unable to contact the borrower to discuss the borrower's financial situation and to explore options for the borrower to avoid foreclosure as required by Cal. Civ. Code Section 2923.5. The following efforts were made:

  ☐   Sent letter by first class mail with toll free number to HUD-certified housing counseling agency.

  ☐   Attempted to contact borrower by phone at least three times at different hours and on different days unless the borrower's primary and secondary phone numbers were diconnected.

  ☐   At least two weeks after attempting telephone contacts, sent letter by certified mail, return receipt requested that included toll free number to HUD-certified housing counseling agency.

☐   The mortgagee, beneficiary or authorized agent was not required to comply with Cal. Civ. Code Section 2923.5 because:

  ☐   The real property is not an owner-occupied single family residence.

  ☐   The loan was not originated between January 1, 2003 and December 31, 2007.

  ☐   The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary or authorized agent.

  ☐   The borrower has contracted with someone whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their loan obligations.

  ☐   The borrower has filed for bankruptcy, and proceedings have not yet been finalized.

WELLS FARGO HOME MORTGAGE

Date: _____          *Original document executed by authorized agent*



ATTACHMENT TO NOTICE OF DEFAULT   P 1

Exhibit D

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
P.O. BOX 961253
FORT WORTH, TX 76161
Telephone:    877-276-1894
Telecopier:    817-699-1484

**December 24, 2008**

FILE NUMBER:        20089070810770
**CONSTANCE BAXTER MARLOW**
**153 WESTERN AVENUE**
**GLENDALE, CA 91201**

Re:    Loan No.:        **0060412178**
       TS #:            **20089070810770**

The current creditor to whom the debt is owed is:   **US Bank National Association, as Trustee for WFMBS 2006-AR2.**   The loan is serviced by **WELLS FARGO HOME MORTGAGE.** FIRST AMERICAN LOANSTAR TRUSTEE SERVICES has been authorized by the Servicer/Creditor to initiate foreclosure proceedings in connection with the foreclosure of a Deed of Trust associated with your real estate loan.

The amount of the debt as of the date of this Notice according to the records of our client is **$499,207.60.**   The amount necessary to bring the loan into good standing and reinstate your mortgage is set forth in the enclosed Notice of Default and Election to Sell Under Deed of Trust.   Because of interest, late charges, and other charges that may vary from day to day, the amount due on the day you pay may be greater.   Hence, if you pay the amount shown above or in the enclosed Notice of Default and Election to Sel Under Deed of Trust, an adjustment may be necessary after we receive your check, in which case we will inform you before depositing the check for collection.   For further information, write the undersigned or call 877-276-1894.

Please be advised that FIRST AMERICAN LOANSTAR TRUSTEE SERVICES may be considered a debt collector attempting to collect the above referenced debt.   Any information obtained from you may be used for that purpose. Federal law gives you thirty days after you receive this letter to dispute the validity of the debt or any part of it.   If you don't dispute it within that period, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will assume that it's valid.   If you do dispute it - - by notifying FIRST AMERICAN LOANSTAR TRUSTEE SERVICES in writing to that effect - - FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will, as required by the law, obtain and mail to you proof of the debt.   And if, within the same period, you request in writing the name and address of your original creditor, if the original creditor is different from the current creditor, FIRST AMERICAN LOANSTAR TRUSTEE SERVICES will furnish you with that information too.

The law does not require FIRST AMERICAN LOANSTAR TRUSTEE SERVICES to wait until the end of thirty-day period before taking action to collect this debt.   If, however, you request proof of the debt or the name and address of the original creditor within thirty days of receipt of this letter, the law requires LoanStar to suspend its efforts (through litigation or otherwise) to collect the debt until FIRST AMERICAN LOANSTAR TRUSTEE SERVICES mails the requested information to you.

The state Rosenthal Fair Debt Collection Practices Act and the Federal Fair Debt Collection Practices Act require that, except under unusual circumstances, collectors may not contact you before 8 a.m. or after 9 p.m.   They may not harass you by using threats of violence or arrest or by using obscene language.   Collectors may not use false or misleading statements or call you at work if they know that you may not receive personal calls at work.   For the most part, collectors may not tell another person, other than your attorney or spouse, about your debt.   Collectors may contact another person to confirm your location or enforce a judgment.   For more information about debt collection activities, you may contact the Federal Trade Commission at 1-877-FTC-HELP or www.ftd.gov.

Sincerely,

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

*Attachment to Notice of Default*
*P 2 (Reverse Side)*

ANDREW CAMERON BAILEY
CONSTANCE BAXTER MARLOW
153 Western Avenue
Glendale, CA 91201

# FOR OFFICE USE ONLY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

ANDREW CAMERON BAILEY
CONSTANCE BAXTER MARLOW

PLAINTIFF(S)

v.

U.S. BANK NA ; WELLS FARGO BANK NA;
WELLS FARGO ASSET SECURITIES CORP;
LEHMAN BROTHERS, INC., *see attached*

DEFENDANT(S).

CASE NUMBER

CV11-3227 (GW (CWx)

SUMMONS

TO: DEFENDANT(S): _____

A lawsuit has been filed against you.

# FOR OFFICE USE ONLY

   Within __21__ days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☑ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, A.C. Bailey / C.B. Marlow pro se _____, whose address is _____153 Western Ave, Glendale, CA 91201_____. If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated: __4-15-11__

By: **TANYA DURANT**

Deputy Clerk

*(Seal of the Court)*1188

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

# FOR OFFICE USE ONLY

CV-01A (12/07)                                SUMMONS

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)

ANDREW CAMERON BAILEY
CONSTANCE BAXTER MARLOW

**DEFENDANTS**

U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2; WELLS FARGO BANK NA a/k/a WELLS FARGO HOME MORTGAGE; a/k/a WELLS FARGO ASSET SECURITIES CORP; LEHMAN BROTHERS INC; DOES 1-10

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)
ANDREW CAMERON BAILEY
CONSTANCE BAXTER MARLOW
153 Western Avenue, Glendale, CA 91201
(928) 451-2043

Attorneys (If Known)
TFLG a Law Firm,
Noah M. Bean, Esq.
2121 2nd Street, Suite C-105
Davis, CA 95618
Attorneys for U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff
☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant
☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☑ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify):
☐ 6 Multi-District Litigation
☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No       ☐ MONEY DEMANDED IN COMPLAINT: $_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Quiet Title, Injunctive Relief   28 USC§2201(a)  Rule 57 FRCP

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | BANKRUPTCY | ☐ 540 Mandamus/ Other | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | FORFEITURE / PENALTY | | PROPERTY RIGHTS |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | CIVIL RIGHTS | ☐ 610 Agriculture | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 443 Housing/Acco-mmodations | | SOCIAL SECURITY |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | REAL PROPERTY | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 893 Environmental Matters | ☐ 210 Land Condemnation | IMMIGRATION | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 894 Energy Allocation Act | ☑ 220 Foreclosure | ☐ 462 Naturalization Application | | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 895 Freedom of Info. Act | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | | FEDERAL TAX SUITS |
| | ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

## CV11-3227

**FOR OFFICE USE ONLY:**   Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

CV-71 (05/08)       CIVIL COVER SHEET       Page 1 of 2

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**
(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or
☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
☐ D. Involve the same patent, trademark or copyright, and one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State if other than California; or Foreign Country |
|---|---|
| | Delaware
South Dakota
New York |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which EACH claim arose.
Note: In land condemnation cases, use the location of the tract of land involved.

| County in this District:* | California County outside of this District; State if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties
Note: In land condemnation cases, use the location of the tract of land involved

X. SIGNATURE OF ATTORNEY (OR PRO PER): _Andrew L. _____ (Pro Per)_   Date _April 13, 2011_
Constance Martha Pro Per

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge George H. Wu and the assigned discovery Magistrate Judge is Carla Woehrle.

The case number on all documents filed with the Court should read as follows:

## CV11- 3227 GW (CWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

=========================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [X] Western Division | [ ] Southern Division | [ ] Eastern Division |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.