SUZANNE M. HANKINS (State Bar No. 157837)
smh@severson.com
JARLATH M. CURRAN, II (State Bar No. 239352)
jmc@severson.com
SEVERSON & WERSON, A Professional Corporation
19100 Von Karman Ave., Suite 700
Irvine, CA 92612
Telephone: (949) 442-7110; Facsimile: (949) 442-7118

MARK D. LONERGAN (State Bar No. 143622)
SEVERSON & WERSON, A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344; Facsimile: (415) 956-0439

Attorneys for Defendants
WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage and Wells Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL ASSOCIATION, as Trustee for WFMBS 2006-AR2

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW CAMERON BAILEY, CONSTANCE BAXTER MARLOW, <br><br> Plaintiffs, <br><br> vs. <br><br> U.S. BANK NA as Trustee for WFMBS 2006-AR2; WELLS FARGO BANK NA; WELLS FARGO HOME MORTGAGE; WELLS FARGO ASSET SECURITIES CORPORATION; LEHMAN BROTHERS INC; and All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described in The Complaint Adverse to Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto; and JOHN DOES "1-10" inclusive, <br><br> Defendants. | Case No. CV11-3227 GW (CWx) <br> Hon. George H. Wu <br> Ctrm. 10 - Spring St. <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> **[Filed concurrently with Request for Judicial Notice]** <br><br> Date:  June 30, 2011 <br> Time:  8:30 a.m. <br> Ctrm:  10 <br><br> Complaint Filed: April 15, 2011 |

# TABLE OF CONTENTS

NOTICE OF MOTION .................................................................................... 2

MEMORANDUM OF POINTS AND AUTHORITIES ................................. 3

I. INTRODUCTION ................................................................................ 3

II. STATEMENT OF FACTS ................................................................... 3

III. PLAINTIFFS CANNOT STATE A CAUSE OF ACTION .................. 5

IV. PLAINTIFFS' CLAIMS WERE ADJUDICATED IN THE ADVERSARY ACTION ..................................................................... 5

V. TILA REMEDIES ARE NOT AVAILABLE TO PLAINTIFFS .......... 7

    A. Plaintiffs Do Not Allege a Failure to Provide A Material Disclosure ............................................................................. 7

    B. Plaintiffs' Request for Damages is Time Barred ......................... 8

    C. Plaintiffs' Request for Rescission is Time Barred ....................... 8

    D. Plaintiffs' Right to Rescission Was Cancelled by The Sale of the Property ..................................................................... 9

    E. Plaintiffs Fail to Allege Their Ability to Tender ........................ 10

VI. THERE IS NO POST-FORECLOSURE RELIEF UNDER CIVIL CODE §2923.5 ........................................................................ 11

VII. PLAINTIFFS' STANDING ARGUMENT FAILS ............................. 11

    A. Defendants Are Not Obligated to Prove Their Ownership of the Loan Prior to Foreclosure ............................... 11

    B. Possession of The Note is Not a Prerequisite to Foreclosure .................................................................................. 13

VIII. CONCLUSION ................................................................................... 15

# TABLE OF AUTHORITIES

**Cases:**

*Agarwal v. Johnson*
25 Cal.3d 954 .................................................................................................. 6

*Allen v. McCurry*
(1980) 449 U.S. 90 ......................................................................................... 5

*Benham v. Aurora Loan Serv.*
(N.D. Cal. 2010) 2010 WL 532685 ............................................................. 13

*Bernhard v. Bank of America*
(1942) N.T. & S.A., 19 Cal.2d 807 ............................................................... 9

*Betancourt v. Countrywide Home Loans, Inc.*,
344 F.Supp.2d 1253 (D. Colo. 2004) ............................................................ 8

*Branson v. Sun-Diamond Growers of California*
24 Cal.App.4th 327 (1994) ............................................................................ 6

*Candelo v. NDex West, LLC*
(E.D. Cal. 2008) 2008 WL 5382259, at *4 ................................................. 14

*Clark v. Lesher*
(1956) 46 Cal.2d 874 ..................................................................................... 5

*Coscia v. McKenna & Cuneo*
(2001) 25 Cal.4th 1194 .................................................................................. 6

*Dunkin v. Boskey*
82 Cal.App.4th 171 (2000) .......................................................................... 10

*Eubanks v. Liberty Mortg. Banking Ltd.*,
976 F. Supp. 171 (E.D.N.Y. 1997) ................................................................ 8

*Ford v. Wells Fargo Home Mortg.*
2008 WL 5070687 (N.D. Cal. 2008) ............................................................. 9

*Gomes v. Countrywide Home Loans*
(2011) 192 Cal.App.4th 119 ........................................................................ 12

*Hafiz v. Greenport Mortg. Funding, Inc,*
(N.D. 2009) 652 F.Supp.2d 1039 ................................................................ 13

*I.E. Assocs. v. Safeco Title Ins. Co.*
(1985) 39 Cal.3d 281 ................................................................................... 11

*King v. California*,
784 F.2d 910 (9th Cir. 1986) .......................................................................... 8

*Lane v. Vitek Real Estate Industries Group*,
713 F.Supp.2d 1092 (E.D.Cal. 2010) ..................................................... 12, 13

*Lu v. Hawaiian Gardens Casino, Inc.*
(2010) 50 Cal.4th 592 .................................................................................. 13

*Mabry v. Superior Court*
(2010) 185 Cal.App.4th 208 ........................................................................ 11

*Marschner v. RJR Fin. Servs., Inc.*
382 F.Supp.2d 918 (E.D. Mich. 2005) .......................................................... 9

*Metcalf v. Drexel Lending Group*
2008 WL 2682851 (S.D. Cal. 2008) .............................................................. 9

*Miguel v. Countrywide Funding Corp.*
(9th Cir. 2002) 309 F.3d 1161 ....................................................................... 9

*Moeller v. Lien*
(1994) 25 Cal.App.4th 822 ............................................................... 11, 12, 14

*Mulato v. WMC Mortgage Corp.*
(N.D. Cal. 2010) WL 1532276 .................................................................... 13

*Neal v. Juarez*
(S.D. Cal. 2007) 2007 WL 2140640 ............................................................ 14

*Putkkuri v. ReconTrust Co.*,
2009 WL 32567 (S.D. Cal. 2009) ................................................................ 14

*San Diego Home Solutions, Inc. v. ReconTrust Co.*,
2008 WL 5209972 (S.D. Cal. 2008) ............................................................ 14

*San Remo Hotel, L.P. v. City and County of San Francisco*
(2005) 545 U.S. 323 ....................................................................................... 5

*Saygnarath v. BNC Mortg., Inc.*
2007 WL 1141495 (D. Minn. 2007) .............................................................. 9

*Semar v. Platte Valley Fed. Sav. & Loan Ass'n.*
791 F.2d 699 (9th Cir. 1986) .................................................................... 8, 10

*Slater v. Blackwood*
15 Cal.3d 791 ................................................................................................. 6

*Sutphin v. Speik*
15 Cal.2d 195 .................................................................................................. 6

*Syufy Enterprises v. City of Oakland*
(2002) 104 Cal.App.4th 869 .......................................................................... 6

*Takahashi v. Board of Education of Livingston Unified School Dist.*
202 Cal.App.3d 1474 ..................................................................................... 7

*Tina v. Countrywide Home Loans, Inc.*
(S.D. Cal. 2008) 2008 WL 4790906 ............................................................ 14

*Wimsatt v. Beverly Hills Weight Etc. Internat. Inc.*
32 Cal.App.4th 1511 (1995) ........................................................................ 10

*Yamamoto v. Bqnk of New York*
329 F.3d 1167 (9th Cir. 2003) ..................................................................... 10

**Statutes:**

C.F.R. § 226.23 ........................................................................................ 7, 8, 9

15 U.S.C. § 1635 ......................................................................................... 8, 10

15 U.S.C. § 1638 ........................................................................................... 7, 9

15 U.S.C. § 1640 .............................................................................................. 11

Civil Code § 2923.5 ..................................................................................... 3, 11

Civil Code § 2924 .............................................................................. 11, 13, 14

F.R.C.P. Rule 12 ................................................................................................ 2

1  PLEASE TAKE NOTICE that on June 30, 2011 at 8:30 a.m., or as soon
2  thereafter as counsel may be heard in Courtroom 10 of the above-entitled Court
3  located at 312 North Spring Street, Los Angeles, California, defendants WELLS
4  FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage and Wells
5  Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL
6  ASSOCIATION, as Trustee for WFMBS 2006-AR2 ("Defendants"), will and
7  hereby do move the Court for an order dismissing this action as to Defendants
8  pursuant to the Federal Rules of Civil Procedure, Rule 12(b)(6).

9  The motion to dismiss is based upon this notice of motion and motion, the
10 memorandum of points and authorities attached hereto, the request for judicial
11 notice, the pleadings and papers on file for this matter, and upon such other matters
12 as may be presented to the Court at the time of the hearing

13 DATED: May 16, 2011                          SEVERSON & WERSON
14                                              A Professional Corporation

16                                              By:/s/Jarlath M. Curran II
17                                                 SUZANNE M. HANKINS
                                                   JARLATH M. CURRAN, II
18                                                 Attorneys for Defendants
                                                   WELLS FARGO BANK, N.A.
19                                                 (erroneously sued as Wells Fargo
20                                                 Home Mortgage and Wells Fargo
                                                   Asset Securities Corporation) and
21                                                 U.S. BANK, NATIONAL
                                                   ASSOCIATION, as Trustee for
22                                                 WFMBS 2006-AR2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This lawsuit is Plaintiffs' ***third attempt*** to challenge Defendants' right to foreclosure on the subject property.

At first, Plaintiffs stalled the foreclosure sale by filing for Chapter 7 bankruptcy in the District of Arizona. As a result, Wells Fargo was forced to move for relief from the automatic stay. Although Wells Fargo's motion was granted, Plaintiffs quickly filed an adversary complaint in their Arizona bankruptcy that raised identical claims asserted in this matter. After Defendants successfully moved to dismiss Plaintiffs' adversary action, Plaintiffs turned around and filed this lawsuit. However, as Plaintiffs' claims herein have already been adjudicated, this lawsuit is barred by res judicata.

Furthermore, Plaintiffs' complaint is based on three failed theories of recovery. First, Plaintiffs seek to rescind the loan on the basis the Defendants violated the Truth in Lending Act. However, Plaintiffs do not identify any failure to provide a material disclosure. Furthermore, any relief under TILA is time barred.

Plaintiffs then allege that Defendants violated California Civil Code section 2923.5. However, Plaintiffs fail to realize that Section 2923.5 does not provide post-foreclosure relief. As the property was sold via foreclosure in August 2010, Plaintiffs' Section 2923.5 claim necessarily fails.

Finally, Plaintiffs challenge Defendants "standing" to enforce the note by claiming that the note was improperly transferred into a securitized loan pool and Defendants are not in possession of the note. These theories have been resoundingly rejected.

## II. STATEMENT OF FACTS

On November 17, 2005, Plaintiffs obtained a $480,000 mortgage loan from defendant Wells Fargo Bank, N.A. (Compl., ¶27.) Plaintiffs' repayment

obligations under the loan were secured by a Deed of Trust recorded against the real property located at 153 Western Ave., Glendale, California 91201. (Deed of Trust, Request for Judicial Notice filed concurrently herewith ("RJN"), Ex. A.) Wells Fargo's beneficial interest in the loan was subsequently assigned to defendant U.S. Bank National Association, as Trustee for WFMBS 2006-AR2 ("U.S. Bank"). (Assignment of Deed of Trust, RJN, Ex. B.) Wells Fargo services the loan on behalf of U.S. Bank.

Due to Plaintiffs' default, foreclosure proceedings were initiated against the Property. A notice of default and notice of trustee's sale were recorded against the Property on December 22, 2008, and March 23, 2009, respectively. (Notice of Default, RJN, Ex. C; Notice of Trustee's Sale, RJN, Ex. D.)

On April 9, 2009, and presumably in an attempt to stall foreclosure, plaintiff Marlow initiated an involuntary Chapter 7 bankruptcy for plaintiff Bailey in the Arizona District Court – *In re Bailey*, U.S. Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-RTBP. (Involuntary Petition, RJN, Ex. E.) In October 2009, Wells Fargo moved, successfully, from relief from the bankruptcy's automatic stay. (See Motion for Relief from Stay, RJN, Ex. F; Order on Motion for Relief from Stay, RJN, Ex. G.)

Not to be deterred, Plaintiffs filed an adversary proceeding on December 23, 2009, in the District of Arizona against Defendants – *Bailey v. Wells Fargo Bank, N.A., et al*, U.S. Bankruptcy Court, District of Arizona Case No. 2:09-ap-01727-RTBP (the "Adversary Action"). Plaintiffs' second amended complaint in the Adversary Action filed June 2, 2010, is strikingly similar to the complaint filed in this action. (Second Amended Adversary Complaint, RJN, Ex. H.) On July 23, 2010, Defendants motion to dismiss Plaintiffs' Second Amended Adversary Complaint was granted ***with prejudice***. (Order, RJN, Ex. I.)

After the dismissal of the Adversary Action, Defendants moved forward with foreclosure. Another notice of trustee's sale was recorded against the Property on

1  August 3, 2010. (Notice of Trustee's Sale, RJN, Ex. J.) The Property was
2  ultimately sold via foreclosure sale on August 24, 2010. (Trustee's Deed Upon
3  Sale, RJN, Ex. K.)
4       As the next step in their constant scheme to challenge Defendants' right to
5  foreclose, Plaintiffs filed the current action on April 15, 2011.

6  **III. PLAINTIFFS CANNOT STATE A CAUSE OF ACTION**

7       Plaintiffs' complaint asserts two causes of action for quiet title and injunctive
8  relief. To support these equitable requests, Plaintiffs claim that (1) Defendants
9  violated the Truth in Lending Act ("TILA) failing to disclose that the loan could be
10 sold into a securitized loan pool (Compl., ¶¶29, p. 18-19); (2) violated Civil Code
11 section 2923.5; and (3) lack standing to enforce the note. For the following reasons,
12 each of Plaintiffs' theories fails as a matter of law.

13 **IV. PLAINTIFFS' CLAIMS WERE ADJUDICATED IN THE**
14      **ADVERSARY ACTION**

15      Each of Plaintiffs' causes of action challenge Defendants' rights to foreclose
16 on the Property based on TILA violations and lack of standing. (See Compl.)
17 However, as that issue was adjudicated in the Adversary Action, it is improper for
18 Plaintiffs to attempt to relitigate the matter here.
19      Res judicata has two aspects: claim preclusion and issue preclusion (also
20 known as collateral estoppel). *Clark v. Lesher*, 46 Cal.2d 874, 880 (1956). "Under
21 collateral estoppel, once a court has decided an issue of fact or law necessary to its
22 judgment, that decision may preclude relitigation of the issue in a suit on a different
23 cause of action involving a party to the first case." *San Remo Hotel, L.P. v. City
24 and County of San Francisco*, 545 U.S. 323, 336 (2005), citing *Allen v. McCurry*,
25 449 U.S. 90 (1980); *Bernhard v. Bank of America, N.T. & S.A.*, 19 Cal.2d 807, 813
26 (1942). "'The requirements for invoking collateral estoppel are the following:
27 (1) the issue necessarily decided in the previous proceeding is identical to the one
28 that is sought to be relitigated; (2) the previous proceeding terminated with a final

1  judgment on the merits; and (3) the party against whom collateral estoppel is
2  asserted was a party to or in privity with a party in the previous proceeding.'" *Syufy*
3  *Enterprises v. City of Oakland*, 104 Cal.App.4th 869, 878 (2002), citing *Coscia v.*
4  *McKenna & Cuneo*, 25 Cal.4th 1194, 1201, fn. 1 (2001).

5      That the second and third requirements are met is not subject to any
6  reasonable dispute. A final judgment was entered in favor of Defendants and
7  against Plaintiffs in the Adversary Action. (RJN, Ex. I.) And Plaintiff was
8  obviously a party to that Adversary Action. (RJN, Ex. H.)

9      The first requirement is also easily satisfied. "For purposes of identifying a
10 cause of action under the doctrine of res judicata, 'California has consistently
11 applied the 'primary rights' theory, under which the invasion of one primary right
12 gives rise to a single cause of action.'" *Branson v. Sun-Diamond Growers of*
13 *California*, 24 Cal.App.4th 327, 333 (1994), citing *Slater v. Blackwood*, 15 Cal.3d
14 791, 795 (1975). "But the 'cause of action is based upon the harm suffered, as
15 opposed to the particular theory asserted by the litigant. [Citation]. Even where
16 there are multiple legal theories upon which recovery might be predicated, one
17 injury gives rise to only one claim for relief.'" *Ibid.* The significant factor is the
18 harm suffered. *Agarwal v. Johnson, supra*, 25 Cal.3d at 954.

19     In order to determine if the doctrine of res judicata is applicable in a given
20 case "[w]e must compare the two actions, looking at the rights which are sought to
21 be vindicated and the harm for which redress is claimed." *Dunkin v. Boskey*, 82
22 Cal.App.4th 171, 176 (2000) (citations omitted). "Reference must be made to the
23 pleadings and proof in each case." *Id.* at 177 citing *Wimsatt v. Beverly Hills Weight*
24 *etc. Internat., Inc.* 32 Cal.App.4th 1511, 1517 (1995).

25     Furthermore, "[i]t is axiomatic that a final judgment serves as a bar not only
26 to the issues litigated but to those that could have been litigated at the same time.
27 In *Sutphin v. Speik*, 15 Cal.2d 195, 202 (1940), the California Supreme Court stated
28 the California rule regarding the scope of res judicata as follows: 'If the matter was

within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged. [Italics in original.] The reason for this is manifest. A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment is *res judicata* on matters which were raised or could have been raised, on matters litigated or litigatable.'" *Takahashi v. Board of Education of Livingston Unified School District, supra,* 202 Cal.App.3d at 1474 (italics in original).

This lawsuit and the Adversary Action speaks to the invasion of one "primary right", i.e. Plaintiffs' claim that Defendants have not standing to enforce the note and deed of trust. (Second Amended Adversary Complaint, RJN, Ex. H.) Consequently, the Court's Order dismissing Defendants from the Adversary Action conclusively adjudicated the validity Jackson's "primary right."

## V. TILA REMEDIES ARE NOT AVAILABLE TO PLAINTIFFS

Plaintiffs claim that Defendants violated TILA by failing to disclose that the loan could be sold into a securitized loan pool (Compl., ¶¶29, p. 18-19). This claim fails as the relief under TILA – damages and rescission – are not available.

### A. Plaintiffs Do Not Allege a Failure to Provide a Material Disclosure

Ever since the Truth in Lending Simplification Act of 1980, a consumer has been allowed a remedy under TILA only for a failure to provide specified "material disclosures." Neither damages nor rescission may be had for failure to provide or for errors in other non-material disclosures that TILA requires a creditor to make, let alone for disclosures that are not required by that Act.

The only "material disclosures" that can lead to liability for damages or rescission under TILA are disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the 3-day right to rescind certain real estate-secured loans. *See* 15 U.S.C. §§ 1638(a)(2)-(6), (9), 1640(a) (hanging paragraph); 12 C.F.R. § 226.23(a)(3) & n.48. As

11960/0257/919180.1 -11- Notice of Motion and Motion to Dismiss
Case No. CV11-3227 GW (CWx)

Plaintiffs have alleged no failure to provide or error in any of these material disclosures, they have no TILA claim upon which any relief may be granted

### B. Plaintiffs' Request for Damages is Time Barred

"[A]n action for damages under TILA must be brought within one year from the alleged violation." *Eubanks v. Liberty Mortg. Banking Ltd.*, 976 F. Supp. 171, 174 (E.D.N.Y. 1997) (citing 15 U.S.C. § 1640(e)); *see also King v. State of California*, 784 F.2d 910, 913 (9th Cir. 1986). The violation occurs and the one-year limitations period accrues upon consummation of the loan. *See Betancourt v. Countrywide Home Loans, Inc.*, 344 F.Supp.2d 1253, 1258 (D. Colo. 2004). Plaintiffs' loan closed on November 17, 2005, *i.e.*, it was consummated on that date.[1] (Compl., ¶27; Deed of Trust, RJN, Ex. A.) Therefore, Plaintiffs were obligated to bring this action no later than November 17, 2006. Plaintiffs did not, however, file this lawsuit until April 15, 2011. Therefore, Plaintiffs' claim for damages under TILA is time-barred.

### C. Plaintiffs' Request for Rescission is Time Barred

TILA's "buyer's remorse" provision allows borrowers three business days to rescind, without penalty, a consumer loan that uses their principal dwelling as security. *Semar v. Platte Valley Federal Sav. & Loan Ass'n*, 791 F.2d 699, 701 (9th Cir. 1986); 15 U.S.C. §1635(a). However, TILA rescission is extended up to three years if the lender fails to provide "material disclosures." 15 U.S.C. § 1635(f).

Section 1635(f) "is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year limitation period." The only "material disclosures" that can lead to liability for rescission under TILA are disclosures of the annual percentage rate, the finance charge, the amount financed, the total of payments, the payment schedule, and the 3-day right

---

[1] A loan is deemed consummated at "the time a consumer becomes contractually obligated on a credit transaction." 12 C.F.R. § 226.2(a)(13).

to rescind certain real estate-secured loans. *See* 15 U.S.C. §§ 1638(a)(2)-(6), (9), 1640(a) (hanging paragraph); 12 C.F.R. § 226.23(a)(3) & n.48. Rescission is unavailable for any failure to provide or for errors in non-material disclosures that TILA requires a creditor to make, let alone for disclosures that are not required by that Act.

Plaintiff obtained the loan on November 17, 2005. (Compl., ¶27; Deed of Trust, RJN, Ex. A.) Thus, the statute of limitations on Plaintiffs' rescission claim expired no later than November 17, 2008. Plaintiffs did not file this action until April 15, 2011. (See Compl.) Therefore, Plaintiffs' claim for rescission under TILA is also time barred.

### D. Plaintiffs' Right to Rescission Was Cancelled by the Sale of the Property

A TILA rescission claim expires "three years after the date of consummation of the transaction *or upon sale of the property*, whichever occurs first." 15 U.S.C. § 1635(f) (emphasis added). As noted above, Section 1635(f) "is a statute of repose, depriving the courts of subject matter jurisdiction when a § 1635 claim is brought outside the three-year [or sale] limitation period." *Miguel v. Countrywide Funding Corp.*, 309 F.3d 1161, 1164 (9th Cir. 2002). Also, "[a] sale or transfer of the property need not be voluntary to terminate the right to rescind. For example, a foreclosure sale would terminate an unexpired right to rescind." 12 C.F.R. Pt. 226, Supp. I. (Official Staff Commentary to Reg. Z, § 226.23(a)(3)); see also *Ford v. Wells Fargo Home Mortg.*, 2008 WL 5070687, at *3-*4 (N.D. Cal. 2008); *Metcalf v. Drexel Lending Group*, 2008 WL 2682851, at *2 (S.D. Cal. 2008); *Saygnarath v. BNC Mortg., Inc.*, 2007 WL 1141495, at *2 (D. Minn. 2007) (right to rescind under TILA extinguished by foreclosure sale); *Marschner v. RJR Fin. Servs., Inc.*, 382 F.Supp.2d 918, 923 (E.D. Mich. 2005) (finding that plaintiff's right to rescind under TILA was cut-off by sheriff's sale).

Plaintiffs' ability to rescind ended on August 24, 2010, when the Property was sold via foreclosure. (Trustee's Deed Upon Sale, RJN, Ex. K.)

### E. Plaintiffs Fail to Allege Their Ability to Tender

To seek rescission under TILA, a plaintiff must return to the lender the principal of the mortgage loan minus all interest and fees paid to the creditor and all third parties at closing, and any fees paid to the creditor after closing (the "Rescission Balance"). *See Semar v. Platte Valley Federal Savings and Loan*, 791 F.2d 699 (9th Cir. 1986). Thus, a plaintiff must allege that they have tendered the Rescission Balance or are financially capable of doing so as a prerequisite to a TILA claim. Under the literal language of 15 U.S.C. § 1635(b), when the consumer exercises the right of rescission, the security interest becomes void. Within 20 days of receipt of a rescission demand, the creditor is required to terminate the security interest. *See* 15 U.S.C. § 1635(a). The consumer is not required to return the principal of the loan to the creditor until the creditor has released the security interest. *See* 15 U.S.C. § 1635(b). In effect, the creditor would be left unsecured if the consumer failed to return the principal balance.

However, the final sentence of Section 1635(b) has been interpreted to allow courts the right to demand that the borrower return the loan's principal balance to the creditor as a prerequisite to rescinding that loan. This sentence states that "the procedures prescribed by this subsection shall apply except when otherwise ordered by a court." In applying this sentence, federal courts have used equitable principles to benefit a mortgage lender in a rescission claim that could otherwise lead to inequitable consequences. The Ninth Circuit has ruled that a plaintiff cannot effectuate rescission unless they can return the principal amounts borrowed as required by Reg. Z. *See Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th Cir. 2003) (courts have the power to confirm that the borrower "could repay the loan proceeds before going through the empty (and expensive) exercise of a trial on the merits").

Here, Plaintiffs do not allege that they tendered the Rescission Balance of the loan or that they are financially capable of doing so. (*See* Compl.) Instead, Plaintiffs want a windfall – title to the property free and clear of the loan without any obligation to repay the loan he admittedly received. Such a request is not a valid TILA claim.

## VI. THERE IS NO POST-FORECLOSURE RELIEF UNDER CIVIL CODE §2923.5

Plaintiffs allege a purported violation of Civil Code section 2923.5. (Compl., ¶58.) However, the "only remedy available under [Section 2923.5] is a postponement of the sale before it happens." *Mabry v. Superior Court* (2010) 185 Cal.App.4th 208, 235. The borrower may not seek to set the foreclosure sale aside, vacate it, invalidate the trustee's deed, or attack the purchaser's title based on any pre-sale failure to comply with section 2923.5. "There is nothing in section 2923.5 that even hints that noncompliance with the statute would cause any cloud on title after an otherwise properly conducted foreclosure sale." Id.

As the foreclosure sale took place on August 24, 2010, Section 2923.5 does not apply. (Trustee's Deed Upon Sale, RJN, Ex. K.)

## VII. PLAINTIFFS' STANDING ARGUMENT FAILS

### A. Defendants Are Not Obligated to Prove Their Ownership of the Loan Prior to Foreclosure

Civil Code Sections 2924 through 2924k "provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust." *Moeller v. Lien*, 25 Cal.App.4th 822, 830 (1994). "These provisions cover every aspect of exercise of the power of sale contained in a deed of trust." *I.E. Associates v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285 (1985). "The purposes of this comprehensive scheme are threefold: (1) to provide the creditor/beneficiary with a quick, inexpensive and efficient remedy against a defaulting debtor/trustor; (2) to protect the debtor/trustor from wrongful

loss of the property; and (3) to ensure that a properly conducted sale is final between the parties and conclusive as to a bona fide purchaser." *Moeller v. Lien, supra,* 25 Cal.App.4th at p. 830. "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." *Lane v. Vitek Real Estate Industries Group,* (E.D.Cal 2010) 713 F.Supp.2d 1092, 1098; see also *Moeller v. Lien, supra,* 25 Cal.App.4th at p. 834 ["It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings."].

Notwithstanding this exhaustive statutory framework, Plaintiffs initiated this litigation to challenge the foreclosure proceeding on the grounds that Defendants lacked "standing" to foreclose as the loan was never properly transferred into the securitized loan pool. (Compl., ¶47.) Ignoring the complete lack of factual support for Plaintiffs' claims, their theories still fail. The Court in *Gomes v. Countrywide Home Loans, Inc.* (2011) 192 Cal.App.4th 1149 was presented with a similar argument.[2] The Court immediately rejected Gomes's contention:

> By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated.
> *Gomes v. Countrywide, supra,* 192 Cal.App.4th at 1154.

---

[2] Specifically, Gomes alleged that he didn't know the identity of the note's beneficial owner because he believed that his originating lender sold it on the secondary mortgage market. On information and belief, Gomes then alleged that the person or entity that initiated the foreclosure process was not the note's rightful owner, nor acting with the rightful owner's authority. (See *Gomes v. Countrywide, supra,* 192 Cal.App.4th at 1152.)

The Court later concluded that "nowhere does the statute provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized and we see no ground for implying such an action." *Id.* (citing *Lu v. Hawaiian Gardens Casino, Inc.*, (2010) 50 Cal.4th 592, 596). The instant case is no different than *Gomes*. Allowing it to proceed, "would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures." *Id.* at *4.

Plaintiff cannot rely on the securitization process as a basis for this litigation either. "The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts." *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1099 (2010) (citing *Benham v. Aurora Loan Services* (N.D. Cal. 2009) 2009 WL 2880232 at *3 ("Other courts…have summarily rejected the argument that companies like MERS lose their power of sale pursuant to the deed of trust when the original promissory note is assigned to a trust pool."); *Hafiz v. Greenpoint Mortg. Funding, Inc.*, (N.D. Cal. 2009) 652 F.Supp.2d 1039, 1042-43; see also *Mulato v. WMC Mortg. Corp.*, (N.D. Cal. 2010) 2010 WL 1532276, at *2 (rejecting Plaintiff's claim that securitization of her mortgage note deprived defendants of standing to foreclose).

Finally, Plaintiffs' deed of trust expressly states that the promissory note and deed of trust could be sold one or more times without prior notice to them. (Deed of Trust, RJN, Ex. A, ¶20.) Because Plaintiffs authorized the transfer of the note and deed of trust, they cannot now complain that such a transfer occurred.

### B. Possession of the Note is Not a Prerequisite to Foreclosure

Plaintiffs vaguely challenge Defendants' authority to foreclose by making the baseless and self-serving allegation that none of the Defendants are in possession of the note. Contrary to Plaintiffs' assertions, there is no requirement that a lender produce the promissory note prior to initiating non-judicial foreclosure sales.

Raised in many recent actions by borrowers seeking to delay and undo foreclosure proceedings, this claim has been uniformly rejected. This mistaken idea is typically derived from Article 3 of the Uniform Commercial Code, which governs negotiable instruments. It does not govern non-judicial foreclosure under deeds of trust. *See, e.g., Putkkuri v. ReconTrust Co.*, 2009 WL 32567, at *2 (S.D. Cal. 2009) ("Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Cal. Civ. Code § 2924(a). Production of the original note is not required to proceed with a non-judicial foreclosure."); *Candelo v. NDex West, LLC* 2008 WL 5382259, at *4 (E.D. Cal. 2008) ("No requirement exists under the statutory framework to produce the original note to initiate non-judicial foreclosure."); *San Diego Home Solutions, Inc. v. ReconTrust Co.*, 2008 WL 5209972, at *2 (S.D. Cal. 2008) ("California law does not require that the original note be in the possession of the party initiating non-judicial foreclosure."); *Tina v. Countrywide Home Loans, Inc.*, 2008 WL 4790906, at *8 (S.D. Cal. 2008) ("Cal. Civ. Code § 2924 outlines the requirements for non-judicial foreclosures in California, and does not include providing the original note prior to the sale."); *Neal v. Juarez*, 2007 WL 2140640, at *8 (S.D. Cal. 2007) (an "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid.").

As noted above, the Civil Code sections establish a comprehensive and exclusive set of regulations for the conduct of nonjudicial foreclosures. *See, e.g., Moeller v. Lien* (1994) 25 Cal.App.4th 822, 834 ("The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive.") Negotiable instrument law is not operative in this specialized context. Civil Code § 2924 *et seq.* does not require the person initiating foreclosure to have physical possession of the promissory note which the deed of trust secures. Nor do these sections require the trustee to find out who does physically possess the note. Instead, Civil Code section 2924(a)(1) provides that "[t]he trustee, mortgagee, or

beneficiary, or any of their authorized agents" may commence the nonjudicial foreclosure process by recording and servicing a notice of default.

## VIII. CONCLUSION

Based on the foregoing, Defendants respectfully request that the Court grant their motion to dismiss without leave to amend.

DATED: May 16, 2011

SEVERSON & WERSON
A Professional Corporation

By: /s/ Jarlath M. Curran II
SUZANNE M. HANKINS
JARLATH M. CURRAN, II
Attorneys for Defendants
WELLS FARGO BANK, N.A.
(erroneously sued as Wells Fargo Home Mortgage and Wells Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL ASSOCIATION, as Trustee for WFMBS 2006-AR2

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Irvine, California. My business address is Severson & Werson, 19100 Von Karman Avenue, Suite 700, Irvine, California 92612.

On the date below I served the within document(s) described as: **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** on the interested parties in this action:

☒  by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☐ addressed as follows: ☐ address as stated on the attached mailing list.

Andrew Cameron Bailey          Plaintiffs in pro per
Constance Baxter Marlow
153 Western Avenue
Glendale CA 91201

☒  **BY MAIL** (C.C.P. § 1013(a)) - I deposited such envelope(s) for processing in the mail room in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐  **(BY ELECTRONIC SERVICE)** Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☒  **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on May 16, 2011, at Irvine, California.

By: _____
LINDA D. OWEN

11960/0257/919180.1

Proof of Service
Case No. CV11-3227 GW (CWx)