SUZANNE M. HANKINS (State Bar No. 157837)
smh@severson.com
JARLATH M. CURRAN, II (State Bar No. 239352)
jmc@severson.com
SEVERSON & WERSON, A Professional Corporation
19100 Von Karman Ave., Suite 700
Irvine, CA 92612
Telephone: (949) 442-7110
Facsimile: (949) 442-7118

MARK D. LONERGAN (State Bar No. 143622)
SEVERSON & WERSON, A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendants WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage and Wells Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL ASSOCIATION, as Trustee for WFMBS 2006-AR2

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANDREW CAMERON BAILEY, CONSTANCE BAXTER MARLOW,<br><br>Plaintiffs,<br><br>vs.<br><br>U.S. BANK NA as Trustee for WFMBS 2006-AR2; WELLS FARGO BANK NA; WELLS FARGO HOME MORTGAGE; WELLS FARGO ASSET SECURITIES CORPORATION; LEHMAN BROTHERS INC; and All Persons Unknown, Claiming Any Legal or Equitable Right, Title, Estate, Lien, Or Interest in The Property Described in The Complaint Adverse to Plaintiffs' Title, Or Any Cloud On Plaintiffs' Title Thereto; and JOHN DOES "1-10" inclusive,<br><br>Defendants. | Case No. CV11-3227 GW (CWx)<br>Hon. George H. Wu<br>Ctrm. 10 - Spring St.<br><br>**REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS**<br><br>**[Filed concurrently with Notice of Motion and Motion to Dismiss; Memorandum of Points and Authorities]**<br><br>Date: June 30, 2011<br>Time: 8:30 a.m.<br>Ctrm: 10<br><br>Complaint Filed: April 15, 2011 |

Pursuant to Federal Rule of Evidence Rule 201(b)(2) and (d), Defendants WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage and Wells Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL ASSOCIATION, as Trustee for WFMBS 2006-AR2 respectfully request that the Court take judicial notice of the following documents in support of their Motion to Dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6).

1.    Deed of Trust dated on or about November 17, 2005 and recorded in the Official Records of the Los Angeles County Recorder's Office on December 2, 2005 as Instrument Number 05-2946072. A true and correct copy of the Deed of Trust is attached hereto as Exhibit A.

2.    Assignment of Deed of Trust dated January 27, 2009 and recorded in the Official Records of the Los Angeles County Recorder's Office on January 29, 2009 as Instrument Number 20090117288. A true and correct copy of the Assignment of Deed of Trust is attached hereto as Exhibit B.

3.    Notice of Default and Election to Sell Under Deed of Trust dated December 18, 2008 and recorded in the Official Records of the Los Angeles County Recorder's Office on December 22, 2008 as Instrument Number 20082240421. A true and correct copy of the Notice of Default and Election to Sell Under Deed of Trust is attached hereto as Exhibit C.

4.    Notice of Trustee's Sale dated March 23, 2009 and recorded in the Official Records of the Los Angeles County Recorder's Office on March 23, 2009, as Instrument Number 20090410212. A true and correct copy of the Notice of Trustee's Sale is attached hereto as Exhibit D.

5.    Involuntary Chapter 7 Bankruptcy Petition filed April 9, 2009 in the United States Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-RTBP, entitled *In re: Andrew C. Bailey*. A true and correct copy of the Involuntary Chapter 7 Bankruptcy Petition is attached hereto as Exhibit E.

6.      Movant's Motion to Lift the Automatic Stay filed July 9, 2009 in the United States Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-RTBP, entitled *In re: Andrew C. Bailey*. A true and correct copy of Movant's Motion to Lift the Automatic Stay is attached hereto as Exhibit F.

7.      Order (on motion for relief from stay) filed October 2, 2009 in the United States Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-RTBP, entitled *In re: Andrew C. Bailey*. A true and correct copy of the Order (on motion for relief from stay) is attached hereto as Exhibit G.

8.      Second Amended Complaint for Lack of Standing, Void of Contract, Damages for Fraud, False Representation, Predatory Lending, Quiet Title, Injunctive Relief filed June 2, 2010 in the United States Bankruptcy Court, District of Arizona, Adversary Case No. 2:09-ap-01727-RTBP, entitled *Bailey v. Wells Fargo Bank, N.A., et al*. A true and correct copy of the Second Amended Complaint for Lack of Standing, Void of Contract, Damages for Fraud, False Representation, Predatory Lending, Quiet Title, Injunctive Relief is attached hereto as Exhibit H.

9.      Order Dismissing with Prejudice Defendants Wells Fargo Bank, N.A. and U.S. Bank N.A., as Trustee for WFMBS 2006-AR2, from Plaintiff's Second Amended Complaint for Lack of Standing, Void Contract, Damages for Fraud, False Representation, Predatory Lending, Quiet Title, Injunctive Relief filed July 23, 2010 in the United States Bankruptcy Court, District of Arizona, Adversary Case No. 2:09-ap-01727-RTBP, entitled *Bailey v. Wells Fargo Bank, N.A., et al*. A true and correct copy of the Order Dismissing with Prejudice Defendants Wells Fargo Bank, N.A. and U.S. Bank N.A., as Trustee for WFMBS 2006-AR2, from Plaintiff's Second Amended Complaint, etc. is attached hereto as Exhibit I.

10.      Notice of Trustee's Sale dated July 28, 2010 and recorded in the Official Records of the Los Angeles County Recorder's Office on August 3, 2010,

1  as Instrument Number 20101070137. A true and correct copy of the Notice of

2  Trustee's Sale is attached hereto as Exhibit J.

3      11.   Trustee's Deed Upon Sale dated August 24, 2010 and recorded in the

4  Official Records of the Los Angeles County Recorder's Office on September 14,

5  2010, as Instrument Number 20101289934. A true and correct copy of the

6  Trustee's Deed Upon Sale is attached hereto as Exhibit K.

7

8  DATED: May 16, 2011             SEVERSON & WERSON
                                A Professional Corporation

9

10

11                                 By:/s/*Jarlath M. Curran II*

12                                   SUZANNE M. HANKINS
                                 JARLATH M. CURRAN, II

13                                   Attorneys for Defendants
                                 WELLS FARGO BANK, N.A.

14                                   (erroneously sued as Wells Fargo
                                 Home Mortgage and Wells Fargo

15                                   Asset Securities Corporation) and
                                 U.S. BANK, NATIONAL

16                                   ASSOCIATION, as Trustee for
                                 WFMBS 2006-AR2

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT A**

12/02/05

Recording Requested By
~~WELLS FARGO BANK, N.A.~~

Return To
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121
Prepared By
WELLS FARGO BANK, N.A.

**05 2946072**

16644 WEST BERNARDO DR., STE
1017, SAN DIEGO, CA

55034043 - 707
5626-005-004

———[Space Above This Line For Recording Data]———

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21 Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated NOVEMBER , 2005
together with all Riders to this document
(B) "Borrower" is

CONSTANCE BAXTER MARLOW, AN UNMARRIED WOMAN, AS TO AN UNDIVIDED
50% INTEREST AND ANDREW CAMERON BAILEY, A MARRIED MAN AS HIS SOLE
AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 50% INTEREST, AS
TENANTS IN COMMON

Borrower is the trustor under this Security Instrument
(C) "Lender" is WELLS FARGO BANK, N A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0060412178

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                   Form 3005 1/01



VMP®-6(CA) (0005)
Page 1 of 16          Initials ACB CBM
VMP MORTGAGE FORMS (800)521 7291

12/02/05

Lender's address is **P.O. BOX 10304, DES MOINES, IA  503060304**

Lender is the beneficiary under this Security Instrument
**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INS CO**
**17911 VON KARMAN, SUITE 200, IRVINE, CA  92614**
**(E) "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 16, 2005**
The Note states that Borrower owes Lender **FOUR HUNDRED EIGHTY THOUSAND AND 00/100**
**Dollars**
(U S $****480,000.00    ) plus interest  Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **DECEMBER 01, 2035**.
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property "
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower  The following
Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account  Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers
**(L) "Escrow Items"** means those items that are described in Section 3
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for  (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U S C  Section 2601 et seq ) and its
implementing regulation, Regulation X (24 C F R  Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter  As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials *UBM ACB*

05 2946072

12/02/05

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA

(Q) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

TRANSFER OF RIGHTS IN THE PROPERTY
This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY of LOS ANGELES
[Type of Recording Jurisdiction]              [Name of Recording Jurisdiction]
LEGAL DESCRIPTION ATTACHED HERE TO AND MADE A PART HEREOF:

*SEE ADJUSTABLE RATE RIDER

TAX STATEMENTS SHOULD BE SENT TO:  WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA  503060304

Parcel ID Number 5626-005-004                which currently has the address of
153 WESTERN AVENUE                                                  [Street]
GLENDALE                                  [City], California 91201      [Zip Code]
("Property Address")

  TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property All replacements and additions shall also be covered by this Security Instrument All of the foregoing is referred to in this Security Instrument as the "Property "
  BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record
  THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property
  UNIFORM  COVENANTS   Borrower  and  Lender  covenant  and  agree  as  follows
  1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note Borrower shall also pay funds for Escrow Items pursuant to Section 3 Payments due under the Note and this Security Instrument shall be made in U S

05 2946072

12/02/05

currency However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15 Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument

2 **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority (a) interest due under the Note, (b) principal due under the Note, (c) amounts due under Section 3 Such payments shall be applied to each Periodic Payment in the order in which it became due Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3 **Funds for Escrow Items** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c) premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10 These items are called "Escrow Items " At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time Any such waiver may only be



**05 2946072**

12/02/05

in writing In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9 If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the



05 2946072

12/02/05

lien  Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

5. Property Insurance  Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance  This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires  What Lender requires pursuant to the preceding sentences can change during the term of the Loan  The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably  Lender may require Borrower to pay, in connection with this Loan, either  (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification  Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense  Lender is under no obligation to purchase any particular type or amount of coverage  Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect  Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained  Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument  These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance  Lender shall have the right to hold the policies and renewal certificates  If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices  If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender  Lender may make proof of loss if not made promptly by Borrower  Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened  During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds  Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower  If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

Initials:

05  2946072

12/02/05

the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim The 30-day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6 Occupancy Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7 Preservation, Maintenance and Protection of the Property; Inspections Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8 Borrower's Loan Application Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9 Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

-6(CA) (0008)                     Page 7 of 15          Initials: CM VB                Form 3005  7/01

12/02/05

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund

12/02/05

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds, Forfeiture All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

12 Borrower Not Released, Forbearance By Lender Not a Waiver Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

05 2946072

12/02/05

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower  Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower  Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers, Successors and Assigns Bound** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several  However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument  Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing  The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14  Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees  In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee  Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then  (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower  Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower  If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note)  Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15  Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing  Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means  Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise  The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender  Borrower shall promptly notify Lender of Borrower's change of address  If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure  There may be only one designated notice address under this Security Instrument at any one time  Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower  Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender  If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

05 2946072

12/02/05

**16 Governing Law, Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17 Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18 Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19 Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20 Sale of Note, Change of Loan Servicer, Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

05 2946072

12/02/05

requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

21 Hazardous Substances As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

05 2946072

12/02/05

**NON-UNIFORM COVENANTS** Borrower and Lender further covenant and agree as follows

22 **Acceleration, Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise) The notice shall specify (a) the default; (b) the action required to cure the default, (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it

23 **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

24 **Substitute Trustee** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

25 **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California



12/02/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____          _____ (Seal)
                                     ANDREW CAMERON BAILEY        -Borrower

_____          _____ (Seal)
                                     CONSTANCE BAXTER MARLOW      -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                          -Borrower

_____ (Seal)     _____ (Seal)
                -Borrower                                          Borrower

05 2946072

12/02/05

State of California
County of

On _____ before me, _____ personally appeared

ANDREW CAMERON BAILEY CONSTANCE BAXTER MARLOW

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

_____ (Seal)

**STEPHANIE BOGAN**
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

STATE OF ARIZONA
COUNTY OF _Maricopa_
The foregoing instrument was acknowledged
before me this 17th day of _Nov._, _2005_
By _Andrew Cameron Bailey & Constance Baxter Marlow_
Notary Public _____
My Commission Expires _Aug. 28 2009_

6(CA) (0008)                Page 16 of 16          Initials _____        Form 3005   1/01

05 2946072

11/30/2005 14 49 FAX 858 453 8397          CHICAGO TITLE UC                    ☑002/004
                                           12/02/05

STATE OF _Arizona_

COUNTY OF _Maricopa_                          } ss

On _Nov 17th, 2005_  before me, _Stephanie Bogan_

PERSONALLY APPEARED  _Andrew Cameron Bailey_
_Constance Baxter Marlow_

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

**STEPHANIE BOGAN**
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

This area for Official Notarial Seal

---

## OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could
prevent fraudulent reattachment of this form

CAPACITY CLAIMED BY SIGNER                    DESCRIPTION OF ATTACHED DOCUMENT

☐ INDIVIDUAL
☐ CORPORATE OFFICER
_____                     _____
          TITLE(S)                                TITLE OF TYPE OF DOCUMENT

☐ PARTNER(S)      ☐ LIMITED
                  ☐ GENERAL
☐ ATTORNEY-IN-FACT                            _____
☐ TRUSTEE(S)                                      NUMBER OF PAGES
☐ GUARDIAN/CONSERVATOR
☐ OTHER _____
_____                     _____
                                                  DATE OF DOCUMENT

SIGNER IS REPRESENTING
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____                     _____
                                              SIGNER(S) OTHER THAN NAMED ABOVE

ID 1232 (REV 5/01)        ALL-PURPOSE ACKNOWLEDGEMENT

**05 2946072**

12/02/05

## CERTIFICATION PURSUANT TO GOVERNMENT CODE SECTION 27361.7

SAN DIEGO
_____
Place of Execution

I certify under penalty of perjury that this material is a true copy of the original material contained in this document.

12·1·05
_____
Date

_____
Signature of Declarant

John R Hall
_____
Type or Print Name

05 2946072

12/02/05

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

STATE OF CALIFORNIA
COUNTY OF _____ } SS

On _____ before me, _____

personally appeared _____

personally known to me                 NAME(S) OF SIGNER(S)
- OR - proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument

WITNESS my hand and official seal

_____
SIGNATURE OF NOTARY

---

**OPTIONAL**

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form

**CAPACITY CLAIMED BY SIGNER**          **DESCRIPTION OF ATTACHED DOCUMENT**
  INDIVIDUAL
  CORPORATE OFFICER
_____        _____
        TITLE(S)                          TITLE OR TYPE OF DOCUMENT
  PARTNER(S)
  LIMITED or GENERAL
  ATTORNEY-IN-FACT
  TRUSTEE(S)                             _____
  GUARDIAN/CONSERVATOR                    NUMBER OF PAGES
  OTHER
                                         _____
                                          DATE OF DOCUMENT

**SIGNER IS REPRESENTING**
NAME OF PERSON(S( OR ENTITY(IES)         _____
                                          SIGNER(S) OTHER THAN NAMED ABOVE
_____

05 2946072

12/02/05

# ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this **16** day of **NOVEMBER 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **WELLS FARGO BANK, N.A**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at
**153 WESTERN AVENUE, GLENDALE, CA 91201**

[Property Address]
**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY**

**ADDITIONAL COVENANTS** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows
**A INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of **5.500 %** The Note provides for changes in the interest rate and the monthly payments as follows
**4 INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of **DECEMBER, 2010** , and may change on that day every 12th month thereafter Each date on which my interest rate could change is called a "Change Date "
**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information The Note Holder will give me notice of this choice
0060412178
**MULTISTATE ADJUSTABLE RATE RIDER - 1-Year Treasury Index (Assumable after Initial Period)** - Single Family - Freddie Mac **UNIFORM INSTRUMENT** Form 5110 3/04
VMP-834R (0405) 01
Page 1 of 4 Initials
VMP Mortgage Solutions Inc (800)521 7291
NMFL #8361 (FM6R) Rev 12/8/2004

**05 2946072**

12/02/05

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS                                                   percentage point(s) (       2.75 %) to the Current Index  The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)   Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.500 % or less than              2.750 %  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO                                                                          percentage point(s) (       2.000 %) from the rate of interest I have been paying for the preceding 12 months  My interest rate will never be greater than              10.500 %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change   The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**B  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1   UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS**

Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

Initials ACR
CBM

VMP-834R (0405) 01                    Page 2 of 4                    Form 5110 3/04

05 2946072

12/02/05

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

05 2946072

12/02/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

_____ (Seal)
ANDREW CAMERON BAILEY        -Borrower

_____ (Seal)
CONSTANCE BAXTER MARLOW       -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

_____ (Seal)          _____ (Seal)
                         -Borrower                                   -Borrower

VMP®-834R (0405).01          Page 4 of 4          Form 5110 3/04

05 2946072

12/02/05
**EXHIBIT A**

LOT 4, BLOCK 6 TRACT NO 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 143 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

05 2946072

**EXHIBIT B**

**This page is part of your document - DO NOT DISCARD**



## 20090117288



**Pages:**
**0002**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**01/29/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |

# TITLE(S) : ASSIGNMENT TRUST DEED



**L E A D S H E E T**



200901290130007



001198266

**SEQ:**
**21**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

2

01/22/2009

*20090117288*

Recording Requested By:
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P.O. BOX 961253
FT WORTH, TX 76161-0253

Space above this line for Recorder's use only

APN: 5626-005-004
TS No.: 20089070810770                    Title Order No.: 3945036

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WFMBS 2006-AR2

all beneficial interest under that certain Deed of Trust dated: 11/16/2005 executed by

ANDREW CAMERON BAILEY CONSTANCE BAXTER MARLOW

Trustor(s), to FIDELITY NATIONAL TITLE INS CO, as Trustee, and recorded on 12/2/2005 as Instrument No. 05 2946072, in Book , Page in the office of the County Recorder of LOS ANGELES County, CALIFORNIA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated: 1/21/09

WELLS FARGO BANK, N.A. BY FIRST AMERICAN
LOANSTAR TRUSTEE SERVICES, LLC, ITS ATTORNEY IN
FACT

By: Chet Sconyers, Certifying Officer

State of    TEXAS

County of    TARRANT

Before me _____ Shaunte D. Williams _____, on this day personally appeared,
Chet Sconyers _____, known to me to be the person whose name is subscribed to the
foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration
therein expressed.

Given under my hand and seal of office this 22 day of Jan, A.D. 2009

(Notary Seal)

Shaunte D. Williams

SHAUNTE D. WILLIAMS
Notary Public, State of Texas
My Commission Expires
May 23, 2012

21

**EXHIBIT C**

**This page is part of your document - DO NOT DISCARD**



# 20082240421

Pages: 0004

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/22/08 AT 08:00AM**

| | |
|---|---|
| FEES: | 17.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 17.00 |

## TITLE(S) : NOTICE DEFAULT



LEADSHEET



200812220190010



001148222

**SEQ:
21**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

2

Recording Requested By:
FIRST AMERICAN TITLE INSURANCE COMPANY

12/22/2008

*20082240421*

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE SERVI
P.O. BOX 961253
FORT WORTH, TX  76161

3945036

TS No.:        20089070810770
VA/FHA/PMI No.:

Space above this line for Recorder's use only

Pursuant to California Code Section 2924c(b)(1) please be advised of the following:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property.  No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$22,373.42** as of **12/18/2008**, and will increase until your account becomes current.  While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing.  In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your benficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by you creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO HOME MORTGAGE**
**c/o FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
**P.O. BOX 961253**
**FORT WORTH, TX  76161**
**877-276-1894**

[Page 1 of 2]

21

$\mathfrak{Z}_\mathfrak{7}$

TS No.: 20089070810770
VA/FHA/PMI No.:

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

Remember, **YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That FIRST AMERICAN LOANSTAR TRUSTEE SERVICES As Agent for the current beneficiary under a Deed of Trust dated 11/16/2005, executed by:

**ANDREW CAMERON BAILEY,**
**CONSTANCE BAXTER MARLOW,**

as Trustor to secure certain obligations in favor of WELLS FARGO BANK, N.A. as Beneficiary, recorded 12/2/2005, (as Instrument No.) 05 2946072, (in Book) , (Page) of Official Records in the Office of the Recorder of LOS ANGELES County, CALIFORNIA describing land therein as:

**AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST**

said obligations including ONE NOTE FOR THE ORIGINAL sum of $480,000.00.

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 06/01/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES, ASSESSMENTS, FEES, AND/OR TRUSTEE FEES.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: December 18, 2008

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
AS AGENT FOR THE CURRENT BENEFICIARY
By: FIRST AMERICAN TITLE INSURANCE COMPANY
    as Attorney-In-Fact

By: _Hank Duong_ _____
                             (signature)
        **HANK DUONG**

Name: _____

Title: _____

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

[Page 2 of 2]

4

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: ANDREW C BAILEY
Property Address: 153 WESTERN AVENUE
                  GLENDALE    CA  91201

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied property and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

* The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

* Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

* The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

* The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

* The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

Dated: 12/15/2008

Wells Fargo Home Mortgage

John Kennerly

**EXHIBIT D**

This page is part of your document - DO NOT DISCARD



## 20090410212



**Pages:** 0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**03/23/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |



**LEADSHEET**



200903230160005

00000231008



002021847

**SEQ:**
07

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**          T29



Requested and Prepared by:
**FIRST AMERICAN TITLE INSURANCE COMPANY**

When Recorded Mail To:
**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
P.O. BOX 961253
FORT WORTH, TX 76161          877-276-1894

TSG No.:        3945036
TS No.:         20089070810770
FHA/VA/PMI No.:

Space above this line for Recorder's use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/16/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 4/13/2009 at 11:30 AM, **FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**, as duly appointed Trustee under and pursuant to Deed of Trust recorded 12/2/2005, as Instrument No. 05 2946072, in book , page , of Official Records in the office of the County Recorder of LOS ANGELES County, State of CALIFORNIA. Executed by:

**ANDREW CAMERON BAILEY,**
**CONSTANCE BAXTER MARLOW,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) AT THE FRONT ENTRANCE TO THE POMONA SUPERIOR COURTS BUILDING, 350 W. MISSION BLVD., POMONA, CA

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 5626-005-004

The street address and other common designation, if any, of the real property described above is purported to be:

### 153 WESTERN AVENUE, GLENDALE, CA 91201

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $506,667.55. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

First American LoanStar Trustee Services                    Date:    3/23/2009
3 First American Way
Santa Ana, CA 92707

**HANK DUONG**    -- FOR TRUSTEE'S SALE
INFORMATION PLEASE CALL 530-672-3033

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**EXHIBIT E**

AZB

B5 (Official Form 5) (12/07)

| United States Bankruptcy Court | FILED | INVOLUNTARY PETITION |
| --- | --- | --- |

**District of Arizona**

| IN RE (Name of Debtor – If Individual: Last, First, Middle)<br><br>Bailey, Andrew, C. | ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.)<br><br>CLERK<br>U.S. BANKRUPTCY<br>DISTRICT OF ARIZONA |
| --- | --- |
| Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN (If more than one, state all.)    5378 | |
| STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)<br><br>2500 N. Page Springs Road<br>Cornville, AZ 86325 | MAILING ADDRESS OF DEBTOR (If different from street address)<br><br><br>**09-06979** |
| COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS<br>YAVAPAI                                      ZIP CODE | ZIP CODE |

| LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses) |
| --- |

**CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED**

☑ Chapter 7    ☐ Chapter 11

**INFORMATION REGARDING DEBTOR (Check applicable boxes)**

| Nature of Debts<br>(Check one box.)<br><br>Petitioners believe:<br><br>☐ Debts are primarily consumer debts<br>☑ Debts are primarily business debts | Type of Debtor<br>(Form of Organization)<br>(Check one box.)<br><br>☐ Individual (Includes Joint Debtor)<br>☑ Corporation (Includes LLC and LLP)<br>☐ Partnership<br>☐ Other (If debtor is not one of the above entities, check this box and state type of entity below.) | Nature of Business<br>(Check one box.)<br><br>☐ Health Care Business<br>☐ Single Asset Real Estate as defined in 11 U.S.C. § 101(51)(B)<br>☐ Railroad<br>☐ Stockbroker<br>☐ Commodity Broker<br>☐ Clearing Bank<br>☑ Other |
| --- | --- | --- |

| VENUE | FILING FEE (Check one box) |
| --- | --- |
| ☑ Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.<br><br>☐ A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District. | ☑ Full Filing Fee attached<br><br>☐ Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached.<br>*[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]* |

**PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR** (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
| --- | --- | --- |
| Relationship | District | Judge |

**ALLEGATIONS**
(Check applicable boxes)

1. ☑ Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).
2. ☑ The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.
3.a.☑ The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;
   or
   b.☐ Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

COURT USE ONLY

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA
'09 APR -9 P 12: 22

FILED

P.T.B-P
04/10/2009

AZB

B5 (Official Form 5) (12/07) – Page 2

Name of Debtor_____

Case No._____

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| x_____<br>Signature of Petitioner or Representative (State title)<br>Teresa J. Moore , Creditor<br>Name of Petitioner                Date Signed | x_____ Date<br>Signature of Attorney<br>Teresa J. Moore , Creditor<br>Name of Attorney Firm (If any)<br>P.O. Box 75217 Honolulu, HI 96836 |
| Name & Mailing<br>Address of Individual<br>Signing in Representative<br>Capacity     Teresa J. Moore<br>P.O. Box 75217<br>Honolulu, HI 96836 | Address<br>(818) 206-1146<br>Telephone No. |
| x_____<br>Signature of Petitioner or Representative (State title)<br>John L. Baxter<br>Name of Petitioner                Date Signed | x_____ Date<br>Signature of Attorney<br>John L. Baxter<br>Name of Attorney Firm (If any)<br>15685 Trapper Point Road, Sisters, OR 97759 |
| Name & Mailing<br>Address of Individual<br>Signing in Representative<br>Capacity     John L. Baxter<br>P.O. Box 1539<br>Sisters, OR 97759 | Address<br>(541) 549-6696<br>Telephone No. |
| x *Constance B. Marlow* 4/8/09<br>Signature of Petitioner or Representative (State title)<br>Constance B. Marlow<br>Name of Petitioner                Date Signed | x *Constance B. Marlow* 4/8/09<br>Signature of Attorney     Date<br>Constance B. Marlow<br>Name of Attorney Firm (If any)<br>2500 N. Page Springs Road, Cornville, AZ 86325 |
| Name & Mailing<br>Address of Individual<br>Signing in Representative<br>Capacity     2500 N. Page Springs Road<br>Cornville, AZ 86325 | Address<br>928-634-4335<br>Telephone No. |

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Teresa J. Moore<br>P.O. Box 75217 Honolulu, HI | Consulting Services | $75,000 |
| John L. Baxter<br>P.O. Box 1539, Sisters, OR | Unsecured Loan | $150,000 |
| Constance B. Marlow<br>2500 N. Page Springs Road | Property interest | $250,000 |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims $475,000 |

............continuation sheets attached

04/10/2009

AZB

B5 (Official Form 5) (12/07) – Page 2

Name of Debtor_____

Case No._____

## TRANSFER OF CLAIM

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

## REQUEST FOR RELIEF

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

_Teresa J. Moore_
Signature of Petitioner or Representative (State title)
**Teresa J. Moore , Creditor**
Name of Petitioner                    Date Signed

Name & Mailing         Teresa J. Moore
Address of Individual   P.O. Box 75217
Signing in Representative  Honolulu, HI 96836
Capacity

_Teresa J. Moore_  4-7-09
Signature of Attorney                    Date
**Teresa J. Moore , Creditor**
Name of Attorney Firm (If any)
**P.O. Box 75217 Honolulu, HI 96836**
Address
**(818) 206-1146**
Telephone No.

x_____
Signature of Petitioner or Representative (State title)
**John L. Baxter**
Name of Petitioner                    Date Signed

Name & Mailing         John L. Baxter
Address of Individual   P.O. Box 1539
Signing in Representative  Sisters, OR 97759
Capacity

x_____
Signature of Attorney                    Date
Name of Attorney Firm (If any)
**15685 Trapper Point Road, Sisters, OR 97759**
Address
**(541) 549-6696**
Telephone No.

x_____
Signature of Petitioner or Representative (State title)
**Constance B. Marlow**
Name of Petitioner                    Date Signed

Name & Mailing         2500 N. Page Springs Road
Address of Individual   Cornville, AZ 86325
Signing in Representative
Capacity

x_____
Signature of Attorney                    Date
**Constance B. Marlow**
Name of Attorney Firm (If any)
**2500 N. Page Springs Road, Cornville, AZ 86325**
Address
**928-634-5135**
Telephone No.

## PETITIONING CREDITORS

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Teresa J. Moore<br>P.O. Box 75217 Honolulu, HI | **Consulting Services** | $75,000 |
| John L. Baxter<br>P.O. Box 1539, Sisters, OR | **Unsecured Loan** | $150,000 |
| Constance B. Marlow<br>2500 N. Page Springs Road | **Property interest** | $250,000 |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims $475,000 |

_____continuation sheets attached

Apr 07 09 02:17p    The Pony Express                    5415491811              p.1
01/23/2009  01:31    8182422721              CAMERONBAXTER FILMS              PAGE  01

AZB

B5 (Official Form 5) (12/07) – Page 2

Name of Debtor _____

Case No. _____

| TRANSFER OF CLAIM |
|---|
| ☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). |

| REQUEST FOR RELIEF |
|---|
| Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached. |
| Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief. |

| x  Signature of Petitioner or Representative (State title) | x  Signature of Attorney                          Date |
|---|---|
| Teresa J. Moore , Creditor | Teresa J. Moore , Creditor |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
| | P.O. Box 75217 Honolulu, HI 96836 |
| Name & Mailing   Teresa J. Moore | Address |
| Address of Individual  P.O. Box 75217 | (818) 206-1146 |
| Signing in Representative  Honolulu, HI 96836 | Telephone No. |
| Capacity | |
| x  Signature of Petitioner or Representative (State title)  4/7/09 | x  Signature of Attorney                    4/7/09 |
| John L. Baxter | John L. Baxter |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
| | 16685 Trapper Point Road, Sisters, OR  97759 |
| Name & Mailing   John L. Baxter | Address |
| Address of Individual  P.O. Box 1539 | (541) 549-8896 |
| Signing in Representative  Sisters, OR 97759 | Telephone No. |
| Capacity | |
| x  Signature of Petitioner or Representative (State title) | x  Signature of Attorney                          Date |
| Constance B. Marlow | Constance B. Marlow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
| | 2600 N. Page Springs Road, Cornville, AZ 86325 |
| Name & Mailing   2500 N. Page Springs Road | Address |
| Address of Individual  Cornville, AZ 86325 | 928-634-4335 |
| Signing in Representative | Telephone No. |
| Capacity | |

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner   Teresa J. Moore<br>P.O. Box 75217 Honolulu, HI | Nature of Claim<br>Consulting Services | Amount of Claim<br>$75,000 |
| Name and Address of Petitioner   John L. Baxter<br>P.O. Box 1539, Sisters, OR | Nature of Claim<br>Unsecured Loan | Amount of Claim<br>$150,000 |
| Name and Address of Petitioner   Constance B. Marlow<br>2600 N. Page Springs Road | Nature of Claim<br>Property Interest | Amount of Claim<br>$250,000 |
| Note:   If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims  $475,000 |

_____ continuation sheets attached

**EXHIBIT F**

1 | **TIFFANY & BOSCO**
P.A.

2 | 2525 EAST CAMELBACK ROAD
SUITE 300

3 | PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000

4 | FACSIMILE: (602) 255-0192

5

6 | Mark S. Bosco
State Bar No. 010167

7 | Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

8

9 | 09-14716

### IN THE UNITED STATES BANKRUPTCY COURT

### FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE: | No. 2:09-bk-06979-RTBP |
| Andrew C. Bailey | Chapter 11 |
| Debtor. | |
| | MOVANT'S MOTION TO LIFT THE AUTOMATIC BANKRUPTCY STAY |
| Wells Fargo Bank, N.A. | |
| Movant, | RE: Real Property Located at 153 Western Ave. Glendale, CA 91201 |
| vs. | |
| Andrew C. Bailey, Debtor, Office of the US Trustee. | |
| Respondents. | |

Movant hereby request an order granting relief from the automatic stay of 11 U.S.C. 362(a), to permit Movant to foreclose the lien of its Mortgage/Deed of Trust on real property owned by the debtors, by trustee's sale, judicial foreclosure proceedings or the exercise of the power of sale, and to obtain possession and control of the real property.

This motion is supported by the attached Memorandum of Points and Authorities, which is incorporated herein by this reference.

Dated this 9th day of July, 2009.

Respectfully submitted,

TIFFANY & BOSCO, P.A.

BY  /s/ MSB # 010167
Mark S. Bosco
Leonard J. McDonald
Attorneys for Movant

## MEMORANDUM OF POINTS AND AUTHORITIES

Andrew C. Bailey filed a voluntary petition for protection under Chapter 11 of the Bankruptcy Code. (No trustee has been appointed and debtors continue to act as debtors in possession.)

Debtor has an interest in certain real property located in Los Angeles County, Arizona, more particularly described as:

Lot 4, Block 6 Tract No. 10116, in the City of Glendale, County of Los Angeles, State of California, as shown by Map on file in Book 143 pages 98 and 99 of Maps, in the office of the County Recorder of said County.

A Note was executed which is secured by a Deed of Trust, dated November 7, 2005, recorded in the office of the Los Angeles County Recorder's Office.  True copies of the Note, Deed of Trust are annexed as Exhibits "A" and "B", respectively, and made a part hereof by this reference.

Debtor is in default on the obligation to Movant for which the property is security, and payments are due under the Promissory Note from and after June, 2008.

/////

Debtor is in default on his obligation to Movant for which the property is security, and payments are due under the Promissory Note from and after June 1, 2008. The current default amount is set forth below:

| | |
|---|---|
| 11 Monthly Payments at $2,669.78 (June 1, 2008-April 1, 2009) | $29,367.58 |
| 3 Monthly Payments at $2,673.20 (May 1, 2009-July 1, 2009) | $ 8,019.60 |
| Accrued Late Charges | $ 1,320.00 |
| Corporate Advance | $ 2,610.86 |
| Foreclosure Fees and Costs | $ 2,380.86 |
| Bankruptcy Attorney Fees | $ 800.00 |
| Motion for relief Filing Fees | $ 150.00 |
| Total amount Due | $44,648.90 |

Furthermore, a payment becomes due on August 1, 2009 and on the 1st day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

Movant is informed and believes and therefore alleges that the Debtor and estate have no equity in the property; that the Property is not necessary to an effective reorganization in light of the amount of equity Movant's lien as well as other liens remaining unpaid on the Property; and that the Property, rents, issues and profits therefrom are burdensome and of inconsequential value to the estate.

Further, Movant is informed and believes and therefore alleges that the Debtor and the estate are not adequately protected based upon the Debtor's failure to make payments on a timely basis.

Debtor is indebted to Wells Fargo Bank, N.A. in the total amount of $480000.0000, plus accruing interest, costs, and attorneys' fees.

## CONCLUSION

Movant requests that the court enter an order vacating the automatic stay of 11 U.S.C. Section 362(a) and Movant may immediately enforce and implement the order for relief from the automatic stay as to the debtor, his/her bankruptcy estate, the property, and Movant; to allow Movant to foreclose the lien of its Deed of Trust or Mortgage; to evict debtor and/or successors of debtor; and to obtain ownership, possession and control of the Property.

DATED this 9th day of July, 2009.

BY  /s/ MSB # 010167
Mark S. Bosco
Leonard J. McDonald
2525 East Camelback Road, Ste. 300
Phoenix, Arizona 85016
Attorneys for Movant

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE


# INITIAL INTEREST[SM] ADJUSTABLE RATE NOTE
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

NOVEMBER 07, 2005          SAN DIEGO                    CALIFORNIA
        [Date]                      [City]                          [State]

153 WESTERN AVENUE, GLENDALE, CA 91201

[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****480,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

**(A) Time and Place of Payments**

I will make a payment every month on the first day of the month beginning on JANUARY 01, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on DECEMBER 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $ ********2,200.00 . This amount may change in accordance with subsection (C) below.

**(C) Monthly Payment Changes**

The First P&I Payment Due Date is                    01/01/16

0060412178

NMFL #8380 (MS1C) Rev 5/9/2005
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT                                                        Form 5507 5/04 (rev. 1/05)

VMP®-191N (0501)
VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5          Initials: ACR

Exhibit "A"

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4.  INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **DECEMBER, 2010** , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage point(s) ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than **10.500** % or less than **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.500** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5.  BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.





If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

(B) Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Form 5607 5/04 (rev. 7/05)
Initials: _____

## 11.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### (A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

### (B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Form 5507 5/04 (rev. 2/06)

Initials:

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ANDREW CAMERON BAILEY                    -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

_____ (Seal)
                                        -Borrower

*[Sign Original Only]*

Z

Recording Requested By:
~~WELLS FARGO BANK, N.A.~~

05 2946072

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121
Prepared By:
WELLS FARGO BANK, N.A.

16644 WEST BERNARDO DR., STE
101, SAN DIEGO, CA

58034043 - 707
5626·005 -004

————[Space Above This Line For Recording Data]————

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER    , 2005
together with all Riders to this document.

(B) "Borrower" is
CONSTANCE BAXTER MARLON, AN UNMARRIED WOMAN, AS TO AN UNDIVIDED
50% INTEREST AND ANDREW CAMERON BAILEY, A MARRIED MAN AS HIS SOLE
AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 50% INTEREST, AS
TENANTS IN COMMON

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0060412178

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3005  1/01

-6(CA) (0005)      ACB
                   CBM
Page 1 of 15
VMP MORTGAGE FORMS - (800)521-7291



12/2/05

3

Lender's address is P.O. BOX 10304, DES MOINES, IA 503060304

Lender is the beneficiary under this Security Instrument.
(D) "Trustee" is FIDELITY NATIONAL TITLE INS CO
17911 VON KARMAN, SUITE 200, IRVINE, CA 92614
(E) "Note" means the promissory note signed by Borrower and dated NOVEMBER 16, 2005
The Note states that Borrower owes Lender FOUR HUNDRED EIGHTY THOUSAND AND 00/100
Dollars

(U.S. $****480,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than DECEMBER 01, 2035.
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[x] Adjustable Rate Rider    [ ] Condominium Rider    [ ] Second Home Rider
[ ] Balloon Rider    [ ] Planned Unit Development Rider    [ ] 1-4 Family Rider
[ ] VA Rider    [ ] Biweekly Payment Rider    [ ] Other(s) [specify]

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP®-8(CA) (0005)      Page 2 of 5      Initials: CBM ACB      Form 3005 1/01

05 2946072

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the COUNTY                                        of LOS ANGELES                                        :

[Type of Recording Jurisdiction]                                        [Name of Recording Jurisdiction]

LEGAL DESCRIPTION ATTACHED HERE TO AND MADE A PART HEREOF:

SEE EXHIBIT "A" ATTACHED

*SEE ADJUSTABLE RATE RIDER

TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304

Parcel ID Number: 5626-005-004
153 WESTERN AVENUE
GLENDALE
("Property Address"):

which currently has the address of
[Street]
[City], California 91201        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

VMP®-6(CA) (0005)                                        Page 3 of 15                                        Initials: CBH AcB                                        Form 3005  1/01

05 2946072

12/2/05

5

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

05 2946072

12/2/05

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

05 2946072

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(CA) (0005).01    Page 6 of 15        Form 3005  1/01

**05 2946072**

12/2/05

8

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

Form 3005   1/01

05 2946072

12/2/05

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: CBM  HCS        Form 3005  1/01

05 2946072

12/2/05

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

VMP®-6(CA) (0005)



Form 3005 1/01

05 2946072

12/2/05

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

Initials: CBM  JCB

05 2946072

12/2/05

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

Initials CBM ACB

05 2946072

12/2/05

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

05 2946072

12/2/05

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.



-6(CA) (0005)

Page 13 of 15

CBM
ACB

Form 3005  1/01

05 2946072

12/2/05

15

BY SIGNING BELOW. Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____ (Seal)
ANDREW  CAMERON  BAILEY          -Borrower

_____ (Seal)
CONSTANCE  BAXTER  MARLOW        -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                            -Borrower

_____ (Seal)        _____ (Seal)
                    -Borrower                            -Borrower

-6(CA) (0005)                  Page 14 of 15                Form 3005   1/01

05 2946072

12/2/05

16

# EXHIBIT A

LOT 4, BLOCK 6 TRACT NO. 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 143 PAGES 98 AND
99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

05 2946072

12/2/05

*17*

State of California
County of                                                            } ss.

On                              before me,                              personally appeared

ANDREW CAMERON BAILEY CONSTANCE BAXTER MARLOW

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

STEPHANIE BOGAN
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

STATE OF ARIZONA
COUNTY OF Maricopa
The foregoing instrument was acknowledged
before me this 17th day of Nov. , 2005
By Andrew Cameron Bailey & Constance Baxter Marlow
Notary Public _____
My Commission Expires Aug. 28, 2009

05 2946072

11/30/2005 14:49 FAX 858 453 8397    CHICAGO TITLE CO    12/2/05    @002/004

18

STATE OF _Arizona_____ } SS.

COUNTY OF _Maricopa_____

On _Nov 17th, 2005_____ before me, _Stephanie Bogan_____

PERSONALLY APPEARED _Andrew Cameron Bailey_____
_Constance Baxter Marlow_____

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

**STEPHANIE BOGAN**
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

_This area for Official Notarial Seal_

---

## OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could
prevent fraudulent reattachment of this form.

CAPACITY CLAIMED BY SIGNER

☐ INDIVIDUAL ,
☐ CORPORATE OFFICER
                    TITLE(S)
☐ PARTNER(S)    ☐ LIMITED
                ☐ GENERAL
☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____

SIGNER IS REPRESENTING:
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____

DESCRIPTION OF ATTACHED DOCUMENT

_____
TITLE OF TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

ID-1232 (REV. 5/01)        ALL-PURPOSE ACKNOWLEDGEMENT

05 2946072

19

# ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this 16        day of NOVEMBER  2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to WELLS FARGO BANK, N.A.

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
153 WESTERN AVENUE, GLENDALE, CA  91201

[Property Address]
THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
A. INTEREST RATE AND MONTHLY PAYMENT CHANGES
The Note provides for an initial interest rate of        5.500 %. The Note provides for changes in the interest rate and the monthly payments as follows:
4. INTEREST RATE AND MONTHLY PAYMENT CHANGES
   (A) Change Dates
The interest rate I will pay may change on the first day of DECEMBER, 2010           , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."
   (B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.
0060412178
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT        Form 5110 3/04
VMP-834R (0405).01
Page 1 of 4      Initials: TB  CBM
VMP Mortgage Solutions, Inc.  (800)521-7291
NMFL #8361 (FM5R) Rev 12/8/2004

05 2946072

20

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS percentage point(s) ( 2.75 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.500 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

**1. UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

-834R (0405).01 Page 2 of 4 Initials: Form 5110 3/04

05 2946072

21

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

05 2946072

22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

11/13/05 ACB

11/17/05

_____ (Seal)
ANDREW CAMERON BAILEY    -Borrower

_____ (Seal)
CONSTANCE BAXTER MARLOW    -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

_____ (Seal)
                         -Borrower

VMP®-834R (0405).01          Page 4 of 4          Form 5110 3/04

05 2946072

12/2/05

23

# CERTIFICATION PURSUANT TO GOVERNMENT CODE SECTION 27361.7

SAN DIEGO
_____
Place of Execution

I certify under penalty of perjury that this material is a true copy of the original material contained in this document.

12·1·05
_____
Date

_____
Signature of Declarant

John R Hall
_____
Type or Print Name

05 2946072

12/2/05

24

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

STATE OF CALIFORNIA
COUNTY OF _____ } SS

On _____ before me, _____

personally appeared _____
NAME(S) OF SIGNER(S)

personally known to me      - OR - proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____
SIGNATURE OF NOTARY

**OPTIONAL**

Though the data below is not required by law, it may prove valuable to persons relying on the document and could
prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**

INDIVIDUAL
CORPORATE OFFICER

_____
TITLE(S)

PARTNER(S)
LIMITED or GENERAL
ATTORNEY-IN-FACT
TRUSTEE(S)
GUARDIAN/CONSERVATOR
OTHER:

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S( OR ENTITY(IES)

_____
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OR TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

05 2946072

**EXHIBIT G**

SO ORDERED.

**TIFFANY & BOSCO**
P.A.
2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192

Dated: October 02, 2009

REDFIELD T. BAUM, SR
U.S. Bankruptcy Judge

Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

09-14716/0060412178

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

IN RE:

Andrew C. Bailey
    Debtors.

Wells Fargo Bank, N.A.
    Movant,

  vs.

Andrew C. Bailey, Debtors; Office of the US
Trustee, Trustee.

    Respondents.

No. 2:09-bk-06979-RTBP

Chapter 11

O R D E R

(Related to Docket #22)

This matter having come before the Court for a Preliminary Hearing on September 28, 2009, Movant appearing by and through its attorney, Tiffany & Bosco, P.A., Debtor appearing by and through their counsel, pro se, and good cause appearing,

**IT IS HEREBY ORDERED** that all stays and injunctions, including the automatic stays imposed by U.S. Bankruptcy Code 362(a) are hereby terminated as to Movant with respect to that certain real property which is subject of a Deed of Trust dated November 7, 2005, and recorded on December 2,

1   2005 in 05-2946072, in the office of the Los Angeles County Recorder at wherein Wells Fargo Bank,

2   N.A. is the current beneficiary and Andrew C. Bailey have an interest in, further described as:

3

4        Lot 4, Block 6 Tract No. 10116, in the City of Glendale, County of Los Angeles, State of
    California, as shown by Map on file in Book 143 pages 98 and 99 of Maps, in the office of the County
    Recorder of said County.

5

6        IT IS FURTHER ORDERED that this Order vacating the automatic stay imposed by U.S.

7   Bankruptcy Court Code 362(a) shall be binding and effective in the event the Debtor converts this case to

8   another chapter under the U.S. Bankruptcy Code.

9        DATED this ____day of _____, 2009.

10

11                                    _____

                                      JUDGE OF THE U.S. BANKRUPTCY COURT
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# Notice Recipients

District/Off: 0970−2                User: taylore                Date Created: 10/5/2009
Case: 2:09−bk−06979−RTBP           Form ID: pdf004              Total: 2

**Recipients of Notice of Electronic Filing:**
db      ANDREW C BAILEY        andrew@cameronbaxter.net
aty     MARK 3 BOSCO           ecf@tblaw.com

                                                    TOTAL: 2

FORM ntentry

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re:                                              Case No.: 2:09–bk–06979–RTBP

ANDREW C BAILEY                                     Chapter: 11
2500 N PAGE SPRINGS RD
CORNVILLE, AZ 86325
**SSAN:** xxx–xx–5378
**EIN:**

Debtor(s)

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

You are hereby notified that on October 5, 2009, this Court entered the enclosed judgment or order on the docket for the above–entitled proceeding.

I hereby certify that on this date a copy of this notice and the judgment or order were sent to the Bankruptcy Noticing Center for mailing to the parties and the U.S. Trustee.

**Date: October 5, 2009**

**Address of the Bankruptcy Clerk's Office:**          Clerk of the Bankruptcy Court:
U.S. Bankruptcy Court, Arizona
230 North First Avenue, Suite 101                      **Brian D. Karth**
Phoenix, AZ 85003–1727
Telephone number: (602) 682–4000
www.azb.uscourts.gov

## Notice Recipients

District/Off: 0970−2         User: taylore          Date Created: 10/5/2009
Case: 2:09−bk−06979−RTBP     Form ID: ntentry       Total: 2

**Recipients of Notice of Electronic Filing:**
db      ANDREW C BAILEY       andrew@cameronbaxter.net
aty     MARK 3 BOSCO          ecf@tblaw.com

                                                                    TOTAL: 2

**EXHIBIT H**

1

2   **ANDREW C. BAILEY**

3   2500 N. Page Springs Rd
    Cornville, AZ 86325

4   928 634-4335
    *Self-Represented Litigant*

5

6                    IN THE UNITED STATES BANKRUPTCY COURT

7                        FOR THE DISTRICT OF ARIZONA

8   | **ANDREW C. BAILEY** | **Chapter 11** |
    |---|---|

9   Plaintiff    BK Case #: 2:09-bk-06979-PHX-RTBP
                 AP Case #: 2:09-ap-01727-RTBP

10

11  VS
    WELLS FARGO BANK NA a/k/a WELLS
    FARGO HOME MORTGAGE

12  (WELLS); US BANK NA AS TRUSTEE FOR
    WFMBS 2006-AR2 (US BANK); LEHMAN

13  BROTHERS INC a/k/a LEHMAN
    BROTHERS BANK FSB (LEHMAN), and all

14  persons claiming by, through, or under such

15  person, all persons unknown, claiming any
    legal or equitable right, title, estate, lien, or

16  interest in the property described in the

17  complaint adverse to Plaintiff's title thereto;
    and JOHN DOES "1-10" inclusive.

18                                    Defendant

**SECOND
AMENDED COMPLAINT
FOR LACK OF STANDING,
VOID CONTRACT,
DAMAGES FOR FRAUD,
FALSE REPRESENTATION,
PREDATORY LENDING,
QUIET TITLE,
INJUNCTIVE RELIEF**

FILED

2010 JUN -2 PM 2:24

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

19

20  **INTRODUCTION**

21  This matter arises out of Defendant's unlawful commencement of a non-judicial foreclosure

22  proceeding against Plaintiff Andrew C. Bailey without proper authority or documentation.

23

24  Defendant is no longer in possession of Plaintiff's unaltered "Genuine Original Promissory

25  Note" and refuses to produce the Note in its unaltered form. Defendant is attempting to

- 1 -

conceal the alterations to or non-existence of the Note by concealing the Note and attempting

to take Plaintiff's property through an unlawful non-judicial foreclosure proceeding. Plaintiff

questions the Jurisdiction of the non-judicial court and foreclosure proceeding. Plaintiff

questions the veracity of all the alleged paperwork to move forward with non-judicial

foreclosure against Plaintiff.  Plaintiff and Defendant know the alleged paperwork will not

hold up under the scrutiny of the Court and Best Evidence Rules strictly enforced by the

Court. The law is clear. Plaintiff invokes his rights pursuant to U.C.C.3-501(b)(2). Defendant

must exhibit the instrument.

**Plaintiff Andrew C. Bailey, in pro per, alleges:**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Parties**

3. There are multiple parties known and unknown who claim or may claim an interest in

Plaintiff's property.

4. Plaintiff is a resident of the State of California living in and otherwise using and

occupying his home located at 153 Western Avenue, Glendale, CA 91201(the Property).

5. Defendant WELLS is and was, at all times material, a corporation organized in the State

of Delaware doing business in the State of California. Wells is and was, at all times material

hereto, the "loan originator" and "servicer" of the "subject loan".

6. Defendant US BANK, NA is and was, at all times material, a corporation organized in the State of Minnesota doing business in the State of California.

7. Defendant LEHMAN (which changed its name to Aurora Bank, FSB in April 2009) is and was, at all times material, a corporation organized in the State of Delaware doing business in the State of California.

8. JOHN DOES 1-10 are securitization parties: undisclosed, unnamed and unknown investors, participants, corporate or other entities, conduits, trustees, servicers, custodians and others in a complex mortgage securitization scheme that involved the Defendants and other known and unknown parties.

9. The term "Defendant" hearinafter refers to each and all of the above-named defendants collectively and individually.

10. The parties claim or may claim an interest in the property as a result of the securitization of an alleged "mortgage loan transaction" between Plaintiff and Defendant WELLS.

11. Plaintiff has the right to know who the parties are and whether they are parties in interest.

12. Plaintiff has the right to know who the parties are and whether they are creditors.

13. Plaintiff has the right to a full accounting of all debits and credits to his alleged account

-3-

with the parties.

**Procedural History**

14. On April 8th, 2009 three of Plaintiff's unsecured creditors filed an involuntary petition against the Plaintiff for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

15. On May 28th, 2009 (the "Petition Date") this Court entered an order granting Plaintiff's motion to convert to Chapter11 thereby commencing the above-captioned lead case.

16. On December 23, 2009, Plaintiff filed the instant adversary complaint. This pleading is the second amendment to that complaint.

**Background Material Facts**

17. Plaintiff makes no admissions unless expressly admitted herein.

18. Plaintiff engaged in a purported "mortgage loan transaction" with Defendant WELLS on or about November 7, 2005.

19. The purported "mortgage loan transaction" with Defendant was and is part of a securitization scheme. Plaintiff's "loan" was securitized.

20. The purported "mortgage loan transaction" was not a loan, but consisted merely of

06/02/2010

transfers and exchanges of credits amongst bookkeeping entities and entries.

21. It has not been proved that there was a loan from Defendant to Plaintiff as alleged. A note is only "evidence of debt" not the debt itself. In Re: Matthews v. Hinton (1965) 234 Cal.App.2d 736, [44 Cal.Rptr. 692]. "A 'note' is merely evidence of the debt, not the debt itself, which is what is secured." 1 Mortgages, Deeds of Trusts, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2010).

22. WFMBS 2006-AR2 is a securities trust that allegedly includes Plaintiff's "loan".

23. Plaintiff has secured the services of an expert in securitized residential mortgage products and mortgage-backed securities who has executed a Declaration of his findings, opinions and recommendations. [Exhibit "B" at dkt #135 in the lead case] The Declaration will be updated and expanded during discovery.

24. Defendant represents that Plaintiff has an obligation owing and due.

25. Defendant claims to have documents with Plaintiff's bona fide signature.

26. Plaintiff never received an executed copy of the alleged promissory note or agreement that possesses Plaintiff's bona fide signature.

27. Defendant has not established the validity of the alleged promissory note. California Uniform Commercial Code section 3308 states that the burden of proof of establishing validity is on the person claiming validity. See California Commercial Code

-5-

06/02/2010

section 3308 <http://www.leginfo.ca.gov/cgi-bin/displaycode?section=com&group=03001-04000&file=3301-3312

28. Plaintiff demands strict compliance with the Rules of Evidence.

29. Plaintiff did not enter into any agreement whereby Plaintiff allowed Defendant to take his note to pay off a third-party loan which Defendant obtained to fund Plaintiff's "loan".

30. Defendant used Plaintiff's note as "value" and returned the proceeds as a "loan", as evidenced by the "pay to the order of. . .without recourse" endorsement.

31. Defendant is not a holder in due course.

32. Defendant is not a holder.

33. The alleged Limited Power of Attorney presented by Defendant as proof of its authority is a forgery. (See Objection: Dkt #175, May 3, 2010 in lead case).

34. Defendant has not produced the original promissory note with Plaintiff's name on it.

35. Plaintiff's "loan transaction" was and is subject to undisclosed agreements to which Plaintiff was not a party, in violation of state and federal disclosure statutes.

36. Plaintiff has no obligation under those agreements.

37. Plaintiff has not defaulted on any valid loan obligation.

06/02/2010

38. On or about December 22, 2008 Plaintiff received a notice alleging default on the "loan".

39. No such default has been accounted for or proven.

40. Third party payments have been made on the obligation and money has changed hands.

41. No full accounting including third party payments was ever provided in support of the alleged default.

42. On September 21, 2009 Plaintiff served a Qualified Written Request pursuant to the Real Estate Settlement Procedures Act 12 U.S.C. § 2605 and a Debt Validation Letter pursuant to the Fair Debt Collection Practices Act 15 U.S.C §1692 on Defendant.

43. Defendant dishonored the statutory requests and provided no 20-day acknowledgement and only a partial and insufficient 60-day response to the QWR and DVL.

44. Plaintiff served his First Set of Interrogatories and First Request to Produce Documents on Defendant on January 11, 2010. (Filed January 12, 2010 at dkt #123 in the lead case).

45. Defendant has not answered Plaintiff's First Set of Interrogatories and First Request to Produce Documents.

46. Defendant has produced no enforceable original note with any assignment or allonge proving up the chain of title.

06/02/2010

47. Defendant has failed to prove that it is the holder of rights under the alleged note, which would permit the legal holder thereof to declare a default which would trigger a foreclosure.

47. Defendant's July 9, 2009 Motion for Relief from the Automatic Stay (dkt#22 in the lead case) was filed under Arizona's or California's non-judicial foreclosure statute.

48. Plaintiff objected to and opposed the Motion for Relief from the Automatic Stay on July 24, 2009 (dkt#36 in the lead case), thus making the proceeding judicial.

49. From the moment of Plaintiff's objection on July 24, 2009 he had the right to discovery and an evidentiary hearing.

50. Plaintiff opposed Defendant's Motion on the grounds that Defendant lacks standing and is not "the holder in due course" or "the current beneficiary" as falsely asserted.

51. Defendant has never proved foundation, standing or authority to bring an action of foreclosure.

52. Defendant WELLS is only the alleged "servicer" of the "loan", and as such cannot institute or maintain a foreclosure proceeding without proper authority from the true holder of the note.

53. Based on the findings of the expert witness, there is conflict between the representations of Defendant and the expert witness, requiring inquiry and an evidentiary hearing.

06/02/2010

54. Defendant US BANK as "trustee" for unnamed "Certificateholders" of a "trust" has failed to demonstrate that it and not the Certificateholders is the party with the true ownership interest in the "loan"

55. Defendant US BANK as "trustee" for unnamed "Certificateholders" has failed to demonstrate that it has any authority from the Certificateholders.

56. Defendant refuses to explain the business relationships among the securitization parties, remaining silent on the subject, thereby denying and concealing the very existence of the parties, the agreements among them, and the substantial money that changed hands.

57. Plaintiff has received conflicting representations as to the alleged creditor's identity, and believes there exists a title defect or cloud on his title.

58. Defendant has not demonstrated actual or threatened injury as a consequence of any default.

59. Defendant has benefitted financially from the "loan transaction" with Plaintiff.

60. Severance of the ownership and possession of the original note and mortgage has occurred.

61. Plaintiff's Second Amended Complaint is timely filed and served in compliance with the Court's instructions.

06/02/2010

62. Defendants, and all of them, are included in each and all of Plaintiff's allegations as and where applicable.

63. Exhibits and declarations previously filed by Plaintiff in this adversary proceeding and as Debtor in the lead case shall not be construed as admissions.

64. Plaintiff will file and serve memoranda as necessary in support of the following five causes of action:

### FIRST CAUSE OF ACTION

### (LACK OF STANDING)

(All Defendants)

65. Plaintiff incorporates and re-alleges paragraphs 1-64.

66. Plaintiff requests that the Court enter an Order declaring that Defendant lacks standing to foreclose on Plaintiff's residence.

67. Defendant does not have standing to seek and receive stay relief on Plaintiff's residence for reasons set forth below.

See, for example: In Re: Foreclosure Cases: 3:07-cv-00286-TMR-MRM Standing: Federal courts have only the power authorized by Article III of the United States Constitution and the statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area School District*, 475 U.S. 534, 541 (1986). As a result, a plaintiff must have constitutional standing in order for a federal court to have jurisdiction. *Id.*

Plaintiffs have the burden of establishing standing. *Loren v. Blue Cross & Blue Shield of*

*Michigan*, No. 06-2090, 2007 WL 2726704 at *7 (6th Cir. Sept. 20, 2007). If they cannot do so, their claims must be dismissed for lack of subject matter jurisdiction. *Id.* (citing *Central States Southeast & Southwest Areas Health and Welfare Fund v. Merck-Medco Managed Care*, 433 F.3d 181, 199 (2d Cir. 2005)).

68. Defendant failed to provide foundation, admissible evidence or certified documentation that supports its assertion of standing or authority to foreclose pursuant to UCC 3-501(b)(2).

§ 3-501. Presentment:
(b) The following rules are subject to Article 4, agreement of the parties, and clearing-house rules and the like:
(2) Upon demand of the person to whom presentment is made, the person making presentment must (i) exhibit the instrument, (ii) give reasonable identification and, if presentment is made on behalf of another person, reasonable evidence of authority to do so, and (iii) sign a receipt on the instrument for any payment made or surrender the instrument if full payment is made.

69. Plaintiff hereby demands, pursuant to UCC 3-501(b)(2) that Defendant present and exhibit the instrument for this Court's inspection and present to this Court reasonable evidence of their authority to exhibit the instrument.

70. If Defendant refuses to present the instrument to this Court then Defendant is in violation of UCC 3-501 and therefore has no standing in this case.

71. Defendant has not demonstrated that it is the holder in due course or that is it the agent of the holder in due course.

72. Plaintiff moves this Court to have Defendant stipulate and admit on and for the record whether or not they are the creditor and whether or not they are the holder in due course in this matter.

73. If Defendant refuses to admit as to whether they are or are not the creditor and/or the holder in due course the defendant must be considered in contempt of court.

06/02/2010

74. The "Limited Power of Attorney" from US BANK to WELLS is fabricated, null and void. (See Debtor's Objection: Dkt #175 on May 3, 2010 in lead case).

75. There is no evidence that Defendant has been damaged.

76. There is no evidence as to the existence or identity of a real holder in due course.

77. The alleged note evidencing Plaintiff's obligation is invalid.

78. The wrong party is named as lender on the alleged note and the alleged deed of trust.

**Statement of Facts (applicable to each of the causes of action)**

79. The "loan transaction" (the "loan") was arranged by Wells Fargo Bank, NA on or about November 7, 2005.

80. The "loan" at the time of origination was subject to pre-existing undisclosed securitization contracts and agreements.

81. The "loan" was and is subject to securitization contracts and agreements pursuant to a Pooling and Servicing Agreement.

82. The alleged note and deed of trust ("loan") have been securitized, sold, transferred and assigned.

06/02/201

83. Plaintiff could not possibly have suspected, known or understood anything about the complex agreements, plans and intentions among and between the Defendants known and unknown until very recently.

84. No evidence has been offered that the "loan" is actually in the "Trust" or that the "Trust" actually exists or that Defendant ever had or still retains any residual interest in such "Trust".

85. The copy of the alleged note offered as Exhibit "A" in Defendant's July 9, 2009 Motion for Lift of Stay (dkt # 22 in lead case) carries no endorsements or allonge evidencing any sales, transfers or assignments of the alleged note.

86. Payments including third-party payments have been made and money has changed hands on Plaintiff's obligation.

87. Full disclosure of the securitization parties has not been provided.

88. A full accounting including all third-party payments and debits has not been provided.

89. No evidence has been provided that the "loan" is in WFMBS 2006-AR2 (the alleged "Trust")

90. No evidence has been provided that the Certificateholders in the Trust have authorized Defendant to act in its behalf.

91. No Bond or Bond Indenture has been produced or offered.

92. Defendant lacks standing to seek relief, and yet has received non-judicial relief from the

06/02/2010

court in the form of a lift of stay which is in effect a summary judgment based on untested and opposed representations, allegations and documentation.

93. The matter is judicial, not non-judicial, because Plaintiff objected.

94. Therefore Plaintiff asserts his right to due process.

95. Due process requires discovery, admitted evidence, sworn witnesses and a hearing.

96. No discovery has been conducted, no evidence has been admitted, no witnesses have testified, no hearing has occurred.

97. Defendant lacks standing because there is no showing that a case or controversy exists between Defendant and Plaintiff. Under the terms of the alleged note, prescribed payments are due to the note holder. The note holder is either the original mortgagee or a successor in interest. Defendant is neither. Defendant has not proved that it is the holder of the note or the representative of the holder of the note. "To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant." United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006), Friedman v. New York Life Ins. Co., 985 So.2d 56, 2008 (Fla.App. 4 Dist., April 16, 2008).

98. Defendant lacks standing because the note was securitized. There must be an allegation that the mortgagee, allegedly Defendant, is the present holder and owner of the mortgage and note. Edason v. Central Farmers Trust Co., 129 So. 698 (Fla.1930); but see Graham v. Fitts, 43 So. 512 (Fla.1907). See also Hotel Management Co. v. Krickl, 158 So. 118 (Fla.1934); O'Malley v. Harris, 173 So. 355 (Fla.1937); Lakeland Prod. Credit Assn. v.

- 14 -

Coachman, 5 So.2d 49 (Fla.1941); Willark House v. Espinosa, 328 So.2d 514 (Fla. 3 DCA 1976); Shapiro v. Family Bank, 538 So.2d 944 (Fla. 3 DCA 1989). Owner and Holder of Mortgage Note: Philogene v. ABN Amro Mortg. Group Inc., 948 So. 2d 45 (Fla. 4th DCA 2006); Mortgage Electronic Registration Systems, Inc. v. Revoredo, 955 So. 2d 33 (Fla. 3d DCA 2007); Mortgage Electronic Registration Systems, Inc. v. Azize, 965 So. 2d 151 (Fla. 2d DCA 2007).

99. By transferring ownership and holding of the mortgage promissory note to certificate holders of a publicly traded security, the transfer negated the ability of the trustee or servicing agent to sue as the owner or holder of the promissory note. A mortgage cannot be foreclosed on behalf of the owner and holder of a note who does not actually own or hold the note. There is a difference between what is required to enforce a note and what is required to enforce a mortgage in foreclosure. The promissory note as a note remains enforceable if it has not been paid, but not the mortgage. The note is not secured by the Property.

100. For the foregoing reasons, Defendant has no standing to foreclose.

## SECOND CAUSE OF ACTION

### (VOID CONTRACT)

(All Defendants)

101. Plaintiff incorporates and re-alleges paragraphs 1-100.

102. Plaintiff requests that the Court enter an Order declaring that the alleged contract between Plaintiff and Defendant is non-existent, without effect, null, and void.

06/02/2010

103. There is and was no contract because the "borrower" (Plaintiff) and the "lender" (Defendant) did not share any expectation that the "borrower" could perform. Plaintiff intended to borrow money, pay it back, and own the property. Defendant intended to sell the loan to investors before Plaintiff defaulted and then profit by collecting settlements, after the inevitable default, and from insurance companies as a result of purchasing credit default swaps.

104. Further, Defendant intended and expected to take the collateral and take title to Plaintiff's home after the default.

105. There was therefore no meeting of the minds or shared expectations between the parties, a threshold requirement for a valid contract.

106. The "loan" was not the straightforward home re-finance it was represented to be.

107. Defendant did not use its own money to fund the "loan" and acquire Plaintiff's promissory note.

108. Defendant sold Plaintiff's promissory note and used the proceeds of the sale to fund the "loan".

109. Plaintiff reasonably believed he was achieving his goal of home ownership and future financial security.

110. Defendant intended to make money from the securitization and servicing of the "loan", and from insurance payouts, credit default swaps, and from other third-party sources.

111. Defendant knew that Plaintiff could not repay, but ignored and bypassed reasonable underwriting standards in approving the "loan".

06/02/2010

112. Additionally, the "loan" was and is subject to undisclosed pre-existing and subsequent contracts and agreements with and among undisclosed parties.

113. Plaintiff is not and was never a party to any of these additional contracts and agreements, and is not obligated to any of the terms and conditions thereof.

114. For the reasons set forth above there is not and never was a contract between Plaintiff and Defendant.

115. For the foregoing reasons, the alleged contract is void.

## THIRD CAUSE OF ACTION

### (FRAUD, FALSE REPRESENTATION, PREDATORY LENDING)

### (All Defendants)

116. Plaintiff incorporates and re-alleges paragraphs 1-115.

117. Plaintiff requests that the Court enter an Order declaring Defendant guilty of fraud, false representation, material concealment, and predatory lending.

In Re: Norkin v. United States Fire Ins. Co., 237 Cal.App.2d 435, 437 [47 Cal.Rptr. 15], "Initially it is to be noted that 'It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which

06/02/2010

amount to mere conclusions.' 'The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'

118. Plaintiff alleges nine elements of fraud as set forth below:

(1) Defendant represented itself as the lender in the "loan transaction".

(2) The representation was false: Defendant was not the lender. Defendant was the "straw man" or nominee for an undisclosed party in a securitization scheme.

(3) The representation was material to Plaintiff's decision to re-finance, to enter into the contract, and to sign the agreement.

(4) At the time Defendant made the representation Defendant knew the representation was false or misleading.

(5) The representation was made with intent to deceive. Defendant meant for Plaintiff to rely on the representation that it was the lender. Defendant intended to deprive Plaintiff of the legal right and title to his home.

(6) Plaintiff did not know the representation was misleading or false.

(7) Plaintiff reasonably relied on the representation.

(8) Plaintiff's reliance was justified. Plaintiff believed he was making a sound

06/02/2010

investment based on Defendant's inflated appraisal and the representation that he could re-finance in the future.

(9) Plaintiff has suffered economic and other damage as a result of his reliance. Plaintiff is in a much worse position than he was in before the re-finance.

## 120. Legal Discussion

The relationship between parties can make a difference in determining whether a statement is fraudulent. A misleading statement is more likely to be fraudulent when one party has superior knowledge in a transaction, and knows that the other is relying on that knowledge, than when the two parties possess equal knowledge.

Misleading statements are most likely to be fraudulent where one party exploits a position of trust and confidence, or a fiduciary relationship. A statement need not be affirmative to be fraudulent. When a person has a duty to speak, silence may be treated as a false statement. This can arise if a party who has knowledge of a fact fails to disclose it to another party who is justified in assuming its nonexistence. Such an omission may be considered fraudulent. This is constructive fraud, and it is usually inferred when a party is a fiduciary and has a duty to know of, and disclose, particular facts.

There may be circumstances rendering failure to disclose facts fraud, invalidating a contract. The rule that failure to disclose facts is not fraud does not apply where the circumstances are such as to impose a duty to disclose them. Thus, where, with intent to deceive, a party to a contract conceals material facts which good faith requires him or her to disclose, this is equivalent to a false representation.

In determining whether a party owed a duty to speak of a material fact, as to which he or she was silent, and hence was guilty of fraud invalidating the contract, the

- 19 -

parties' situation, matters dealt with, and subject matter in hand must be considered.
The duty to speak, rendering silence fraudulent, may arise from the confidential
relation of the parties to the contract, or where one party knows that the other relies
on him or her to tell him or her as to the facts of the case, in which case a duty arises
not to conceal anything material to the bargain, although the parties do not stand in
what is generally described as a fiduciary relation.

121. 15 U.S.C. § 1692 (E) STATES THAT a "false, deceptive, and misleading representation, in
connection with the collection of any debt", includes the false representation of the character or
legal status of any debt and further makes a threat to take any action that cannot legally be taken a
deceptive practice.

122. Plaintiff sues Defendant for damages: statutory and actual damages, return of all
interest and principal paid, legal fees, treble damages and other damages known and
unknown.

123. Defendant borrowed money from undisclosed parties to fund a "loan" which is
allegedly secured by the Property.

124. Defendant did not use Defendant's own money to fund the "loan".

125. Defendant has unclean hands.

126. The "loan" was a "no-documentation, interest-only" transaction.

127. No income verification was asked for or required.

- 20 -

06/02/201

128. Defendant knew Plaintiff would be unable to pay off the "loan".

129. Defendant knew Defendant would get the collateral, namely title to Plaintiff's home.

130. No attorney was present at the "loan closing".

131. The "closing documents" were couched in complex, confusing legalese.

132. The "closing documents" named the wrong party as lender.

133. Plaintiff was fraudulently induced to take the deal.

134. Plaintiff would not have taken the deal had he known the true facts.

135. The foregoing facts prove that Defendant engaged in predatory lending.

136. Defendant made false and misleading representations and remained silent when it should have spoken as set forth below:

   (a) Defendant falsely identified itself as the lender in the closing documents.

   (a) The note falsely identifies Defendant as the lender.

   (b) The deed of trust falsely identifies Defendant as the lender.

06/02/201

(c) Defendant was not the lender (the source of the money) but merely the nominee for an undisclosed principal.

(d) Defendant subsequently misrepresented itself as "the current beneficiary" at the two hearings concerning Defendant's motion for relief from the automatic stay.

(e) Defendant concealed, refused and failed to disclose or explain or account for its relationship with and among the various securitization parties, remaining silent on the subject, thereby denying and concealing the very existence of the parties, the agreements among them, and the money that changed hands.

137. There are circumstances that render failure to disclose facts fraud, invalidating a contract. The rule that failure to disclose facts is not fraud does not apply where the circumstances are such as to impose a duty to disclose them. Where, with intent to deceive, a party to a contract conceals material facts which good faith requires him or her to disclose, this is equivalent to a false representation.

138. In determining whether a party owed a duty to speak of a material fact, as to which he or she was silent, and hence was guilty of fraud invalidating the contract, the parties' situation, matters dealt with, and subject matter in hand must be considered. The duty to speak, rendering silence fraudulent, may arise from the confidential relation of the parties to the contract, or where one party knows that the other relies on him or her to tell him or her as to the facts of the case, in which case a duty arises not to conceal anything material to the bargain, although the parties do not stand in what is generally described as a fiduciary

- 22 -

relation.

139. Plaintiff will be filing and serving a detailed supplemental memorandum in support of this cause of action.

## FOURTH CAUSE OF ACTION

## (TO QUIET TITLE)

140. Plaintiff incorporates paragraphs 1-139.

141. Plaintiff requests that the Court enter an Order quieting title to the Property and declaring that Plaintiff and his partner are the owners of the Property, and that Defendant has no interest in the Property adverse to the Plaintiff.

142. The basis of Plaintiff's title is a Grant Deed granting the Property in fee simple to Plaintiff dated September 28, 2005 and recorded in the official records of Los Angeles County, CA as Instrument # 20052336464 APN # 5626-005-004.

143. Plaintiff and plaintiff's partner Constance Baxter Marlow are the only parties with any interest in the property. Plaintiff and Plaintiff's partner are the sole owners of the Property.

144. There is slander of Plaintiff's title and a cloud on Plaintiff's title.

145. Defendant claims or appears to claim an interest adverse to Plaintiff in the Property as purported holder of a note or Deed of Trust against the Property.

- 23 –

146. Some of the known and unknown defendants described as "DOES" as set forth above may also claim interests in the Property adverse to Plaintiff as assignees and successors of Defendant.

147. There is no balance left owing on the obligation.

148. There is no holder in due course as a consequence of the securitization of the alleged promissory note.

149. The alleged promissory note, if such can be found, is void.

150. The alleged deed of trust is void.

151. There is no contract or binding agreement between Plaintiff and Defendant.

152. Plaintiff seeks to quiet title against the claims of Defendant, the claims of successor defendants, the claims of all unknown defendants whether or not the claim or cloud is known to plaintiff and the unknown, uncertain or contingent claim, if any, of any Defendant.

153. The claims of Defendant are without any right whatsoever and as such Defendant has no right, title, estate, lien or interest whatever in the Property or any part thereof.

154. Plaintiff seeks to quiet title as of a date to be determined.

06/02/201

# FIFTH CAUSE OF ACTION

## (INJUNCTIVE RELIEF)

### TRO, PRELIMINARY AND PERMANENT INJUNCTIONS

155. Plaintiff incorporates and re-alleges paragraphs 1-154.

156. Plaintiff asks the Court for an emergency temporary retraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from foreclosing on Plaintiff's home, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

157. Plaintiff hereby respectfully submits this Application for Imposition of Permanent Injunction Pursuant to Federal Rules of Civil Procedure Rule 65 against Defendant to stay the sale of the real property in question.

158. Plaintiff's request for a temporary retraining order (TRO) must fulfill four requirements:

(i) Plaintiff must demonstrate a reasonable chance of success. Once the Court allows due process and discovery, the facts will show that Plaintiff is justified in his allegations as set forth in this complaint.

(ii) Plaintiff must demonstrate the certainty of irreparable harm. If the Court allows

- 25 –

1   Defendant to proceed with the non-judicial foreclosure, Plaintiff and his partner will

2   suffer irreparable harm. They will lose their home to foreclosure. They and other

3   family members will be homeless.

4

5   (iii) Plaintiff must demonstrate that there will be no detriment to Defendant.

6   Defendant has not invested anything in Plaintiff's property. They therefore have

7   nothing to lose. Further, the TRO will help to prevent Defendant from the commission

8   of a crime, to wit the fraudulent and unlawful taking of title to Plaintiff's home.

9

10  (iv) Plaintiff must demonstrate that the TRO would be in the public interest. As in (iii)

11  above, the TRO will help to prevent the commission of a crime. Defendant's attorneys

12  are assisting Defendant in committing fraud upon the Court, upon the States of

13  Arizona and California, and the bodies politic of Arizona and California.

14  159. The Court has granted Defendant a lift of the automatic stay.

15

16  160. The Property may be sold at a trustee's sale at any time.

17

18  161. Beginning on about November 16, 2005 and continuing to the present time, Defendant,

19  and each of them, wrongfully and unlawfully sought and continue to seek payment from

20  Plaintiff for the "loan".

21

22  162. Beginning on about September 23, 2008 and continuing to the present time,

23  Defendant, and each of them, wrongfully and unlawfully seek to foreclose on Plaintiff's

24  home.

25

- 26 –

06/02/2010

163. Defendant's actual and threatened wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and his partner. They will lose their home to foreclosure.

164. Plaintiff has no adequate remedy at law for the injuries that have been suffered, are currently being suffered, and that are threatened.

165. It is impossible for Plaintiff to determine the precise amount of damages that he will suffer if Defendant's conduct is not restrained.

166. Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for his injuries.

167. As a proximate result of Defendant's wrongful conduct, Plaintiff's property has been damaged in the amount of at least $675,000.00.

168. Plaintiff will be further damaged in like manner so long as Defendant's conduct continues.

169. The full amount of this damage is not now known to Plaintiff.

170. Plaintiff will amend this complaint to state this amount when it becomes known to him or on proof of the damages.

06/02/2010

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1. For a judgment that Defendant does not have standing to pursue the foreclosure;
2. For an order declaring that the alleged contract between Plaintiff and Defendant is void.
3. For an order requiring Defendant to provide a full accounting;
4. For general and special damages in amounts to be determined;
5. For punitive damages in an amount appropriate to punish Defendant and deter others from engaging in similar misconduct;
6. For a judgment that Plaintiff and his partner are the owners of the Property, and that Defendant has no interest in the Property adverse to the Plaintiff;
7. For an order requiring Defendant to show cause why they should not be enjoined as set forth in this complaint, during the pendency of this action;
8. For a temporary retraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from foreclosing on Plaintiff's home;
7. For costs of suit incurred in this action; and
8. For such other and further relief as the Court may deem reasonable and just under the circumstances.

Dated June 2nd, 2010

Andrew C. Bailey, Plaintiff in Pro Per

- 28 -

**EXHIBIT I**

**SO ORDERED.**



1 Steven D. Jerome (#018420)
Andrew V. Hardenbrook (#025518) **Dated: July 23, 2010**
2 John M. DeStefano (#025440)
SNELL & WILMER L.L.P.
3 One Arizona Center
Phoenix, AZ 85004-2202
4 Telephone: (602) 382-6000
Facsimile: (602) 382-6070 REDFIELD T. BAUM, SR
5 E-mail: sjerome@swlaw.com U.S. Bankruptcy Judge
ahardenbrook@swlaw.com
6 jdestafano@swlaw.com
Attorneys for Wells Fargo Bank, NA and US Bank, N.A., as
7 trustee for WFMBS 2006-AR2

8 IN THE UNITED STATES BANKRUPTCY COURT

9 FOR THE DISTRICT OF ARIZONA

10 In Re: Proceedings Under Chapter 11

11 ANDREW C BAILEY, Case No. 2:09-bk-06979-RTBP

12 Debtor. Adversary Case No. 2:09-ap-01727-RTBP

13

14 ANDREW C. BAILEY, **ORDER DISMISSING WITH PREJUDICE DEFENDANTS WELLS**

15 Plaintiff, **FARGO BANK, N.A. AND U.S. BANK N.A., AS TRUSTEE FOR WFMBS 2006-**

16 v. **AR2, FROM PLAINTIFF'S SECOND AMENDED COMPLAINT FOR LACK**

17 WELLS FARGO BANK NA ET AL., **OF STANDING, VOID CONTRACT, DAMAGES FOR FRAUD, FALSE**

18 Defendants. **REPRESENTATION, PREDATORY LENDING, QUIET TITLE, INJUNCTIVE**

19 **RELIEF**

20

21 Upon consideration of *Defendants Wells Fargo Bank, N.A. and U.S. Bank N.A. as Trustee*

22 *for WFMBS 2006-AR2's Motion to Dismiss Second Amended Complaint for Lack of Standing,*

23 *Void Contract, Damages for Fraud, False Representation, Predatory Lending, Quiet Title,*

24 *Injunctive Relief* (the "Motion to Dismiss", D.E. 43) filed by Defendants, Wells Fargo, N.A. and

25 US Bank, N.A., as trustee for WFMBS 2006-AR2 (the "Defendants"), wherein Defendants

26 requested that this Court dismiss them with prejudice from the second amended complaint

27 (the "Second Amended Complaint", D.E. 38) filed by Plaintiff, Andrew C. Bailey

28

1   (the "<u>Plaintiff</u>"), the response to the Motion to Dismiss filed by Plaintiff [D.E. 46], the hearing on

2   the Motion to Dismiss held on July 22, 2010, the pleadings and papers on file in this case, and

3   good cause appearing therefor:

4       The Court hereby finds that the Second Amended Complaint fails to state a claim against

5   Defendants upon which relief can be granted. Accordingly:

6   **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

7     A.     The Motion to Dismiss is hereby GRANTED in its entirety; and

8     B.     Wells Fargo, N.A. and US Bank, N.A., as trustee for WFMBS 2006-AR2, are

9   hereby dismissed with prejudice from the Second Amended Complaint.

10                 **DATED AND SIGNED ABOVE**

**EXHIBIT J**

**This page is part of your document - DO NOT DISCARD**



## 20101070137



**Pages:
0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/03/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201008030150006

00002751852



002812540

**SEQ:
18**

DAR - Title Company (Hard Copy)



THIS FORM IS NOT TO BE DUPLICATED

T29



Recording Requested By:
First American Title Insurance Company

When Recorded Mail To:
First American Trustee Servicing Solutions, LLC
f/k/a First American LoanStar Trustee Services, LLC
6 Campus Circle, 2nd Floor
Westlake, TX 76262
(817)699-6035

TSG No.:        3945036
TS No.:         20089070810770
FHA/VA/PMI No.:
APN:            5626-005-004                                     Space above this line for Recorder's use only

## NOTICE OF TRUSTEE'S SALE

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/16/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On 08/24/2010 at 11:30 A.M., First American Trustee Servicing Solutions, LLC f/k/a First American LoanStar Trustee Services, LLC, as duly appointed Trustee under and pursuant to Deed of Trust recorded 12/02/2005, as Instrument No. 05 2946072, in book , page , of Official Records in the office of the County Recorder of Los Angeles County, State of California. Executed by:

**ANDREW CAMERON BAILEY and CONSTANCE BAXTER MARLOW,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) At the front entrance to the Pomona Superior Courts Building, 350 W. Mission Blvd, Pomona, CA.

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 5626-005-004

The street address and other common designation, if any, of the real property described above is purported to be:

**153 WESTERN AVENUE, GLENDALE, CA 91201**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is $514,845.54. The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

First American Title Insurance Company                    Date: 07/28/2010
First American Trustee Servicing Solutions, LLC f/k/a
First American LoanStar Trustee Services, LLC
**3 FIRST AMERICAN WAY**
SANTA ANA, CA 92707

_Hank Duong_

HANK DUONG         FOR TRUSTEE'S SALE INFORMATION
PLEASE CALL (916)939-0772

First American Trustee Servicing Solutions, LLC f/k/a First American LoanStar Trustee Services, LLC MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

18

## CALIFORNIA DECLARATION

I, _Marsha Graham_ of Wells Fargo Bank, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct.

The Mortgage Loan Servicer has obtained from the Commissioner of Corporations a final or temporary order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

And

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply.

Dated: 6-17-09

By: _Marsha Graham_

Title: Assistant Vice President

Name: Marsha Graham

**EXHIBIT K**

**This page is part of your document - DO NOT DISCARD**



## 20101289934



Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/14/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



LEADSHEET

201009140180007

00002960275

002884322

**SEQ:**
**22**

DAR - Title Company (Hard Copy)

**THIS FORM IS NOT TO BE DUPLICATED**

t29

2

Recording Requested By
First American Trustee Servicing Solutions, LLC f/k/a
First American LoanStar Trustee Services, LLC
6 Campus Circle, 2nd Floor
Westlake TX
76262



09/14/2010

*20101289934*

Mail Tax Statements To :
Wells Fargo Home Mortgage
3476 Stateview Blvd
Fort Mill SC
29715

APN Number :           5626-005-004
Title Order Number :   3945036
TS Number :            20089070810770
Loan Type :            Conventional

## TRUSTEES DEED UPON SALE

The undersigned grantor declares under penalty of perjury
1) The grantee herein WAS the foreclosing Beneficiary
2) The amount of the unpaid debt together with costs was.......... $ 560,730.67
3) The amount paid by the Grantee at the trustee sale was.......... $ 550,000.00
4) The documentary transfer tax is ................................. $ 0 - Exempt

5) Said property is  INCORPORATED / ~~UNINCORPORATED~~   **GLENDALE**

First American Trustee Servicing Solutions, LLC f/k/a First American LoanStar Trustee Services, LLC , (herein
called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and
convey, but without warranty, expressed or implied to :

US Bank National Association, as Trustee for WFMBS 2006-AR2

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of Los
Angeles in the State of California, described as follows :

See Exhibit A attached hereto and made a part hereof.

Recitals :
This conveyance is made pursuant to the powers conferred upon the Trustee by that certain Deed of Trust dated
11/16/2005 and executed by ,

**ANDREW CAMERON BAILEY and CONSTANCE BAXTER MARLOW**

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY.I.S.

| APN Number : | 5626-005-004 |
| Title Order Number : | 3945036 |
| TS Number : | 20089070810770 |
| Loan Type : | Conventional |

As Trustor, and recorded 12/02/2005 , as Instrument Number 05 2946072 , in Book , Page , of Official Records of the County of Los Angeles in the State of California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance,

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the County Recorder of said County.

All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil Code 2924, et. seq.; regarding the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met.

Said property was sold by said Trustee at public auction on 08/24/2010 at the place named in the Notice of Sale, in the County of Los Angeles in the State of California, in which the property is situated. Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said Trustee the amount of $550,000.00 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligation then secured by said Deed of Trust

Trustees Deed Upon Sale

Date : _____ 5/24/10 _____

First American Trustee Servicing Solutions, LLC
Formerly First American LoanStar Trustee Services, LLC

By : _____

DeeAnn Gregory, Trustee Officer

State of Texas
County of Tarrant

notary public

Before me Therese Pfullmann , on this day personally appeared DeeAnn Gregory,
known to me to be the person whose name is subscribed to therefore going instrument
and acknowledged to me that this person executed the same for the purposes and
considerations therein expressed.

5/24/10

Given under my hand and seal of office this day of _____

Witness my hand and official seal

Signature : _____

THERESE PFULLMANN
Notary Public, State of Texas
My Commission Expires
January 06, 2012

5

APN Number :      5626-005-004
Title Order Number :      3945036
TS Number :      20089070810770
Loan Type :      Conventional

# Exhibit A

## Legal Description

LOT 4, BLOCK 6 TRACT NO 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 143 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Irvine, California. My business address is Severson & Werson, 19100 Von Karman Avenue, Suite 700, Irvine, California 92612.

On the date below I served the within document(s) described as: **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS** on the interested parties in this action:

☒ by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☐ addressed as follows: ☐ address as stated on the attached mailing list.

Andrew Cameron Bailey                      Plaintiffs in pro per
Constance Baxter Marlow
153 Western Avenue
Glendale CA 91201

☒ **BY MAIL** (C.C.P. § 1013(a)) - I deposited such envelope(s) for processing in the mail room in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **(BY ELECTRONIC SERVICE)** Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☒ **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on May 16, 2011, at Irvine, California.

By: _____
LINDA D. OWEN