1  SUZANNE M. HANKINS (State Bar No. 157837)
2  smh@severson.com
   JARLATH M. CURRAN, II (State Bar No. 239352)
3  jmc@severson.com
   SEVERSON & WERSON, A Professional Corporation
4  19100 Von Karman Ave., Suite 700
   Irvine, CA 92612
5  Telephone: (949) 442-7110; Facsimile: (949) 442-7118

6  MARK D. LONERGAN (State Bar No. 143622)
7  SEVERSON & WERSON, A Professional Corporation
   One Embarcadero Center, Suite 2600
8  San Francisco, CA 94111
   Telephone: (415) 398-3344; Facsimile: (415) 956-0439
9

10 Attorneys for Defendants
   WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage
11 and Wells Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL
   ASSOCIATION, as Trustee for WFMBS 2006-AR2
12

13              UNITED STATES DISTRICT COURT

14            CENTRAL DISTRICT OF CALIFORNIA

15 ANDREW CAMERON BAILEY,           Case No. CV11-3227 GW (CWx)
   CONSTANCE BAXTER MARLOW,         Hon. George H. Wu
16                                  Ctrm. 10 - Spring St.
17         Plaintiffs,

18         vs.                       REQUEST FOR JUDICIAL
   U.S. BANK NA as Trustee for WFMBS NOTICE IN SUPPORT OF
19 2006-AR2; WELLS FARGO BANK       OPPOSITION TO PLAINTIFFS'
   NA; WELLS FARGO HOME             MOTION TO CONSOLIDATE
20 MORTGAGE; WELLS FARGO
   ASSET SECURITIES                 [Filed concurrently with Opposition
21 CORPORATION; LEHMAN              to Plaintiffs' Motion to Consolidate]
   BROTHERS INC; and All Persons
22 Unknown, Claiming Any Legal or
   Equitable Right, Title, Estate, Lien, Or
23 Interest in The Property Described in
   The Complaint Adverse to Plaintiffs'
24 Title, Or Any Cloud On Plaintiffs' Title
   Thereto; and JOHN DOES "1-10"
25 inclusive,
26
27         Defendants.              Complaint Filed: April 15, 2011
28

1    Pursuant to Federal Rule of Evidence Rule 201(b)(2) and (d), Defendants

2  WELLS FARGO BANK, N.A. (erroneously sued as Wells Fargo Home Mortgage

3  and Wells Fargo Asset Securities Corporation) and U.S. BANK, NATIONAL

4  ASSOCIATION, as Trustee for WFMBS 2006-AR2 respectfully request that the

5  Court take judicial notice of the following documents in support of their Opposition

6  to Plaintiffs' motion to consolidate.

7    1.    Deed of Trust dated on or about November 17, 2005 and recorded in

8  the Official Records of the Los Angeles County Recorder's Office on December 2,

9  2005 as Instrument Number 05-2946072.  A true and correct copy of the Deed of

10  Trust is attached hereto as Exhibit A.

11    2.    Assignment of Deed of Trust dated January 27, 2009 and recorded in

12  the Official Records of the Los Angeles County Recorder's Office on January 29,

13  2009 as Instrument Number 20090117288.  A true and correct copy of the

14  Assignment of Deed of Trust is attached hereto as Exhibit B.

15    3.    Notice of Default and Election to Sell Under Deed of Trust dated

16  December 18, 2008 and recorded in the Official Records of the Los Angeles

17  County Recorder's Office on December 22, 2008 as Instrument Number

18  20082240421.  A true and correct copy of the Notice of Default and Election to Sell

19  Under Deed of Trust is attached hereto as Exhibit C.

20    4.    Notice of Trustee's Sale dated March 23, 2009 and recorded in the

21  Official Records of the Los Angeles County Recorder's Office on March 23, 2009,

22  as Instrument Number 20090410212.  A true and correct copy of the Notice of

23  Trustee's Sale is attached hereto as Exhibit D.

24    5.    Involuntary Chapter 7 Bankruptcy Petition filed April 9, 2009 in the

25  United States Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-

26  RTBP, entitled *In re: Andrew C. Bailey*.  A true and correct copy of the Involuntary

27  Chapter 7 Bankruptcy Petition is attached hereto as Exhibit E.

28

6.      Movant's Motion to Lift the Automatic Stay filed July 9, 2009 in the
United States Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-
RTBP, entitled *In re: Andrew C. Bailey*.  A true and correct copy of Movant's
Motion to Lift the Automatic Stay is attached hereto as Exhibit F.

7.      Order (on motion for relief from stay) filed October 2, 2009 in the
United States Bankruptcy Court, District of Arizona Case No. 2:09-bk-06979-
RTBP, entitled *In re: Andrew C. Bailey*.  A true and correct copy of the Order (on
motion for relief from stay) is attached hereto as Exhibit G.

8.      Second Amended Complaint for Lack of Standing, Void of Contract,
Damages for Fraud, False Representation, Predatory Lending, Quiet Title,
Injunctive Relief filed June 2, 2010 in the United States Bankruptcy Court, District
of Arizona, Adversary Case No. 2:09-ap-01727-RTBP, entitled *Bailey v. Wells
Fargo Bank, N.A., et al.*  A true and correct copy of the Second Amended
Complaint for Lack of Standing, Void of Contract, Damages for Fraud, False
Representation, Predatory Lending, Quiet Title, Injunctive Relief is attached hereto
as Exhibit H.

9.      Order Dismissing with Prejudice Defendants Wells Fargo Bank, N.A.
and U.S. Bank N.A., as Trustee for WFMBS 2006-AR2, from Plaintiff's Second
Amended Complaint for Lack of Standing, Void Contract, Damages for Fraud,
False Representation, Predatory Lending, Quiet Title, Injunctive Relief filed
July 23, 2010 in the United States Bankruptcy Court, District of Arizona,
Adversary Case No. 2:09-ap-01727-RTBP, entitled *Bailey v. Wells Fargo Bank,
N.A., et al.*  A true and correct copy of the Order Dismissing with Prejudice
Defendants Wells Fargo Bank, N.A. and U.S. Bank N.A., as Trustee for WFMBS
2006-AR2, from Plaintiff's Second Amended Complaint, etc. is attached hereto as
Exhibit I.

11960/0257/922888.1

Request for Judicial Notice i/s/o Opposition to Motion to Consolidate
Case No. CV11-3227 GW (CWx)

1    10.    Notice of Trustee's Sale dated July 28, 2010 and recorded in the

2  Official Records of the Los Angeles County Recorder's Office on August 3, 2010,

3  as Instrument Number 20101070137.  A true and correct copy of the Notice of

4  Trustee's Sale is attached hereto as Exhibit J.

5    11.    Trustee's Deed Upon Sale dated August 24, 2010 and recorded in the

6  Official Records of the Los Angeles County Recorder's Office on September 14,

7  2010, as Instrument Number 20101289934.  A true and correct copy of the

8  Trustee's Deed Upon Sale is attached hereto as Exhibit K.

9    12.    Verified Complaint for Unlawful Detainer filed March 9, 2011 in the

10  Superior Court of the State of California, County of Los Angeles Case No.

11  11C04038 entitled *U.S. Bank National Association, as Trustee v. Andrew Cameron*

12  *Bailey, et al.*  A true and correct copy of the Verified Complaint for Unlawful

13  Detainer is attached hereto as Exhibit L.

14    13.    Answer - Unlawful Detainer filed March 18, 2011 in the Superior

15  Court of the State of California, County of Los Angeles Case No. 11C04038

16  entitled *U.S. Bank National Association, as Trustee v. Andrew Cameron Bailey, et*

17  *al.*  A true and correct copy of the Answer - Unlawful Detainer is attached hereto as

18  Exhibit M.

19    14.    Demurrer to Plaintiff US Bank National Association's Unlawful

20  Detainer Complaint filed April 21, 2011 in the Superior Court of the State of

21  California, County of Los Angeles Case No. 11C04038 entitled *U.S. Bank National*

22  *Association, as Trustee v. Andrew Cameron Bailey, et al.*  A true and correct copy

23  of the Demurrer to Plaintiff US Bank National Association's Unlawful Detainer

24  Complaint is attached hereto as Exhibit N.

25    15.    Notice of Removal of Action Under 28 U.S.C. § 1441 filed May 2,

26  2011 in the United States District Court, Central District of California Case No.

27  CV11-3770-GW (Ex) entitled *U.S. Bank National Association as Trustee v. Andrew*

28

-4-

1 | *Cameron Bailey, et al.* A true and correct copy of the Notice of Removal of Action

2 | Under 28 U.S.C. § 1441 (without exhibits) is attached hereto as Exhibit O.

3 |

4 | DATED: May 24, 2011

SEVERSON & WERSON
A Professional Corporation

5 |

6 |

7 | By:/s/Jarlath M. Curran II
SUZANNE M. HANKINS

8 | JARLATH M. CURRAN, II
Attorneys for Defendants

9 | WELLS FARGO BANK, N.A.
(erroneously sued as Wells Fargo

10 | Home Mortgage and Wells Fargo
Asset Securities Corporation) and

11 | U.S. BANK, NATIONAL
ASSOCIATION, as Trustee for

12 | WFMBS 2006-AR2

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

26 |

27 |

28 |

11960/0257/922888.1

**EXHIBIT A**

12/02/05

Recording Requested By
~~WELLS FARGO BANK, N.A.~~

**05 2946072**

Return To
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121
Prepared By
WELLS FARGO BANK, N.A.

16644 WEST BERNARDO DR., STE
101, SAN DIEGO, CA

5F034043 - P07
5626-005-004

[Space Above This Line For Recording Data]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21  Certain rules regarding the usage of words used in this document are also provided in Section 16

(A) "Security Instrument" means this document, which is dated NOVEMBER      , 2005
together with all Riders to this document

(B) "Borrower" is
    CONSTANCE BAXTER MARLOW, AN UNMARRIED WOMAN, AS TO AN UNDIVIDED
    50% INTEREST AND ANDREW CAMERON BAILEY, A MARRIED MAN AS HIS SOLE
    AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 50% INTEREST, AS
    TENANTS IN COMMON

Borrower is the trustor under this Security Instrument
(C) "Lender" is WELLS FARGO BANK, N A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0060412178

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01



-6(CA) (0005)
Page 1 of 16          Initials ACB CBM
VMP MORTGAGE FORMS  (800)521 7291

Lender's address is **P.O. BOX 10304, DES MOINES, IA 503060304**

Lender is the beneficiary under this Security Instrument

(D) "Trustee" is **FIDELITY NATIONAL TITLE INS CO**
**17911 VON KARMAN, SUITE 200, IRVINE, CA 92614**
(E) "Note" means the promissory note signed by Borrower and dated **NOVEMBER 16, 2005**
The Note states that Borrower owes Lender **FOUR HUNDRED EIGHTY THOUSAND AND 00/100**
Dollars

(U S $****480,000.00      ) plus interest Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **DECEMBER 01, 2035**
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property "
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower The following
Riders are to be executed by Borrower [check box as applicable]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers
(L) "Escrow Items" means those items that are described in Section 3
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for (i)
damage to, or destruction of, the Property, (ii) condemnation or other taking of all or any part of the
Property, (iii) conveyance in lieu of condemnation, or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U S C Section 2601 et seq ) and its
implementing regulation, Regulation X (24 C F R Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

Initials CBM
ACB

**05 2946072**

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or
not that party has assumed Borrower's obligations under the Note and/or this Security Instrument

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender (i) the repayment of the Loan, and all renewals, extensions and
modifications of the Note, and (ii) the performance of Borrower's covenants and agreements under this
Security Instrument and the Note  For this purpose, Borrower irrevocably grants and conveys to
Trustee, in trust, with power of sale, the following described property located in the
COUNTY                                  of LOS ANGELES
        [Type of Recording Jurisdiction]                        [Name of Recording Jurisdiction]
**LEGAL DESCRIPTION ATTACHED HERE TO AND MADE A PART HEREOF:**

**\*SEE ADJUSTABLE RATE RIDER**

**TAX STATEMENTS SHOULD BE SENT TO:   WELLS FARGO HOME MORTGAGE, P.O. BOX
10304, DES MOINES, IA  503060304**

Parcel ID Number **5626-005-004**                     which currently has the address of
**153 WESTERN AVENUE**                                                         [Street]
**GLENDALE**                                [City], California **91201**          [Zip Code]
("Property Address")

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all
easements, appurtenances, and fixtures now or hereafter a part of the property  All replacements and
additions shall also be covered by this Security Instrument  All of the foregoing is referred to in this
Security Instrument as the "Property "
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has
the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances
of record  Borrower warrants and will defend generally the title to the Property against all claims and
demands, subject to any encumbrances of record
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform
covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real
property
     UNIFORM COVENANTS  Borrower and  Lender  covenant  and  agree  as  follows
     1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges**
Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any
prepayment charges and late charges due under the Note  Borrower shall also pay funds for Escrow Items
pursuant to Section 3  Payments due under the Note and this Security Instrument shall be made in U S

-6(CA) (0008)                          Page 3 of 16        Initials CSH
                                                                 ACB          Form 3005   1/01

**05 2946072**

currency  However, if any check or other instrument received by Lender as payment under the Note or this
Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments
due under the Note and this Security Instrument be made in one or more of the following forms, as
selected by Lender  (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or
cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a
federal agency, instrumentality, or entity, or (d) Electronic Funds Transfer

Payments are deemed received by Lender when received at the location designated in the Note or at
such other location as may be designated by Lender in accordance with the notice provisions in Section 15
Lender may return any payment or partial payment if the payment or partial payments are insufficient to
bring the Loan current  Lender may accept any payment or partial payment insufficient to bring the Loan
current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial
payments in the future, but Lender is not obligated to apply such payments at the time such payments are
accepted  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay
interest on unapplied funds  Lender may hold such unapplied funds until Borrower makes payment to bring
the Loan current  If Borrower does not do so within a reasonable period of time, Lender shall either apply
such funds or return them to Borrower  If not applied earlier, such funds will be applied to the outstanding
principal balance under the Note immediately prior to foreclosure  No offset or claim which Borrower
might have now or in the future against Lender shall relieve Borrower from making payments due under
the Note and this Security Instrument or performing the covenants and agreements secured by this Security
Instrument

2  **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all
payments accepted and applied by Lender shall be applied in the following order of priority  (a) interest
due under the Note, (b) principal due under the Note, (c) amounts due under Section 3  Such payments
shall be applied to each Periodic Payment in the order in which it became due  Any remaining amounts
shall be applied first to late charges, second to any other amounts due under this Security Instrument, and
then to reduce the principal balance of the Note

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a
sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and
the late charge  If more than one Periodic Payment is outstanding, Lender may apply any payment received
from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be
paid in full  To the extent that any excess exists after the payment is applied to the full payment of one or
more Periodic Payments, such excess may be applied to any late charges due  Voluntary prepayments shall
be applied first to any prepayment charges and then as described in the Note

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under
the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments

3  **Funds for Escrow Items**  Borrower shall pay to Lender on the day Periodic Payments are due
under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due
for  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a
lien or encumbrance on the Property, (b) leasehold payments or ground rents on the Property, if any, (c)
premiums for any and all insurance required by Lender under Section 5, and (d) Mortgage Insurance
premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage
Insurance premiums in accordance with the provisions of Section 10  These items are called "Escrow
Items "  At origination or at any time during the term of the Loan, Lender may require that Community
Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and
assessments shall be an Escrow Item  Borrower shall promptly furnish to Lender all notices of amounts to
be paid under this Section  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives
Borrower's obligation to pay the Funds for any or all Escrow Items  Lender may waive Borrower's
obligation to pay to Lender Funds for any or all Escrow Items at any time  Any such waiver may only be

Initials CBM
NB

05 2946072

in writing  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA  Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge  Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds  Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds  Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA  If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments  If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly  payments

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender

**4.  Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any  To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower  (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement, (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded, or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument  If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

05 2946072

lien Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan

**5. Property Insurance** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires What Lender requires pursuant to the preceding sentences can change during the term of the Loan The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably Lender may require Borrower to pay, in connection with this Loan, either (a) a one-time charge for flood zone determination, certification and tracking services, or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense Lender is under no obligation to purchase any particular type or amount of coverage Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance Lender shall have the right to hold the policies and renewal certificates If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender Lender may make proof of loss if not made promptly by Borrower Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

 
05 2946072

the excess, if any, paid to Borrower Such insurance proceeds shall be applied in the order provided for in Section 2

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim The 30-day period will begin when the notice is given In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due

6 Occupancy Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control

7 Preservation, Maintenance and Protection of the Property; Inspections Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration

Lender or its agent may make reasonable entries upon and inspections of the Property If it has reasonable cause, Lender may inspect the interior of the improvements on the Property Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause

8 Borrower's Loan Application Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence

9 Protection of Lender's Interest in the Property and Rights Under this Security Instrument. If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property Lender's actions can include, but are not limited to (a) paying any sums secured by a lien which has priority over this Security Instrument, (b) appearing in court, and (c) paying reasonable

05 2946072

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing

**10. Mortgage Insurance** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed Borrower is not a party to the Mortgage Insurance

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums)

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance " Further

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund**

 6(CA) (0005)                    Page 8 of 15                    Initials CSM KCS    Form 3005   1/01

05 2946072

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11. Assignment of Miscellaneous Proceeds, Forfeiture**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction  (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value  Any balance shall be paid to Borrower

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due  "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument  The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2

**12  Borrower Not Released, Forbearance By Lender Not a Waiver**  Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

05 2946072

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy

**13. Joint and Several Liability; Co-signers, Successors and Assigns Bound** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer") (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument, (b) is not personally obligated to pay the sums secured by this Security Instrument, and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender

**14 Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit, and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note) Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge

**15 Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender Borrower shall promptly notify Lender of Borrower's change of address If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure There may be only one designated notice address under this Security Instrument at any one time Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument

05 2946072

**16 Governing Law, Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision

As used in this Security Instrument (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender, (b) words in the singular shall mean and include the plural and vice versa, and (c) the word "may" gives sole discretion without any obligation to take any action

**17 Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument

**18 Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

If Lender exercises this option, Lender shall give Borrower notice of acceleration The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower

**19 Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument, (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate, or (c) entry of a judgment enforcing this Security Instrument Those conditions are that Borrower (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred, (b) cures any default of any other covenants or agreements, (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender (a) cash, (b) money order, (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity, or (d) Electronic Funds Transfer Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred However, this right to reinstate shall not apply in the case of acceleration under Section 18

**20 Sale of Note, Change of Loan Servicer, Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

05 2946072

requires in connection with a notice of transfer of servicing If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20

**21 Hazardous Substances** As used in this Section 21 (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials, (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection, (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products)

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law Nothing herein shall create any obligation on Lender for an Environmental Cleanup

 

**05 2946072**

12/02/03

NON-UNIFORM COVENANTS Borrower and Lender further covenant and agree as follows

22 **Acceleration, Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise) The notice shall specify (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured, and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees, (b) to all sums secured by this Security Instrument, and (c) any excess to the person or persons legally entitled to it

23 **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable

24 **Substitute Trustee** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution

25 **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California

05 2946072

12/02/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it

Witnesses

_____

_____                    _____ (Seal)
                                                    ANDREW CAMERON BAILEY          -Borrower

_____                    _____ (Seal)
                                                    CONSTANCE BAXTER MARLOW        -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                                      -Borrower

_____ (Seal)    _____ (Seal)
                          -Borrower                                      Borrower

05 2946072

State of California
County of

}  ss

On _____ before me, _____                     personally appeared

ANDREW CAMERON BAILEY CONSTANCE BAXTER MARLOW

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

_____ (Seal)

**STEPHANIE BOGAN**
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

STATE OF ARIZONA
COUNTY OF _Maricopa_
The foregoing instrument was acknowledged
before me this _17th_ day of _Nov._ , _2005_
By _Andrew Cameron Bailey & Constance Baxter Marlow_
Notary Public _____
My Commission Expires _Aug. 28 2009_

6(CA) (0005)                     Page 15 of 15          Initials _____     Form 3005   1/01

11/30/2005 14 49 FAX 858 453 8397          CHICAGO TITLE UC                    ☑002/004
12/02/05

STATE OF _Arizona_

COUNTY OF _Maricopa_                }ss

On _Nov 17th, 2005_ before me, _Stephanie Bogan_

PERSONALLY APPEARED _Andrew Cameron Bailey_

_Constance Baxter Marlow_

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies) and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

Signature _____

```
STEPHANIE BOGAN
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009
```

*This area for Official Notarial Seal*

=== OPTIONAL ===

Though the data below is not required by law, it may prove valuable to persons relying on the document and could
prevent fraudulent reattachment of this form

**CAPACITY CLAIMED BY SIGNER**

☐ INDIVIDUAL
☐ CORPORATE OFFICER

_____
TITLE(S)

☐ PARTNER(S)      ☐ LIMITED
                  ☐ GENERAL

☐ ATTORNEY-IN-FACT
☐ TRUSTEE(S)
☐ GUARDIAN/CONSERVATOR
☐ OTHER _____

_____
_____

**SIGNER IS REPRESENTING**

NAME OF PERSON(S) OR ENTITY(IES)

_____
_____

**DESCRIPTION OF ATTACHED DOCUMENT**

_____
TITLE OF TYPE OF DOCUMENT

_____
NUMBER OF PAGES

_____
DATE OF DOCUMENT

_____
SIGNER(S) OTHER THAN NAMED ABOVE

ID 1232 (REV 5/01)           ALL-PURPOSE ACKNOWLEDGEMENT

05 2946072

12/02/05

## CERTIFICATION PURSUANT TO GOVERNMENT CODE SECTION 27361.7

SAN DIEGO
_____
Place of Execution

I certify under penalty of perjury that this material is a true copy of the original material contained in this document.

12·1·05
_____
Date

_____
Signature of Declarant

John R Hall
_____
Type or Print Name

4/94
Recorder Form #R9

05 2946072

12/02/05

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

STATE OF CALIFORNIA
COUNTY OF _____ } SS

On _____ before me, _____,

personally appeared _____,
                                                        NAME(S) OF SIGNER(S)

    personally known to me     - OR - proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument

WITNESS my hand and official seal

_____
SIGNATURE OF NOTARY

## OPTIONAL

Though the data below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent reattachment of this form

**CAPACITY CLAIMED BY SIGNER**
  INDIVIDUAL
  CORPORATE OFFICER

             TITLE(S)
  PARTNER(S)
  LIMITED or GENERAL
  ATTORNEY-IN-FACT
  TRUSTEE(S)
  GUARDIAN/CONSERVATOR
  OTHER

**SIGNER IS REPRESENTING**
NAME OF PERSON(S( OR ENTITY(IES)

**DESCRIPTION OF ATTACHED DOCUMENT**

TITLE OR TYPE OF DOCUMENT

NUMBER OF PAGES

DATE OF DOCUMENT

SIGNER(S) OTHER THAN NAMED ABOVE

05 2946072

# ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this 16 day of NOVEMBER 2005 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to WELLS FARGO BANK, N.A

(the "Lender") of the same date and covering the property described in the Security Instrument and located at
153 WESTERN AVENUE, GLENDALE, CA 91201

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY**

ADDITIONAL COVENANTS In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows
**A INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of 5.500 % The Note provides for changes in the interest rate and the monthly payments as follows
**4 INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of DECEMBER, 2010 and may change on that day every 12th month thereafter Each date on which my interest rate could change is called a "Change Date "
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index "
If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information The Note Holder will give me notice of this choice
0060412178
MULTISTATE ADJUSTABLE RATE RIDER - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT Form 5110 3/04
834R (0405) 01
Page 1 of 4 Initials AcB CBM
VMP Mortgage Solutions Inc (800)521 7291
NMFL #8361 (FM5R) Rev 12/8/2004

05 2946072

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS                                                        percentage point(s) (                    2.75 %) to the Current Index   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0 125%)   Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments  The result of this calculation will be the new amount of my monthly payment

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than                    10.500 % or less than                        2.750 %   Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO                                                                      percentage point(s) (                    2.000  %) from the rate of interest I have been paying for the preceding 12 months  My interest rate will never be greater than                    10.500 %

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change   The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice

**B  TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1    UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS

Transfer of the Property or a Beneficial Interest in Borrower  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law

834R (0405) 01                          Page 2 of 4                    Initials ACR CBM          Form 5110 3/04

05 2946072

12/02/05

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS**

**Transfer of the Property or a Beneficial Interest in Borrower** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee, and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

-834R (0405) 01                    Page 3 of 4                    Form 5110 3/04

Initials XCS
CBM

05 2946072

12/02/05

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider

11/17/05

11/17/05

_____ (Seal)
ANDREW CAMERON BAILEY          -Borrower

_____ (Seal)
CONSTANCE BAXTER MARLOW          -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

VMP -834R (0405) 01          Page 4 of 4          Form 5110 3/04

05 2946072

12/02/05

# EXHIBIT A

LOT 4, BLOCK 6 TRACT NO 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS
ANGELES, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 143 PAGES 98 AND
99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

05 2946072

**EXHIBIT B**



**This page is part of your document - DO NOT DISCARD**



# 20090117288



**Pages:**
**0002**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**01/29/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |

## TITLE(S) : ASSIGNMENT TRUST DEED



**L E A D S H E E T**

200901290130007

001198266

**SEQ:**
**21**

**DAR - Title Company (Hard Copy)**

**THIS FORM IS NOT TO BE DUPLICATED**

2

01/29/2009

*20090117288*

Recording Requested By:
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES

When Recorded Mail To:
FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
P.O. BOX 961253
FT WORTH, TX 76161-0253

Space above this line for Recorder's use only

APN: 5626-005-004
TS No.: 20089070810770                        Title Order No.: 3945036

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned corporation hereby grants, assigns, and transfers to:

**US BANK NATIONAL ASSOCIATION, AS TRUSTEE FOR WFMBS 2006-AR2**

all beneficial interest under that certain Deed of Trust dated: 11/16/2005 executed by

**ANDREW CAMERON BAILEY CONSTANCE BAXTER MARLOW**

Trustor(s), to FIDELITY NATIONAL TITLE INS CO, as Trustee, and recorded on 12/2/2005 as Instrument No. 05 2946072, in Book , Page in the office of the County Recorder of LOS ANGELES County, CALIFORNIA together with the Promissory Note secured by said Deed of Trust and also all rights accrued or to accrue under said Deed of Trust.

Dated : 1/27/09

WELLS FARGO BANK, N.A. BY FIRST AMERICAN LOANSTAR TRUSTEE SERVICES, LLC, ITS ATTORNEY IN FACT

By: Chet Sconyers, Certifying Officer

State of       **TEXAS**

County of      **TARRANT**

Before me      **Shaunte D. Williams**                    , on this day personally appeared,
Chet Sconyers                                , known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that this person executed the same for the purposes and consideration therein expressed.

Given under my hand and seal of office this 27 day of Jan, A.D. 2009

(Notary Seal)

**Shaunte D. Williams**

SHAUNTE D. WILLIAMS
Notary Public, State of Texas
My Commission Expires
May 23, 2012

21

**EXHIBIT C**



**This page is part of your document - DO NOT DISCARD**



# 20082240421



**Pages:**
**0004**

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**12/22/08 AT 08:00AM**

| | |
|---|---|
| FEES: | 17.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 17.00 |

## TITLE(S) : NOTICE DEFAULT



L E A D S H E E T



200812220190010

001148222

**SEQ:**
**21**

**DAR - Title Company (Hard Copy)**



**THIS FORM IS NOT TO BE DUPLICATED**

Recording Requested By:
**FIRST AMERICAN TITLE INSURANCE COMPANY**



12/22/2008

*20082240421*

When Recorded Mail To:
**FIRST AMERICAN LOANSTAR TRUSTEE SERVI**
**P.O. BOX 961253**
**FORT WORTH, TX 76161**

3945036

TS No.:        20089070810770                    Space above this line for Recorder's use only
VA/FHA/PMI No.:

Pursuant to California Code Section 2924c(b)(1) please be advised of the following:

### NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST
### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account into good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five days business days prior to the date set for the sale of your property. No sale date may be set until three months from the date this Notice of Default may be recorded (which date of recordation appears on this notice).

This amount is **$22,373.42 as of 12/18/2008,** and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than the three month period stated above) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2);

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by you creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:

**WELLS FARGO HOME MORTGAGE**
**c/o FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
**P.O. BOX 961253**
**FORT WORTH, TX  76161**
**877-276-1894**

21

TS No.:          20089070810770
VA/FHA/PMI No.:

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.

Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.

**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN: That **FIRST AMERICAN LOANSTAR TRUSTEE SERVICES** As Agent for the current beneficiary under a Deed of Trust dated **11/16/2005**, executed by:

**ANDREW CAMERON BAILEY,
CONSTANCE BAXTER MARLOW,**

as Trustor to secure certain obligations in favor of **WELLS FARGO BANK, N.A.** as Beneficiary, recorded **12/2/2005**, (as Instrument No.) **05 2946072,** (in Book) , (Page)  of Official Records in the Office of the Recorder of **LOS ANGELES** County, **CALIFORNIA** describing land therein as:

**AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST**

said obligations including ONE NOTE FOR THE ORIGINAL sum of **$480,000.00.**

That a breach of, and default in, the obligations for which such Deed of Trust is security has occurred in that payment has not been made of:

**THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON 06/01/2008 AND ALL SUBSEQUENT INSTALLMENTS, TOGETHER WITH LATE CHARGES AS SET FORTH IN SAID NOTE AND DEED OF TRUST, ADVANCES. ASSESSMENTS, FEES, AND/OR TRUSTEE FEES.**

**NOTHING IN THIS NOTICE SHALL BE CONSTRUED AS A WAIVER OF ANY FEES OWING TO THE BENEFICIARY UNDER THE DEED OF TRUST, PURSUANT TO THE TERMS OF THE LOAN DOCUMENTS.**

That by reason thereof, the present beneficiary under such deed of trust, has executed and delivered to said agent, a written Declaration of Default and Demand for same, and has deposited with said agent such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Dated: **December 18, 2008**

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES
AS AGENT FOR THE CURRENT BENEFICIARY
By: FIRST AMERICAN TITLE INSURANCE COMPANY**
   as Attorney-In-Fact

By: _____
                          (signature)
        **HANK DUONG**

Name: _____

Title: _____

**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.**

4

# NOTICE OF DEFAULT DECLARATION
## PURSUANT TO CALIFORNIA CIVIL CODE 2923.5

Wells Fargo Home Mortgage
3476 Stateview Blvd.
Fort Mill, SC 29715

Borrower: ANDREW C BAILEY
Property Address:  153 WESTERN AVENUE
  GLENDALE      CA    91201

The undersigned mortgagee, beneficiary, or their authorized agent (collectively, the "Beneficiary") represent and declares that the requirements of CA Civil Code 2923.5 have been met. This Declaration is required for any residential owner occupied property in which the loan was originated between January 1, 2003 and December 31, 2007. Non-owner occupied property and vacant property are exempt from the requirements of CA Civil Code 2923.5.

One of the below necessary requirements was met by the Beneficiary:

*   The Beneficiary has made contact with the borrower pursuant to CA Civil Code 2923(a)(2). Contact with the borrower was made in person or by telephone to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure.

*   Due Diligence to contact the borrower was exercised pursuant to CA Civil Code 2923.5(g)(2) by the Beneficiary.

*   The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, Trustee, beneficiary, or authorized agent pursuant to CA Civil Code 2923.5(h)(1).

*   The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries pursuant to CA Civil Code 2923.5(h)(2).

*   The borrower has filed for bankruptcy and the proceedings have not been finalized pursuant to CA Civil Code 2923.5(h)(3).

Dated:  12/15/2008

Wells Fargo Home Mortgage

John Kennerty

**EXHIBIT D**



This page is part of your document - DO NOT DISCARD

## 20090410212



Pages:
0002

**Recorded/Filed in Official Records**
**Recorder's Office, Los Angeles County,**
**California**

**03/23/09 AT 08:00AM**

| | |
|---|---|
| FEES: | 11.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 11.00 |



LEADSHEET



200903230160005

00000231008

002021847

SEQ:
07

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T29



03/23/2009

*20090410212*

Requested and Prepared by:
**FIRST AMERICAN TITLE INSURANCE COMPANY**

When Recorded Mail To:
**FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**
**P.O. BOX 961253**
**FORT WORTH, TX 76161**       877-276-1894

TSG No.:      3945036
TS No.:       20089070810770
FHA/VA/PMI No.:

_Space above this line for Recorder's use only_

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/16/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 4/13/2009 at 11:30 AM, **FIRST AMERICAN LOANSTAR TRUSTEE SERVICES**, as duly appointed Trustee under and pursuant to Deed of Trust recorded 12/2/2005, as Instrument No. 05 2946072, in book , page , of Official Records in the office of the County Recorder of **LOS ANGELES** County, State of **CALIFORNIA**. Executed by:

**ANDREW CAMERON BAILEY,**
**CONSTANCE BAXTER MARLOW,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) **AT THE FRONT ENTRANCE TO THE POMONA SUPERIOR COURTS BUILDING, 350 W. MISSION BLVD., POMONA, CA**

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 5626-005-004

The street address and other common designation, if any, of the real property described above is purported to be:

**153 WESTERN AVENUE, GLENDALE, CA 91201**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$506,667.55.** The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

First American LoanStar Trustee Services       **Date:    3/23/2009**
3 First American Way
Santa Ana, CA 92707

HANK DUONG    -- FOR TRUSTEE'S SALE
INFORMATION PLEASE CALL 530-672-3033

FIRST AMERICAN LOANSTAR TRUSTEE SERVICES MAY BE ACTING AS A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT. ANY INFORMATION OBTAINED MAY BE USED FOR THAT PURPOSE.

**EXHIBIT E**

AZB

B5 (Official Form 5) (12/07)

# United States Bankruptcy Court
## District of Arizona

FILED

**INVOLUNTARY PETITION**

IN RE (Name of Debtor -- If Individual: Last, First, Middle)

Bailey, Andrew, C.

Last four digits of Social-Security or other Individual's Tax-I.D. No./Complete EIN (If more than one, state all.): **5378**

ALL OTHER NAMES used by debtor in the last 8 years (Include married, maiden, and trade names.)

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

STREET ADDRESS OF DEBTOR (No. and street, city, state, and zip code)

2500 N. Page Springs Road
Cornville, AZ 86325

MAILING ADDRESS OF DEBTOR (If different from street address)

COUNTY OF RESIDENCE OR PRINCIPAL PLACE OF BUSINESS
YAVAPAI                    ZIP CODE

**09-06979**                ZIP CODE

LOCATION OF PRINCIPAL ASSETS OF BUSINESS DEBTOR (If different from previously listed addresses)

CHAPTER OF BANKRUPTCY CODE UNDER WHICH PETITION IS FILED

[✓] Chapter 7    [ ] Chapter 11

## INFORMATION REGARDING DEBTOR (Check applicable boxes)

**Nature of Debts** (Check one box.)

Petitioners believe:

[ ] Debts are primarily consumer debts
[✓] Debts are primarily business debts

**Type of Debtor** (Form of Organization)

[ ] Individual (Includes Joint Debtor)
[✓] Corporation (Includes LLC and LLP)
[ ] Partnership
[ ] Other (If debtor is not one of the above entities, check this box and state type of entity below.)

**Nature of Business** (Check one box.)

[ ] Health Care Business
[ ] Single Asset Real Estate as defined in 11 U.S.C. § 101(51)(B)
[ ] Railroad
[ ] Stockbroker
[ ] Commodity Broker
[ ] Clearing Bank
[✓] Other

## VENUE

[✓] Debtor has been domiciled or has had a residence, principal place of business, or principal assets in the District for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other District.

[ ] A bankruptcy case concerning debtor's affiliate, general partner or partnership is pending in this District.

## FILING FEE (Check one box)

[✓] Full Filing Fee attached

[ ] Petitioner is a child support creditor or its representative, and the form specified in § 304(g) of the Bankruptcy Reform Act of 1994 is attached. *[If a child support creditor or its representative is a petitioner, and if the petitioner files the form specified in § 304(g) of the Bankruptcy Reform Act of 1994, no fee is required.]*

**PENDING BANKRUPTCY CASE FILED BY OR AGAINST ANY PARTNER OR AFFILIATE OF THIS DEBTOR** (Report information for any additional cases on attached sheets.)

| Name of Debtor | Case Number | Date |
|---|---|---|
| Relationship | District | Judge |

## ALLEGATIONS (Check applicable boxes)

1. [✓] Petitioner (s) are eligible to file this petition pursuant to 11 U.S.C. § 303 (b).
2. [✓] The debtor is a person against whom an order for relief may be entered under title 11 of the United States Code.
3.a.[✓] The debtor is generally not paying such debtor's debts as they become due, unless such debts are the subject of a bona fide dispute as to liability or amount;

or

b.[ ] Within 120 days preceding the filing of this petition, a custodian, other than a trustee receiver, or agent appointed or authorized to take charge of less than substantially all of the property of the debtor for the purpose of enforcing a lien against such property, was appointed or took possession.

COURT USE ONLY

U.S. CLERK
BANKRUPTCY
DISTRICT OF ARIZONA

FILED

2009 APR -9 P 12: 22

PTB-P

04/10/2009

AZB

**B5 (Official Form 5) (12/07) – Page 2**

Name of Debtor_____

Case No._____

---

**TRANSFER OF CLAIM**

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

**REQUEST FOR RELIEF**

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| x_____ | x_____ Date |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney |
| Teresa J. Moore , Creditor | Teresa J. Moore , Creditor |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
|  | P.O. Box 75217 Honolulu, HI 96836 |
| Name & Mailing   Teresa J. Moore | Address |
| Address of Individual   P.O. Box 75217 | (818) 206-1146 |
| Signing in Representative   Honolulu, HI 96836 | Telephone No. |
| Capacity |  |

| x_____ | x_____ Date |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney |
| John L. Baxter | John L. Baxter |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
|  | 15685 Trapper Point Road, Sisters, OR 97759 |
| Name & Mailing   John L. Baxter | Address |
| Address of Individual   P.O. Box 1539 | (541) 549-6696 |
| Signing in Representative   Sisters, OR 97759 | Telephone No. |
| Capacity |  |

| x *Constance B. Marlow* 4/8/09 | x *Constance B. Marlow* 4/8/09 |
|---|---|
| Signature of Petitioner or Representative (State title) | Signature of Attorney          Date |
| Constance B. Marlow | Constance B. Marlow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
|  | 2500 N. Page Springs Road, Cornville, AZ 86325 |
| Name & Mailing   2500 N. Page Springs Road | Address |
| Address of Individual   Cornville, AZ 86325 | 928-634-4335 |
| Signing in Representative | Telephone No. |
| Capacity |  |

**PETITIONING CREDITORS**

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Teresa J. Moore P.O. Box 75217 Honolulu, HI | Consulting Services | $75,000 |
| John L. Baxter P.O. Box 1539, Sisters, OR | Unsecured Loan | $150,000 |
| Constance B. Marlow 2500 N. Page Springs Road | Property interest | $250,000 |
| Note: If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims $475,000 |

_____ continuation sheets attached

AZB

B5 (Official Form 5) (12/07) — Page 2

Name of Debtor_____

Case No._____

**TRANSFER OF CLAIM**

☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a).

**REQUEST FOR RELIEF**

Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached.

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| *Teresa J. Moore* | *Teresa J. Moore* 4-7-09 |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                     Date |
| Teresa J. Moore , Creditor | Teresa J. Moore , Creditor |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| | P.O. Box 75217 Honolulu, HI 96836 |
| Name & Mailing     Teresa J. Moore | Address |
| Address of Individual  P.O. Box 75217 | (818) 206-1146 |
| Signing in Representative  Honolulu, HI 96836 | Telephone No. |
| Capacity | |

| | |
|---|---|
| x_____ | x_____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                     Date |
| John L. Baxter | |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| | 15685 Trapper Point Road, Sisters, OR 97759 |
| Name & Mailing     John L. Baxter | Address |
| Address of Individual  P.O. Box 1539 | (541) 549-6696 |
| Signing in Representative  Sisters, OR 97759 | Telephone No. |
| Capacity | |

| | |
|---|---|
| x_____ | x_____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney                     Date |
| Constance B. Marlow | Constance B. Marlow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (If any) |
| | 2500 N. Page Springs Road, Cornville, AZ 86325 |
| Name & Mailing     2500 N. Page Springs Road | Address |
| Address of Individual  Cornville, AZ 86325 | 928-634-5135 |
| Signing in Representative | Telephone No. |
| Capacity | |

**PETITIONING CREDITORS**

| Name and Address of Petitioner | Nature of Claim | Amount of Claim |
|---|---|---|
| Teresa J. Moore P.O. Box 75217 Honolulu, HI | Consulting Services | $75,000 |
| John L. Baxter P.O. Box 1539, Sisters, OR | Unsecured Loan | $150,000 |
| Constance B. Marlow 2500 N. Page Springs Road | Property interest | $250,000 |

| Note: | If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | Total Amount of Petitioners' Claims $475,000 |
|---|---|---|

_____ continuation sheets attached

04/10/2009

Apr 07 09 02:17p     The Pony Express                          5415491811                          p.1
01/23/2009   01:31     8182422721              CAMERONBAXTER FILMS                     PAGE  01

**AZB**

B5 (Official Form 5) (12/07) – Page 2                    Name of Debtor _____

                                                         Case No. _____

| TRANSFER OF CLAIM |
|---|
| ☐ Check this box if there has been a transfer of any claim against the debtor by or to any petitioner. Attach all documents that evidence the transfer and any statements that are required under Bankruptcy Rule 1003(a). |

| REQUEST FOR RELIEF |
|---|
| Petitioner(s) request that an order for relief be entered against the debtor under the chapter of title 11, United States Code, specified in this petition. If any petitioner is a foreign representative appointed in a foreign proceeding, a certified copy of the order of the court granting recognition is attached. |

Petitioner(s) declare under penalty of perjury that the foregoing is true and correct according to the best of their knowledge, information, and belief.

| | |
|---|---|
| x _____ | x _____ Date ____ |
| Signature of Petitioner or Representative (State title) | Signature of Attorney |
| Teresa J. Moore , Creditor | Teresa J. Moore , Creditor |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
| | P.O. Box 75217 Honolulu, HI  96836 |
| Name & Mailing     Teresa J. Moore | Address |
| Address of Individual   P.O. Box 75217 | (818) 206-1146 |
| Signing in Representative  Honolulu, HI  96836 | Telephone No. |
| Capacity | |
| x  John L. Baxter  4/7/09 | x  John L. Baxter  4/7/09 Date |
| Signature of Petitioner or Representative (State title) | Signature of Attorney |
| John L. Baxter | John L. Baxter |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
| | 15685 Trapper Point Road, Sisters, OR  97759 |
| Name & Mailing     John L. Baxter | Address |
| Address of Individual   P.O. Box 1539 | (541) 549-6696 |
| Signing in Representative  Sisters, OR  97759 | Telephone No. |
| Capacity | |
| x _____ | x _____ Date |
| Signature of Petitioner or Representative (State title) | Signature of Attorney |
| Constance B. Marlow | Constance B. Marlow |
| Name of Petitioner          Date Signed | Name of Attorney Firm (if any) |
| | 2500 N. Page Springs Road, Cornville, AZ  86325 |
| Name & Mailing     2500 N. Page Springs Road | Address |
| Address of Individual   Cornville, AZ  86325 | 928-634-4335 |
| Signing in Representative | Telephone No. |
| Capacity | |

| PETITIONING CREDITORS | | |
|---|---|---|
| Name and Address of Petitioner  Teresa J. Moore P.O. Box 75217 Honolulu, HI | Nature of Claim **Consulting Services** | Amount of Claim **$75,000** |
| Name and Address of Petitioner  John L. Baxter P.O. Box 1539, Sisters, OR | Nature of Claim **Unsecured Loan** | Amount of Claim **$150,000** |
| Name and Address of Petitioner  Constance B. Marlow 2500 N. Page Springs Road | Nature of Claim **Property Interest** | Amount of Claim **$250,000** |
| Note:  If there are more than three petitioners, attach additional sheets with the statement under penalty of perjury, each petitioner's signature under the statement and the name of attorney and petitioning creditor information in the format above. | | Total Amount of Petitioners' Claims  **$475,000** |

_____ continuation sheets attached

**EXHIBIT F**

# TIFFANY & BOSCO
### P.A.

**2525 EAST CAMELBACK ROAD**
**SUITE 300**
**PHOENIX, ARIZONA 85016**
**TELEPHONE: (602) 255-6000**
**FACSIMILE: (602) 255-0192**

Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

09-14716

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| IN RE:<br><br>Andrew C. Bailey<br>          Debtor.<br>_____<br><br>Wells Fargo Bank, N.A.<br><br>          Movant,<br><br>     vs.<br><br>Andrew C. Bailey, Debtor, Office of the US Trustee.<br><br>          Respondents. | No. 2:09-bk-06979-RTBP<br><br>Chapter 11<br><br>MOVANT'S MOTION TO LIFT THE AUTOMATIC BANKRUPTCY STAY<br><br>RE:  Real Property Located at<br>153 Western Ave.<br>Glendale, CA 91201 |

    Movant hereby request an order granting relief from the automatic stay of 11 U.S.C. 362(a), to permit Movant to foreclose the lien of its Mortgage/Deed of Trust on real property owned by the debtors, by trustee's sale, judicial foreclosure proceedings or the exercise of the power of sale, and to obtain possession and control of the real property.

1    This motion is supported by the attached Memorandum of Points and Authorities, which is

2    incorporated herein by this reference.

3    Dated this 9th day of July, 2009.

4                              Respectfully submitted,

5                              TIFFANY & BOSCO, P.A.

6

7                              BY _/s/ MSB # 010167_____
                                  Mark S. Bosco
8                                 Leonard J. McDonald
                                  Attorneys for Movant

9

10            **MEMORANDUM OF POINTS AND AUTHORITIES**

11    Andrew C. Bailey filed a voluntary petition for protection under Chapter 11 of the Bankruptcy

12   Code. (No trustee has been appointed and debtors continue to act as debtors in possession.)

13    Debtor has an interest in certain real property located in Los Angeles County, Arizona, more

14   particularly described as:

15       Lot 4, Block 6 Tract No. 10116, in the City of Glendale, County of Los Angeles, State of California,
         as shown by Map on file in Book 143 pages 98 and 99 of Maps, in the office of the County
16       Recorder of said County.

17

18    A Note was executed which is secured by a Deed of Trust, dated November 7, 2005, recorded in

19   the office of the Los Angeles County Recorder's Office.  True copies of the Note, Deed of Trust are

20   annexed as Exhibits "A" and "B", respectively, and made a part hereof by this reference.

21    Debtor is in default on the obligation to Movant for which the property is security, and payments are

22   due under the Promissory Note from and after June, 2008.

23   /////

24

25

26

Debtor is in default on his obligation to Movant for which the property is security, and payments are due under the Promissory Note from and after June 1, 2008. The current default amount is set forth below:

| | |
|---|---|
| 11 Monthly Payments at $2,669.78 (June 1, 2008-April 1, 2009) | $29,367.58 |
| 3 Monthly Payments at $2,673.20 (May 1, 2009-July 1, 2009) | $ 8,019.60 |
| Accrued Late Charges | $ 1,320.00 |
| Corporate Advance | $ 2,610.86 |
| Foreclosure Fees and Costs | $ 2,380.86 |
| Bankruptcy Attorney Fees | $ 800.00 |
| Motion for relief Filing Fees | $ 150.00 |
| Total amount Due | $44,648.90 |

Furthermore, a payment becomes due on August 1, 2009 and on the 1st day of every month thereafter, and a late charge becomes due on any payment not paid within fifteen (15) days from the date the monthly payment is due.

Movant is informed and believes and therefore alleges that the Debtor and estate have no equity in the property; that the Property is not necessary to an effective reorganization in light of the amount of equity Movant's lien as well as other liens remaining unpaid on the Property; and that the Property, rents, issues and profits therefrom are burdensome and of inconsequential value to the estate.

Further, Movant is informed and believes and therefore alleges that the Debtor and the estate are not adequately protected based upon the Debtor's failure to make payments on a timely basis.

Debtor is indebted to Wells Fargo Bank, N.A. in the total amount of $480000.0000, plus accruing interest, costs, and attorneys' fees.

## CONCLUSION

Movant requests that the court enter an order vacating the automatic stay of 11 U.S.C. Section 362(a) and Movant may immediately enforce and implement the order for relief from the automatic stay as to the debtor, his/her bankruptcy estate, the property, and Movant; to allow Movant to foreclose the lien of its Deed of Trust or Mortgage; to evict debtor and/or successors of debtor; and to obtain ownership, possession and control of the Property.

DATED this 9th day of July, 2009.

BY   /s/ MSB # 010167
Mark S. Bosco
Leonard J. McDonald
2525 East Camelback Road, Ste. 300
Phoenix, Arizona 85016
Attorneys for Movant

# INITIAL INTEREST<sup>SM</sup> ADJUSTABLE RATE NOTE

### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

NOVEMBER 07, 2005          SAN DIEGO                    CALIFORNIA

    [Date]                                      [City]                                  [State]

153 WESTERN AVENUE, GLENDALE, CA  91201

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ *****480,000.00 (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is WELLS FARGO BANK, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.500 %. The interest rate I will pay will change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will make a payment every month on the first day of the month beginning on JANUARY 01, 2006. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and if the payment consists of both principal and interest, it will be applied to interest before Principal. If, on DECEMBER 01, 2035, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA 503060304
or at a different place if required by the Note Holder.

### (B) Amount of My Initial Monthly Payments

Before the first fully amortizing principal and interest payment due date stated in subsection (C) below (the "First P&I Payment Due Date"), my monthly payments will be only for the interest due on the unpaid principal of this Note.

Each of my initial monthly payments will be in the amount of U.S. $ *********2,200.00. This amount may change in accordance with subsection (C) below.

### (C) Monthly Payment Changes

The First P&I Payment Due Date is                01/01/16

0060412178
NMFL #8380 (MS1C) Rev 5/9/2005
MULTISTATE INITIAL INTEREST ADJUSTABLE RATE NOTE - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT                                                                 Form 5507 5/04 (rev. 1/05)

-191N (0501)
  VMP Mortgage Solutions, Inc. (800)521-7291
Page 1 of 5                          Initials: 

Exhibit "A"

Prior to the First P&I Payment Due Date, my monthly payment may change to reflect changes in the interest rate I must pay in accordance with Section 4 of this Note or to reflect changes in the unpaid principal of my loan in accordance with Section 5 of this Note. Notwithstanding the provisions of Section 4(C) of this Note to the contrary, prior to the First P&I Payment Due Date the Note Holder will not include in the monthly payment any amount to repay the unpaid principal. Before the effective date of any change in my monthly payment, the Note Holder will deliver or mail to me a notice of the change in accordance with Section 8 of this Note. The notice will include the title and telephone number of a person who will answer any question I may have regarding the notice.

Beginning with the First P&I Payment Due Date, my monthly payment will change to an amount sufficient to repay the principal and interest at the rate described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Sections 4 and 5 of this Note.

## 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The interest rate I will pay may change on the first day of **DECEMBER, 2010** , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called an "Interest Change Date."

### (B) The Index

Beginning with the first Interest Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Interest Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

### (C) Calculation of Changes

Before each Interest Change Date, the Note Holder will calculate my new interest rate by adding **TWO AND THREE-QUARTERS** percentage point(s) ( **2.750** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Interest Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Interest Change Date will not be greater than **10.500** % or less than **2.750** %. Thereafter, my interest rate will never be increased or decreased on any single Interest Change Date by more than **TWO** percentage point(s) ( **2.000** %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than **10.500** %.

### (E) Effective Date of Changes

My new interest rate will become effective on each Interest Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Interest Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to the changes.

If I make a partial Prepayment during the period ending with the due date of my last interest only monthly payment, my partial Prepayment will reduce the amount of my monthly payment. If I make a partial Prepayment after the last interest only monthly payment, my partial Prepayment may reduce the amount of my monthly payments beginning with the monthly payment due after the Interest Change Date following the partial Prepayment. After the first Interest Change Date, any reduction due to my partial Prepayment may be offset by an interest rate increase.

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000** % of my overdue payment of interest during the period when my payment is interest only, and of principal and interest after that. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**11. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**(A) UNTIL MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT IS DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**(B) AFTER MY INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION 4 ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION 11(A) ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL INSTEAD BE DESCRIBED AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.



Form 5507 5/04 (rev. 2/05)
Initials: ___



WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
ANDREW CAMERON BAILEY                -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                                      -Borrower

_____ (Seal)          _____ (Seal)
                                    -Borrower                                                      -Borrower

*[Sign Original Only]*

12/2/05

Recording Requested By:
~~WELLS FARGO BANK, N.A.~~

2

**05 2946072**

Return To:
WFHM FINAL DOCS X9999-01M

1000 BLUE GENTIAN ROAD
EAGAN, MN 55121
Prepared By:
WELLS FARGO BANK, N.A.

16644 WEST BERNARDO DR., STE
101, SAN DIEGO, CA

—————————[Space Above This Line For Recording Data]—————————

5S034043 - 707
5626-005-004

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated NOVEMBER      , 2005 ,
together with all Riders to this document.
(B) "Borrower" is
    CONSTANCE BAXTER MARLOW, AN UNMARRIED WOMAN, AS TO AN UNDIVIDED
    50% INTEREST AND ANDREW CAMERON BAILEY, A MARRIED MAN AS HIS SOLE
    AND SEPARATE PROPERTY, AS TO AN UNDIVIDED 50% INTEREST, AS
    TENANTS IN COMMON

Borrower is the trustor under this Security Instrument.
(C) "Lender" is WELLS FARGO BANK, N.A.

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
0060412178

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT           Form 3005  1/01

-6(CA) (0005)      ACB
Page 1 of 15    CBM

VMP MORTGAGE FORMS - (800)521-7291



Exhibit "B"

Lender's address is **P.O. BOX 10304, DES MOINES, IA 503060304**

Lender is the beneficiary under this Security Instrument.
**(D) "Trustee"** is **FIDELITY NATIONAL TITLE INS CO**
**17911 VON KARMAN, SUITE 200, IRVINE, CA 92614**
**(E) "Note"** means the promissory note signed by Borrower and dated **NOVEMBER 16, 2005**
The Note states that Borrower owes Lender **FOUR HUNDRED EIGHTY THOUSAND AND 00/100**
Dollars
(U.S. $****480,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than **DECEMBER 01, 2035**
**(F) "Property"** means the property that is described below under the heading "Transfer of Rights in the
Property."
**(G) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
**(H) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

- [X] Adjustable Rate Rider
- [ ] Condominium Rider
- [ ] Second Home Rider
- [ ] Balloon Rider
- [ ] Planned Unit Development Rider
- [ ] 1-4 Family Rider
- [ ] VA Rider
- [ ] Biweekly Payment Rider
- [ ] Other(s) [specify]

**(I) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
**(J) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
**(K) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
**(L) "Escrow Items"** means those items that are described in Section 3.
**(M) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
**(N) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
**(O) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
**(P) "RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard

VMP ®-6(CA) (0009) Page 2 of 15 Form 3005 1/01

**05 2946072**

4

to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

**(Q) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the **COUNTY** of **LOS ANGELES** :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

**LEGAL DESCRIPTION ATTACHED HERE TO AND MADE A PART HEREOF:**

SEE EXHIBIT "A" ATTACHED

**\*SEE ADJUSTABLE RATE RIDER**

**TAX STATEMENTS SHOULD BE SENT TO: WELLS FARGO HOME MORTGAGE, P.O. BOX 10304, DES MOINES, IA  503060304**

Parcel ID Number: **5626-005-004**                    which currently has the address of
**153 WESTERN AVENUE**                                                      [Street]
**GLENDALE**                    [City], California **91201**    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

-6(CA) (0006)                    Page 3 of 15            Initials: CBH ACB            Form 3005  1/01

**05 2946072**

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be

.05 2946072

in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

 
**05 2946072**

7

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

05 2946072

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

05 2946072

12/2/05

9

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

05 2946072

10

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

VMP®-6(CA) (0005)      Page 9 of 15      Form 3005 1/01

**05 2946672**

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

12

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

05 2946072

12/2/05

13

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

-6(CA) (0507)     Page 12 of 15     Initials CBM ACB     Form 3005  1/01

05 2946072

14

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

05 2946072

12/2/05

15

BY SIGNING BELOW. Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____                              _____ (Seal)
                                                                                              -Borrower
                                                        ANDREW CAMERON BAILEY

_____                              _____ (Seal)
                                                                                              -Borrower
                                                        CONSTANCE BAXTER MARLOW

_____ (Seal)                       _____ (Seal)
                    -Borrower                                                    -Borrower

_____ (Seal)                       _____ (Seal)
                    -Borrower                                                    -Borrower

_____ (Seal)                       _____ (Seal)
                    -Borrower                                                    -Borrower

05 2946072

12/2/05

16

# EXHIBIT A

LOT 4, BLOCK 6 TRACT NO. 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 143 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

05 2946072

12/2/05

17

State of California
County of

} ss.

On _____ before me, _____

personally appeared

ANDREW CAMERON BAILEY CONSTANCE BAXTER MARLOW

, personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed
to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity
upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

STEPHANIE BOGAN
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

STATE OF ARIZONA
COUNTY OF Maricopa
The foregoing instrument was acknowledged
before me this 17th day of Nov. , 2005
By Andrew Cameron Bailey & Constance Baxter Marlow
Notary Public _____
My Commission Expires aug. 28 2009

-8(CA) (000b)

Page 15 of 15

Initials: _____

Form 3005  1/01

05 2946072

12/2/05

18

STATE OF _Arizona_____  } ss.

COUNTY OF _Maricopa_____

On _Nov 17th, 2005_____, before me, _Stephanie Bogan_____

PERSONALLY APPEARED _Andrew Cameron Bailey_____
_Constance Baxter Marlow_____

personally known to me (or proved to me on the basis of satisfactory
evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

STEPHANIE BOGAN
Notary Public - Arizona
Maricopa County
My Commission Expires
August 28, 2009

This area for Official Notarial Seal

——————————— OPTIONAL ———————————

Though the data below is not required by law, it may prove valuable to persons relying on the document and could
prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**                    **DESCRIPTION OF ATTACHED DOCUMENT**

☐ INDIVIDUAL
☐ CORPORATE OFFICER                               _____
                                                   TITLE OR TYPE OF DOCUMENT
_____
          TITLE(S)
                                                   _____
☐ PARTNER(S)      ☐ LIMITED
                  ☐ GENERAL
☐ ATTORNEY-IN-FACT                                 _____
☐ TRUSTEE(S)                                       NUMBER OF PAGES
☐ GUARDIAN/CONSERVATOR
☐ OTHER: _____                           _____
                                                   DATE OF DOCUMENT

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S) OR ENTITY(IES)
_____
_____                       _____
                                                   SIGNER(S) OTHER THAN NAMED ABOVE

ID-1232 (REV. 5/01)          ALL-PURPOSE ACKNOWLEDGEMENT

05 2946072

19

# ADJUSTABLE RATE RIDER
### (1-Year Treasury Index - Rate Caps)
### (Assumable after Initial Period)

THIS ADJUSTABLE RATE RIDER is made this **16** day of **NOVEMBER 2005** , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure the Borrower's Adjustable Rate Note (the "Note") to **WELLS FARGO BANK, N.A.**

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
**153 WESTERN AVENUE, GLENDALE, CA  91201**

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of **5.500 %**. The Note provides for changes in the interest rate and the monthly payments as follows:

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(A) Change Dates**

The interest rate I will pay may change on the first day of **DECEMBER, 2010** , and may change on that day every 12th month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one year, as made available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information. The Note Holder will give me notice of this choice.

0060412178

MULTISTATE ADJUSTABLE RATE RIDER - 1-Year Treasury Index (Assumable after Initial Period) - Single Family - Freddie Mac UNIFORM INSTRUMENT          Form 5110 3/04

VMP®-834R (0405).01
Page 1 of 4          Initials: [initials]
VMP Mortgage Solutions, Inc.   (800)521-7291
NMFL #8361 (FM5R) Rev 12/8/2004

**05  2946072**

20

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND THREE-QUARTERS percentage point(s) ( 2.75 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.500 % or less than 2.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO percentage point(s) ( 2.000 %) from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.500 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. **UNTIL BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE IN EFFECT AS FOLLOWS:**

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

Initials: HCR CBM

-834R (0405).01          Page 2 of 4          Form 5110 3/04

05 2946072

12/2/05

21

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**2. AFTER BORROWER'S INITIAL INTEREST RATE CHANGES UNDER THE TERMS STATED IN SECTION A ABOVE, UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT DESCRIBED IN SECTION B1 ABOVE SHALL THEN CEASE TO BE IN EFFECT, AND THE PROVISIONS OF UNIFORM COVENANT 18 OF THE SECURITY INSTRUMENT SHALL BE AMENDED TO READ AS FOLLOWS:**

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Initials: _HCS_
_CBM_

-834R (0405).01          Page 3 of 4          Form 5110 3/04

05 2946072

12/2/05

22

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
ANDREW CAMERON BAILEY          -Borrower

_____ (Seal)
CONSTANCE BAXTER MARLOW        -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

-834R (0405).01          Page 4 of 4          Form 5110 3/04

05 2946072

12/2/05

23

# CERTIFICATION PURSUANT TO GOVERNMENT CODE SECTION 27361.7

SAN DIEGO
_____
Place of Execution

I certify under penalty of perjury that this material is a true copy of the original material contained in this document.

12·1·05
_____
Date

_____
Signature of Declarant

JOHN R HALL
_____
Type or Print Name

4/94
Recorder Form #RS

05 2946072

24

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**

STATE OF CALIFORNIA
COUNTY OF _____                } SS

On _____ before me, _____ ,

personally appeared _____ ,
                                                    NAME(S) OF SIGNER(S)

personally known to me                      - OR - proved to me on the basis of satisfactory evidence to be the
                                            person(s) whose name(s) is/are subscribed to the within instrument and
                                            acknowledged to me that he/she/they executed the same in
                                            his/her/their authorized capacity(ies), and that by his/her/their
                                            signature(s) on the instrument the person(s), or the entity upon behalf of
                                            which the person(s) acted, executed the instrument.

                                            WITNESS my hand and official seal.

                                            _____
                                                    SIGNATURE OF NOTARY

**OPTIONAL**

Though the data below is not required by law, it may prove valuable to persons relying on the document and could
prevent fraudulent reattachment of this form.

**CAPACITY CLAIMED BY SIGNER**          **DESCRIPTION OF ATTACHED DOCUMENT**
   INDIVIDUAL
   CORPORATE OFFICER
                                        _____
_____          TITLE OR TYPE OF DOCUMENT
          TITLE(S)
   PARTNER(S)
   LIMITED or GENERAL                   _____
   ATTORNEY-IN-FACT                         NUMBER OF PAGES
   TRUSTEE(S)
   GUARDIAN/CONSERVATOR
   OTHER:                               _____
                                            DATE OF DOCUMENT

**SIGNER IS REPRESENTING:**
NAME OF PERSON(S( OR ENTITY(IES)        _____
                                            SIGNER(S) OTHER THAN NAMED ABOVE
_____

05 2946072

**EXHIBIT G**

SO ORDERED.

# TIFFANY & BOSCO
### P.A.
2525 EAST CAMELBACK ROAD
SUITE 300
PHOENIX, ARIZONA 85016
TELEPHONE: (602) 255-6000
FACSIMILE: (602) 255-0192

Dated: October 02, 2009

_____
REDFIELD T. BAUM, SR
U.S. Bankruptcy Judge

Mark S. Bosco
State Bar No. 010167
Leonard J. McDonald
State Bar No. 014228
Attorneys for Movant

09-14716/0060412178

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF ARIZONA

IN RE:

Andrew C. Bailey
      Debtors.

Wells Fargo Bank, N.A.
      Movant,

  vs.

Andrew C. Bailey, Debtors; Office of the US
Trustee, Trustee.

      Respondents.

No. 2:09-bk-06979-RTBP

Chapter 11

O R D E R

(Related to Docket #22)

This matter having come before the Court for a Preliminary Hearing on September 28, 2009, Movant appearing by and through its attorney, Tiffany & Bosco, P.A., Debtor appearing by and through their counsel, pro se, and good cause appearing,

**IT IS HEREBY ORDERED** that all stays and injunctions, including the automatic stays imposed by U.S. Bankruptcy Code 362(a) are hereby terminated as to Movant with respect to that certain real property which is subject of a Deed of Trust dated November 7, 2005, and recorded on December 2,

2005 in 05-2946072, in the office of the Los Angeles County Recorder at  wherein Wells Fargo Bank, N.A. is the current beneficiary and Andrew C. Bailey have an interest in, further described as:

Lot 4, Block 6 Tract No. 10116, in the City of Glendale, County of Los Angeles, State of California, as shown by Map on file in Book 143 pages 98 and 99 of Maps, in the office of the County Recorder of said County.

IT IS FURTHER ORDERED that this Order vacating the automatic stay imposed by U.S. Bankruptcy Court Code 362(a) shall be binding and effective in the event the Debtor converts this case to another chapter under the U.S. Bankruptcy Code.

DATED this ____day of _____, 2009.

_____

JUDGE OF THE U.S. BANKRUPTCY COURT

## Notice Recipients

| | |
|---|---|
| District/Off: 0970−2 | User: taylore | Date Created: 10/5/2009 |
| Case: 2:09−bk−06979−RTBP | Form ID: pdf004 | Total: 2 |

**Recipients of Notice of Electronic Filing:**
db     ANDREW C BAILEY     andrew@cameronbaxter.net
aty    MARK 3 BOSCO     ecf@tblaw.com

                                                                         TOTAL: 2

FORM ntentry

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF ARIZONA

In re:                                          Case No.: 2:09–bk–06979–RTBP

    ANDREW C BAILEY                             Chapter: 11
    2500 N PAGE SPRINGS RD
    CORNVILLE, AZ 86325
    SSAN: xxx–xx–5378
    EIN:

Debtor(s)

## NOTICE OF ENTRY OF JUDGMENT OR ORDER

You are hereby notified that on October 5, 2009, this Court entered the enclosed judgment or order on the docket for the above–entitled proceeding.

I hereby certify that on this date a copy of this notice and the judgment or order were sent to the Bankruptcy Noticing Center for mailing to the parties and the U.S. Trustee.

**Date: October 5, 2009**

**Address of the Bankruptcy Clerk's Office:**          Clerk of the Bankruptcy Court:
U.S. Bankruptcy Court, Arizona
230 North First Avenue, Suite 101                      **Brian D. Karth**
Phoenix, AZ 85003–1727
Telephone number:  (602) 682–4000
www.azb.uscourts.gov

# Notice Recipients

District/Off: 0970−2                 User: taylore                 Date Created: 10/5/2009
Case: 2:09−bk−06979−RTBP             Form ID: ntentry              Total: 2

**Recipients of Notice of Electronic Filing:**
db      ANDREW C BAILEY          andrew@cameronbaxter.net
aty     MARK 3 BOSCO             ecf@tblaw.com

                                                              TOTAL: 2

**EXHIBIT H**

2ᵃ

FILED

2010 JUN -2 PM 2:24

CLERK
U.S. BANKRUPTCY
DISTRICT OF ARIZONA

1

2   **ANDREW C. BAILEY**

3   2500 N. Page Springs Rd
    Cornville, AZ 86325

4   928 634-4335
    *Self-Represented Litigant*

5

6              IN THE UNITED STATES BANKRUPTCY COURT

7              FOR THE DISTRICT OF ARIZONA

8   **ANDREW C. BAILEY**                    | **Chapter 11**
9                              Plaintiff     | **BK Case #: 2:09-bk-06979-PHX-RTBP**
                                            | **AP Case #: 2:09-ap-01727-RTBP**
10

11  vs
    WELLS FARGO BANK NA a/k/a WELLS
12  FARGO HOME MORTGAGE                      |        **SECOND**
    (WELLS); US BANK NA AS TRUSTEE FOR       | **AMENDED COMPLAINT**
13  WFMBS 2006-AR2 (US BANK); LEHMAN         | **FOR LACK OF STANDING,**
    BROTHERS INC a/k/a LEHMAN                |      **VOID CONTRACT,**
14  BROTHERS BANK FSB (LEHMAN), and all      |  **DAMAGES FOR FRAUD,**
    persons claiming by, through, or under such | **FALSE REPRESENTATION,**
15  person, all persons unknown, claiming any | **PREDATORY LENDING,**
    legal or equitable right, title, estate, lien, or |    **QUIET TITLE,**
16  interest in the property described in the | **INJUNCTIVE RELIEF**
    complaint adverse to Plaintiff's title thereto; |
17  and JOHN DOES "1-10"inclusive.           |
18                            Defendant      |

19

20  **INTRODUCTION**

21  This matter arises out of Defendant's unlawful commencement of a non-judicial foreclosure

22  proceeding against Plaintiff Andrew C. Bailey without proper authority or documentation.

23  Defendant is no longer in possession of Plaintiff's unaltered "Genuine Original Promissory

24
    Note" and refuses to produce the Note in its unaltered form. Defendant is attempting to
25

- 1 -

conceal the alterations to or non-existence of the Note by concealing the Note and attempting to take Plaintiff's property through an unlawful non-judicial foreclosure proceeding. Plaintiff questions the Jurisdiction of the non-judicial court and foreclosure proceeding. Plaintiff questions the veracity of all the alleged paperwork to move forward with non-judicial foreclosure against Plaintiff. Plaintiff and Defendant know the alleged paperwork will not hold up under the scrutiny of the Court and Best Evidence Rules strictly enforced by the Court. The law is clear. Plaintiff invokes his rights pursuant to U.C.C.3-501(b)(2). Defendant must exhibit the instrument.

**Plaintiff Andrew C. Bailey, in pro per, alleges:**

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

**Parties**

3. There are multiple parties known and unknown who claim or may claim an interest in Plaintiff's property.

4. Plaintiff is a resident of the State of California living in and otherwise using and occupying his home located at 153 Western Avenue, Glendale, CA 91201(the Property).

5. Defendant WELLS is and was, at all times material, a corporation organized in the State of Delaware doing business in the State of California. Wells is and was, at all times material hereto, the "loan originator" and "servicer" of the "subject loan".

06/02/2010

6. Defendant US BANK, NA is and was, at all times material, a corporation organized in the State of Minnesota doing business in the State of California.

7. Defendant LEHMAN (which changed its name to Aurora Bank, FSB in April 2009) is and was, at all times material, a corporation organized in the State of Delaware doing business in the State of California.

8. JOHN DOES 1-10 are securitization parties: undisclosed, unnamed and unknown investors, participants, corporate or other entities, conduits, trustees, servicers, custodians and others in a complex mortgage securitization scheme that involved the Defendants and other known and unknown parties.

9. The term "Defendant" hearinafter refers to each and all of the above-named defendants collectively and individually.

10. The parties claim or may claim an interest in the property as a result of the securitization of an alleged "mortgage loan transaction" between Plaintiff and Defendant WELLS.

11. Plaintiff has the right to know who the parties are and whether they are parties in interest.

12. Plaintiff has the right to know who the parties are and whether they are creditors.

13. Plaintiff has the right to a full accounting of all debits and credits to his alleged account

06/02/2010

with the parties.

**Procedural History**

14. On April 8th, 2009 three of Plaintiff's unsecured creditors filed an involuntary petition against the Plaintiff for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

15. On May 28th, 2009 (the "Petition Date") this Court entered an order granting Plaintiff's motion to convert to Chapter11 thereby commencing the above-captioned lead case.

16. On December 23, 2009, Plaintiff filed the instant adversary complaint. This pleading is the second amendment to that complaint.

**Background Material Facts**

17. Plaintiff makes no admissions unless expressly admitted herein.

18. Plaintiff engaged in a purported "mortgage loan transaction" with Defendant WELLS on or about November 7, 2005.

19. The purported "mortgage loan transaction" with Defendant was and is part of a securitization scheme. Plaintiff's "loan" was securitized.

20. The purported "mortgage loan transaction" was not a loan, but consisted merely of

06/02/2010

transfers and exchanges of credits amongst bookkeeping entities and entries.

21. It has not been proved that there was a loan from Defendant to Plaintiff as alleged. A note is only "evidence of debt" not the debt itself. In Re: Matthews v. Hinton (1965) 234 Cal.App.2d 736, [44 Cal.Rptr. 692]. "A 'note' is merely evidence of the debt, not the debt itself, which is what is secured." 1 Mortgages, Deeds of Trusts, and Foreclosure Litigation (Cont.Ed.Bar 4th ed. 2010).

22. WFMBS 2006-AR2 is a securities trust that allegedly includes Plaintiff's "loan".

23. Plaintiff has secured the services of an expert in securitized residential mortgage products and mortgage-backed securities who has executed a Declaration of his findings, opinions and recommendations. [Exhibit "B" at dkt #135 in the lead case] The Declaration will be updated and expanded during discovery.

24. Defendant represents that Plaintiff has an obligation owing and due.

25. Defendant claims to have documents with Plaintiff's bona fide signature.

26. Plaintiff never received an executed copy of the alleged promissory note or agreement that possesses Plaintiff's bona fide signature.

27. Defendant has not established the validity of the alleged promissory note. California Uniform Commercial Code section 3308 states that the burden of proof of establishing validity is on the person claiming validity. See California Commercial Code

-5-

section 3308 <http://www.leginfo.ca.gov/cgi-bin/displaycode?section=com&group=03001-04000&file=3301-3312

28. Plaintiff demands strict compliance with the Rules of Evidence.

29. Plaintiff did not enter into any agreement whereby Plaintiff allowed Defendant to take his note to pay off a third-party loan which Defendant obtained to fund Plaintiff's "loan".

30. Defendant used Plaintiff's note as "value" and returned the proceeds as a "loan", as evidenced by the "pay to the order of. . .without recourse" endorsement.

31. Defendant is not a holder in due course.

32. Defendant is not a holder.

33. The alleged Limited Power of Attorney presented by Defendant as proof of its authority is a forgery. (See Objection: Dkt #175, May 3, 2010 in lead case).

34. Defendant has not produced the original promissory note with Plaintiff's name on it.

35. Plaintiff's "loan transaction" was and is subject to undisclosed agreements to which Plaintiff was not a party, in violation of state and federal disclosure statutes.

36. Plaintiff has no obligation under those agreements.

37. Plaintiff has not defaulted on any valid loan obligation.

06/02/2010

38. On or about December 22, 2008 Plaintiff received a notice alleging default on the "loan".

39. No such default has been accounted for or proven.

40. Third party payments have been made on the obligation and money has changed hands.

41. No full accounting including third party payments was ever provided in support of the alleged default.

42. On September 21, 2009 Plaintiff served a Qualified Written Request pursuant to the Real Estate Settlement Procedures Act 12 U.S.C. § 2605 and a Debt Validation Letter pursuant to the Fair Debt Collection Practices Act 15 U.S.C §1692 on Defendant.

43. Defendant dishonored the statutory requests and provided no 20-day acknowledgement and only a partial and insufficient 60-day response to the QWR and DVL.

44. Plaintiff served his First Set of Interrogatories and First Request to Produce Documents on Defendant on January 11, 2010. (Filed January 12, 2010 at dkt #123 in the lead case).

45. Defendant has not answered Plaintiff's First Set of Interrogatories and First Request to Produce Documents.

46. Defendant has produced no enforceable original note with any assignment or allonge proving up the chain of title.

06/02/2010

47. Defendant has failed to prove that it is the holder of rights under the alleged note, which would permit the legal holder thereof to declare a default which would trigger a foreclosure.

47. Defendant's July 9, 2009 Motion for Relief from the Automatic Stay (dkt#22 in the lead case) was filed under Arizona's or California's non-judicial foreclosure statute.

48. Plaintiff objected to and opposed the Motion for Relief from the Automatic Stay on July 24, 2009 (dkt#36 in the lead case), thus making the proceeding judicial.

49. From the moment of Plaintiff's objection on July 24, 2009 he had the right to discovery and an evidentiary hearing.

50. Plaintiff opposed Defendant's Motion on the grounds that Defendant lacks standing and is not "the holder in due course" or "the current beneficiary" as falsely asserted.

51. Defendant has never proved foundation, standing or authority to bring an action of foreclosure.

52. Defendant WELLS is only the alleged "servicer" of the "loan", and as such cannot institute or maintain a foreclosure proceeding without proper authority from the true holder of the note.

53. Based on the findings of the expert witness, there is conflict between the representations of Defendant and the expert witness, requiring inquiry and an evidentiary hearing.

06/02/2010

54. Defendant US BANK as "trustee" for unnamed "Certificateholders" of a "trust" has failed to demonstrate that it and not the Certificateholders is the party with the true ownership interest in the "loan"

55. Defendant US BANK as "trustee" for unnamed "Certificateholders" has failed to demonstrate that it has any authority from the Certificateholders.

56. Defendant refuses to explain the business relationships among the securitization parties, remaining silent on the subject, thereby denying and concealing the very existence of the parties, the agreements among them, and the substantial money that changed hands.

57. Plaintiff has received conflicting representations as to the alleged creditor's identity, and believes there exists a title defect or cloud on his title.

58. Defendant has not demonstrated actual or threatened injury as a consequence of any default.

59. Defendant has benefitted financially from the "loan transaction" with Plaintiff.

60. Severance of the ownership and possession of the original note and mortgage has occurred.

61. Plaintiff's Second Amended Complaint is timely filed and served in compliance with the Court's instructions.

06/02/2010

62. Defendants, and all of them, are included in each and all of Plaintiff's allegations as and where applicable.

63. Exhibits and declarations previously filed by Plaintiff in this adversary proceeding and as Debtor in the lead case shall not be construed as admissions.

64. Plaintiff will file and serve memoranda as necessary in support of the following five causes of action:

### FIRST CAUSE OF ACTION

### (LACK OF STANDING)

(All Defendants)

65. Plaintiff incorporates and re-alleges paragraphs 1-64.

66. Plaintiff requests that the Court enter an Order declaring that Defendant lacks standing to foreclose on Plaintiff's residence.

67. Defendant does not have standing to seek and receive stay relief on Plaintiff's residence for reasons set forth below.

See, for example: In Re: Foreclosure Cases: 3:07-cv-00286-TMR-MRM Standing: Federal courts have only the power authorized by Article III of the United States Constitution and the statutes enacted by Congress pursuant thereto. *Bender v. Williamsport Area School District,* 475 U.S. 534, 541 (1986). As a result, a plaintiff must have constitutional standing in order for a federal court to have jurisdiction. *Id.*

Plaintiffs have the burden of establishing standing. *Loren v. Blue Cross & Blue Shield of*

- 10 -

1   *Michigan*, No. 06-2090, 2007 WL 2726704 at \*7 (6th Cir. Sept. 20, 2007). If they cannot do
    so, their claims must be dismissed for lack of subject matter jurisdiction. *Id.* (citing *Central*
2   *States Southeast & Southwest Areas Health and Welfare Fund v. Merck-Medco Managed*
    *Care*, 433 F.3d 181, 199 (2d Cir. 2005)).

3

4   68. Defendant failed to provide foundation, admissible evidence or certified documentation

5   that supports its assertion of standing or authority to foreclose pursuant to UCC 3-501(b)(2).

6
        § 3-501. Presentment:
7           (b) The following rules are subject to Article 4, agreement of the parties, and
        clearing-house rules and the like:
8           (2) Upon demand of the person to whom presentment is made, the person
        making presentment must (i) exhibit the instrument, (ii) give reasonable
9       identification and, if presentment is made on behalf of another person,
        reasonable evidence of authority to do so, and (iii) sign a receipt on the
10      instrument for any payment made or surrender the instrument if full payment
        is made.
11

12  69. Plaintiff hereby demands, pursuant to UCC 3-501(b)(2) that Defendant present and

13  exhibit the instrument for this Court's inspection and present to this Court reasonable

14  evidence of their authority to exhibit the instrument.

15  70. If Defendant refuses to present the instrument to this Court then Defendant is in

16  violation of UCC 3-501 and therefore has no standing in this case.

17

18  71. Defendant has not demonstrated that it is the holder in due course or that is it the agent

19  of the holder in due course.

20
    72. Plaintiff moves this Court to have Defendant stipulate and admit on and for the record
21
    whether or not they are the creditor and whether or not they are the holder in due course in
22  this matter.

23

24  73. If Defendant refuses to admit as to whether they are or are not the creditor and/or the

25  holder in due course the defendant must be considered in contempt of court.

06/02/2010

74. The "Limited Power of Attorney" from US BANK to WELLS is fabricated, null and void. (See Debtor's Objection: Dkt #175 on May 3, 2010 in lead case).

75. There is no evidence that Defendant has been damaged.

76. There is no evidence as to the existence or identity of a real holder in due course.

77. The alleged note evidencing Plaintiff's obligation is invalid.

78. The wrong party is named as lender on the alleged note and the alleged deed of trust.

**Statement of Facts (applicable to each of the causes of action)**

79. The "loan transaction" (the "loan") was arranged by Wells Fargo Bank, NA on or about November 7, 2005.

80. The "loan" at the time of origination was subject to pre-existing undisclosed securitization contracts and agreements.

81. The "loan" was and is subject to securitization contracts and agreements pursuant to a Pooling and Servicing Agreement.

82. The alleged note and deed of trust ("loan") have been securitized, sold, transferred and assigned.

06/02/2010

83. Plaintiff could not possibly have suspected, known or understood anything about the complex agreements, plans and intentions among and between the Defendants known and unknown until very recently.

84. No evidence has been offered that the "loan" is actually in the "Trust" or that the "Trust" actually exists or that Defendant ever had or still retains any residual interest in such "Trust".

85. The copy of the alleged note offered as Exhibit "A" in Defendant's July 9, 2009 Motion for Lift of Stay (dkt # 22 in lead case) carries no endorsements or allonge evidencing any sales, transfers or assignments of the alleged note.

86. Payments including third-party payments have been made and money has changed hands on Plaintiff's obligation.

87. Full disclosure of the securitization parties has not been provided.

88. A full accounting including all third-party payments and debits has not been provided.

89. No evidence has been provided that the "loan" is in WFMBS 2006-AR2 (the alleged "Trust")

90. No evidence has been provided that the Certificateholders in the Trust have authorized Defendant to act in its behalf.

91. No Bond or Bond Indenture has been produced or offered.

92. Defendant lacks standing to seek relief, and yet has received non-judicial relief from the

06/02/2010

court in the form of a lift of stay which is in effect a summary judgment based on untested and opposed representations, allegations and documentation.

93. The matter is judicial, not non-judicial, because Plaintiff objected.

94. Therefore Plaintiff asserts his right to due process.

95. Due process requires discovery, admitted evidence, sworn witnesses and a hearing.

96. No discovery has been conducted, no evidence has been admitted, no witnesses have testified, no hearing has occurred.

97. Defendant lacks standing because there is no showing that a case or controversy exists between Defendant and Plaintiff. Under the terms of the alleged note, prescribed payments are due to the note holder. The note holder is either the original mortgagee or a successor in interest. Defendant is neither. Defendant has not proved that it is the holder of the note or the representative of the holder of the note. "To satisfy the requirement of standing, the plaintiff must show that a case or controversy exists between the plaintiff and the defendant." United Auto. Ins. Co. v. Diagnostics of S. Fla., Inc., 921 So.2d 23, 25 (Fla. 3d DCA 2006), Friedman v. New York Life Ins. Co., 985 So.2d 56, 2008 (Fla.App. 4 Dist., April 16, 2008).

98. Defendant lacks standing because the note was securitized. There must be an allegation that the mortgagee, allegedly Defendant, is the present holder and owner of the mortgage and note. Edason v. Central Farmers Trust Co., 129 So. 698 (Fla.1930); but see Graham v. Fitts, 43 So. 512 (Fla.1907). See also Hotel Management Co. v. Krickl, 158 So. 118 (Fla.1934); O'Malley v. Harris, 173 So. 355 (Fla.1937); Lakeland Prod. Credit Assn. v.

- 14 -

1   Coachman, 5 So.2d 49 (Fla.1941); Willark House v. Espinosa, 328 So.2d 514 (Fla. 3 DCA

2   1976); Shapiro v. Family Bank, 538 So.2d 944 (Fla. 3 DCA 1989). Owner and Holder of

3   Mortgage Note: Philogene v. ABN Amro Mortg. Group Inc., 948 So. 2d 45 (Fla. 4th DCA

4   2006); Mortgage Electronic Registration Systems, Inc. v. Revoredo, 955 So. 2d 33 (Fla. 3d

5   DCA 2007); Mortgage Electronic Registration Systems, Inc. v. Azize, 965 So. 2d 151 (Fla.

6   2d DCA 2007).

7

8   99. By transferring ownership and holding of the mortgage promissory note to certificate

9   holders of a publicly traded security, the transfer negated the ability of the trustee or

10  servicing agent to sue as the owner or holder of the promissory note. A mortgage cannot be

11  foreclosed on behalf of the owner and holder of a note who does not actually own or hold

12  the note. There is a difference between what is required to enforce a note and what is

13  required to enforce a mortgage in foreclosure. The promissory note as a note remains

14  enforceable if it has not been paid, but not the mortgage. The note is not secured by the

15  Property.

16
17  100. For the foregoing reasons, Defendant has no standing to foreclose.

18              **SECOND CAUSE OF ACTION**

19                 **(VOID CONTRACT)**

20                   (All Defendants)

21

22  101. Plaintiff incorporates and re-alleges paragraphs 1-100.

23
24  102. Plaintiff requests that the Court enter an Order declaring that the alleged contract

25  between Plaintiff and Defendant is non-existent, without effect, null, and void.

- 15 -

103. There is and was no contract because the "borrower" (Plaintiff) and the "lender" (Defendant) did not share any expectation that the "borrower" could perform. Plaintiff intended to borrow money, pay it back, and own the property. Defendant intended to sell the loan to investors before Plaintiff defaulted and then profit by collecting settlements, after the inevitable default, and from insurance companies as a result of purchasing credit default swaps.

104. Further, Defendant intended and expected to take the collateral and take title to Plaintiff's home after the default.

105. There was therefore no meeting of the minds or shared expectations between the parties, a threshold requirement for a valid contract.

106. The "loan" was not the straightforward home re-finance it was represented to be.

107. Defendant did not use its own money to fund the "loan" and acquire Plaintiff's promissory note.

108. Defendant sold Plaintiff's promissory note and used the proceeds of the sale to fund the "loan".

109. Plaintiff reasonably believed he was achieving his goal of home ownership and future financial security.

110. Defendant intended to make money from the securitization and servicing of the "loan", and from insurance payouts, credit default swaps, and from other third-party sources.

111. Defendant knew that Plaintiff could not repay, but ignored and bypassed reasonable underwriting standards in approving the "loan".

06/02/2010

112. Additionally, the "loan" was and is subject to undisclosed pre-existing and subsequent contracts and agreements with and among undisclosed parties.

113. Plaintiff is not and was never a party to any of these additional contracts and agreements, and is not obligated to any of the terms and conditions thereof.

114. For the reasons set forth above there is not and never was a contract between Plaintiff and Defendant.

115. For the foregoing reasons, the alleged contract is void.

### THIRD CAUSE OF ACTION

### (FRAUD, FALSE REPRESENTATION, PREDATORY LENDING)

### (All Defendants)

116. Plaintiff incorporates and re-alleges paragraphs 1-115.

117. Plaintiff requests that the Court enter an Order declaring Defendant guilty of fraud, false representation, material concealment, and predatory lending.

In Re: Norkin v. United States Fire Ins. Co., 237 Cal.App.2d 435, 437 [47 Cal.Rptr. 15], "Initially it is to be noted that 'It is a cardinal rule of pleading that fraud must be pleaded in specific language descriptive of the acts which are relied upon to constitute fraud. It is not sufficient to allege it in general terms, or in terms which

- 17 -

06/02/2010

amount to mere conclusions.' 'The elements of fraud, which give rise to the tort action for deceit, are (1) misrepresentation (false representation, concealment or nondisclosure); (2) knowledge of falsity (or "scienter"); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage.'

118. Plaintiff alleges nine elements of fraud as set forth below:

(1) Defendant represented itself as the lender in the "loan transaction".

(2) The representation was false: Defendant was not the lender. Defendant was the "straw man" or nominee for an undisclosed party in a securitization scheme.

(3) The representation was material to Plaintiff's decision to re-finance, to enter into the contract, and to sign the agreement.

(4) At the time Defendant made the representation Defendant knew the representation was false or misleading.

(5) The representation was made with intent to deceive. Defendant meant for Plaintiff to rely on the representation that it was the lender. Defendant intended to deprive Plaintiff of the legal right and title to his home.

(6) Plaintiff did not know the representation was misleading or false.

(7) Plaintiff reasonably relied on the representation.

(8) Plaintiff's reliance was justified. Plaintiff believed he was making a sound

- 18 -

investment based on Defendant's inflated appraisal and the representation that he
could re-finance in the future.

(9) Plaintiff has suffered economic and other damage as a result of his reliance.
Plaintiff is in a much worse position than he was in before the re-finance.

**120. Legal Discussion**

The relationship between parties can make a difference in determining whether a
statement is fraudulent. A misleading statement is more likely to be fraudulent when
one party has superior knowledge in a transaction, and knows that the other is
relying on that knowledge, than when the two parties possess equal knowledge.

Misleading statements are most likely to be fraudulent where one party exploits a
position of trust and confidence, or a fiduciary relationship. A statement need not be
affirmative to be fraudulent. When a person has a duty to speak, silence may be
treated as a false statement. This can arise if a party who has knowledge of a fact
fails to disclose it to another party who is justified in assuming its nonexistence.
Such an omission may be considered fraudulent. This is constructive fraud, and it is
usually inferred when a party is a fiduciary and has a duty to know of, and disclose,
particular facts.

There may be circumstances rendering failure to disclose facts fraud, invalidating a
contract. The rule that failure to disclose facts is not fraud does not apply where the
circumstances are such as to impose a duty to disclose them. Thus, where, with
intent to deceive, a party to a contract conceals material facts which good faith
requires him or her to disclose, this is equivalent to a false representation.

In determining whether a party owed a duty to speak of a material fact, as to which
he or she was silent, and hence was guilty of fraud invalidating the contract, the

- 19 -

parties' situation, matters dealt with, and subject matter in hand must be considered. The duty to speak, rendering silence fraudulent, may arise from the confidential relation of the parties to the contract, or where one party knows that the other relies on him or her to tell him or her as to the facts of the case, in which case a duty arises not to conceal anything material to the bargain, although the parties do not stand in what is generally described as a fiduciary relation.

121. 15 U.S.C. § 1692 (E) STATES THAT a "false, deceptive, and misleading representation, in connection with the collection of any debt", includes the false representation of the character or legal status of any debt and further makes a threat to take any action that cannot legally be taken a deceptive practice.

122. Plaintiff sues Defendant for damages: statutory and actual damages, return of all interest and principal paid, legal fees, treble damages and other damages known and unknown.

123. Defendant borrowed money from undisclosed parties to fund a "loan" which is allegedly secured by the Property.

124. Defendant did not use Defendant's own money to fund the "loan".

125. Defendant has unclean hands.

126. The "loan" was a "no-documentation, interest-only" transaction.

127. No income verification was asked for or required.

06/02/2010

128. Defendant knew Plaintiff would be unable to pay off the "loan".

129. Defendant knew Defendant would get the collateral, namely title to Plaintiff's home.

130. No attorney was present at the "loan closing".

131. The "closing documents" were couched in complex, confusing legalese.

132. The "closing documents" named the wrong party as lender.

133. Plaintiff was fraudulently induced to take the deal.

134. Plaintiff would not have taken the deal had he known the true facts.

135. The foregoing facts prove that Defendant engaged in predatory lending.

136. Defendant made false and misleading representations and remained silent when it should have spoken as set forth below:

    (a) Defendant falsely identified itself as the lender in the closing documents.

    (a) The note falsely identifies Defendant as the lender.

    (b) The deed of trust falsely identifies Defendant as the lender.

06/02/2010

(c) Defendant was not the lender (the source of the money) but merely the nominee for an undisclosed principal.

(d) Defendant subsequently misrepresented itself as "the current beneficiary" at the two hearings concerning Defendant's motion for relief from the automatic stay.

(e) Defendant concealed, refused and failed to disclose or explain or account for its relationship with and among the various securitization parties, remaining silent on the subject, thereby denying and concealing the very existence of the parties, the agreements among them, and the money that changed hands.

137. There are circumstances that render failure to disclose facts fraud, invalidating a contract. The rule that failure to disclose facts is not fraud does not apply where the circumstances are such as to impose a duty to disclose them. Where, with intent to deceive, a party to a contract conceals material facts which good faith requires him or her to disclose, this is equivalent to a false representation.

138. In determining whether a party owed a duty to speak of a material fact, as to which he or she was silent, and hence was guilty of fraud invalidating the contract, the parties' situation, matters dealt with, and subject matter in hand must be considered. The duty to speak, rendering silence fraudulent, may arise from the confidential relation of the parties to the contract, or where one party knows that the other relies on him or her to tell him or her as to the facts of the case, in which case a duty arises not to conceal anything material to the bargain, although the parties do not stand in what is generally described as a fiduciary

- 22 -

relation.

139. Plaintiff will be filing and serving a detailed supplemental memorandum in support of this cause of action.

## FOURTH CAUSE OF ACTION
### (TO QUIET TITLE)

140. Plaintiff incorporates paragraphs 1-139.

141. Plaintiff requests that the Court enter an Order quieting title to the Property and declaring that Plaintiff and his partner are the owners of the Property, and that Defendant has no interest in the Property adverse to the Plaintiff.

142. The basis of Plaintiff's title is a Grant Deed granting the Property in fee simple to Plaintiff dated September 28, 2005 and recorded in the official records of Los Angeles County, CA as Instrument # 20052336464 APN # 5626-005-004.

143. Plaintiff and plaintiff's partner Constance Baxter Marlow are the only parties with any interest in the property. Plaintiff and Plaintiff's partner are the sole owners of the Property.

144. There is slander of Plaintiff's title and a cloud on Plaintiff's title.

145. Defendant claims or appears to claim an interest adverse to Plaintiff in the Property as purported holder of a note or Deed of Trust against the Property.

06/02/2010

146. Some of the known and unknown defendants described as "DOES" as set forth above may also claim interests in the Property adverse to Plaintiff as assignees and successors of Defendant.

147. There is no balance left owing on the obligation.

148. There is no holder in due course as a consequence of the securitization of the alleged promissory note.

149. The alleged promissory note, if such can be found, is void.

150. The alleged deed of trust is void.

151. There is no contract or binding agreement between Plaintiff and Defendant.

152. Plaintiff seeks to quiet title against the claims of Defendant, the claims of successor defendants, the claims of all unknown defendants whether or not the claim or cloud is known to plaintiff and the unknown, uncertain or contingent claim, if any, of any Defendant.

153. The claims of Defendant are without any right whatsoever and as such Defendant has no right, title, estate, lien or interest whatever in the Property or any part thereof.

154. Plaintiff seeks to quiet title as of a date to be determined.

06/02/2010

### FIFTH CAUSE OF ACTION

### (INJUNCTIVE RELIEF)

### TRO, PRELIMINARY AND PERMANENT INJUNCTIONS

155. Plaintiff incorporates and re-alleges paragraphs 1-154.

156. Plaintiff asks the Court for an emergency temporary retraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from foreclosing on Plaintiff's home, together with such other and further relief as the Court may deem reasonable and just under the circumstances.

157. Plaintiff hereby respectfully submits this Application for Imposition of Permanent Injunction Pursuant to Federal Rules of Civil Procedure Rule 65 against Defendant to stay the sale of the real property in question.

158. Plaintiff's request for a temporary retraining order (TRO) must fulfill four requirements:

(i) Plaintiff must demonstrate a reasonable chance of success. Once the Court allows due process and discovery, the facts will show that Plaintiff is justified in his allegations as set forth in this complaint.

(ii) Plaintiff must demonstrate the certainty of irreparable harm. If the Court allows

06/02/2010

Defendant to proceed with the non-judicial foreclosure, Plaintiff and his partner will suffer irreparable harm. They will lose their home to foreclosure. They and other family members will be homeless.

(iii) Plaintiff must demonstrate that there will be no detriment to Defendant. Defendant has not invested anything in Plaintiff's property. They therefore have nothing to lose. Further, the TRO will help to prevent Defendant from the commission of a crime, to wit the fraudulent and unlawful taking of title to Plaintiff's home.

(iv) Plaintiff must demonstrate that the TRO would be in the public interest. As in (iii) above, the TRO will help to prevent the commission of a crime. Defendant's attorneys are assisting Defendant in committing fraud upon the Court, upon the States of Arizona and California, and the bodies politic of Arizona and California.

159. The Court has granted Defendant a lift of the automatic stay.

160. The Property may be sold at a trustee's sale at any time.

161. Beginning on about November 16, 2005 and continuing to the present time, Defendant, and each of them, wrongfully and unlawfully sought and continue to seek payment from Plaintiff for the "loan".

162. Beginning on about September 23, 2008 and continuing to the present time, Defendant, and each of them, wrongfully and unlawfully seek to foreclose on Plaintiff's home.

06/02/2010

163. Defendant's actual and threatened wrongful conduct, unless and until enjoined and restrained by order of this Court, will cause great and irreparable injury to Plaintiff and his partner. They will lose their home to foreclosure.

164. Plaintiff has no adequate remedy at law for the injuries that have been suffered, are currently being suffered, and that are threatened.

165. It is impossible for Plaintiff to determine the precise amount of damages that he will suffer if Defendant's conduct is not restrained.

166. Plaintiff will be forced to institute a multiplicity of suits to obtain adequate compensation for his injuries.

167. As a proximate result of Defendant's wrongful conduct, Plaintiff's property has been damaged in the amount of at least $675,000.00.

168. Plaintiff will be further damaged in like manner so long as Defendant's conduct continues.

169. The full amount of this damage is not now known to Plaintiff.

170. Plaintiff will amend this complaint to state this amount when it becomes known to him or on proof of the damages.

06/02/2010

**WHEREFORE**, the Plaintiff prays for judgment as follows:

1. For a judgment that Defendant does not have standing to pursue the foreclosure;

2. For an order declaring that the alleged contract between Plaintiff and Defendant is void.

3. For an order requiring Defendant to provide a full accounting;

4. For general and special damages in amounts to be determined;

5. For punitive damages in an amount appropriate to punish Defendant and deter others from engaging in similar misconduct;

6. For a judgment that Plaintiff and his partner are the owners of the Property, and that Defendant has no interest in the Property adverse to the Plaintiff;

7. For an order requiring Defendant to show cause why they should not be enjoined as set forth in this complaint, during the pendency of this action;

8. For a temporary retraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendant, and each of them, and their agents, servants, and employees, and all persons acting under, in concert with, or for them from foreclosing on Plaintiff's home;

7. For costs of suit incurred in this action; and

8. For such other and further relief as the Court may deem reasonable and just under the circumstances.

Dated June 2nd, 2010

Andrew C. Bailey, Plaintiff in Pro Per

- 28 -

06/02/2010

**EXHIBIT I**



**SO ORDERED.**

1   Steven D. Jerome (#018420)
    Andrew V. Hardenbrook (#025518)
2   John M. DeStefano (#025440)
    SNELL & WILMER L.L.P.
3   One Arizona Center
    Phoenix, AZ 85004-2202
4   Telephone: (602) 382-6000
    Facsimile: (602) 382-6070
5   E-mail: sjerome@swlaw.com
          ahardenbrook@swlaw.com
6           jdestafano@swlaw.com
7   Attorneys for Wells Fargo Bank, NA and US Bank, N.A., as
    trustee for WFMBS 2006-AR2

**Dated: July 23, 2010**

REDFIELD T. BAUM, SR
U.S. Bankruptcy Judge

8           IN THE UNITED STATES BANKRUPTCY COURT

9             FOR THE DISTRICT OF ARIZONA

10   In Re:                       Proceedings Under Chapter 11

11   ANDREW C BAILEY,           Case No. 2:09-bk-06979-RTBP

12            Debtor.       Adversary Case No. 2:09-ap-01727-RTBP

13

14   ANDREW C. BAILEY,        **ORDER DISMISSING WITH
                               PREJUDICE DEFENDANTS WELLS**
15           Plaintiff,    **FARGO BANK, N.A. AND U.S. BANK
                             N.A., AS TRUSTEE FOR WFMBS 2006-**
16   v.                      **AR2, FROM PLAINTIFF'S SECOND
                             AMENDED COMPLAINT FOR LACK**
17   WELLS FARGO BANK NA ET AL.,   **OF STANDING, VOID CONTRACT,
                             DAMAGES FOR FRAUD, FALSE**
18           Defendants.   **REPRESENTATION, PREDATORY
                             LENDING, QUIET TITLE, INJUNCTIVE**
19                                **RELIEF**

20

21        Upon consideration of *Defendants Wells Fargo Bank, N.A. and U.S. Bank N.A. as Trustee*

22   *for WFMBS 2006-AR2's Motion to Dismiss Second Amended Complaint for Lack of Standing,*

23   *Void Contract, Damages for Fraud, False Representation, Predatory Lending, Quiet Title,*

24   *Injunctive Relief* (the "Motion to Dismiss", D.E. 43) filed by Defendants, Wells Fargo, N.A. and

25   US Bank, N.A., as trustee for WFMBS 2006-AR2 (the "Defendants"), wherein Defendants

26   requested that this Court dismiss them with prejudice from the second amended complaint

27   (the "Second Amended Complaint", D.E. 38) filed by Plaintiff, Andrew C. Bailey

28

1    (the "Plaintiff"), the response to the Motion to Dismiss filed by Plaintiff [D.E. 46], the hearing on

2    the Motion to Dismiss held on July 22, 2010, the pleadings and papers on file in this case, and

3    good cause appearing therefor:

4         The Court hereby finds that the Second Amended Complaint fails to state a claim against

5    Defendants upon which relief can be granted.  Accordingly:

6         **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that:

7        A.     The Motion to Dismiss is hereby GRANTED in its entirety; and

8        B.     Wells Fargo, N.A. and US Bank, N.A., as trustee for WFMBS 2006-AR2, are

9    hereby dismissed with prejudice from the Second Amended Complaint.

10               **DATED AND SIGNED ABOVE**

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT J**



**This page is part of your document - DO NOT DISCARD**



## 20101070137



**Pages:**
**0003**

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**08/03/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 21.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 21.00 |



LEADSHEET



201008030150006

00002751852

002812540

**SEQ:**
**18**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**

T29

Recording Requested By:
First American Title Insurance Company

When Recorded Mail To:
First American Trustee Servicing Solutions, LLC
f/k/a First American LoanStar Trustee Services, LLC
6 Campus Circle, 2nd Floor
Westlake, TX 76262
(817)699-6035

| | |
|---|---|
| TSG No.: | 3945036 |
| TS No.: | 20089070810770 |
| FHA/VA/PMI No.: | |
| APN: | 5626-005-004 |

Space above this line for Recorder's Use only

## NOTICE OF TRUSTEE'S SALE

YOU ARE IN DEFAULT UNDER A DEED OF TRUST, DATED 11/16/2005. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.

On 08/24/2010 at 11:30 A.M., First American Trustee Servicing Solutions, LLC f/k/a First American LoanStar Trustee Services, LLC, as duly appointed Trustee under and pursuant to Deed of Trust recorded 12/02/2005, as Instrument No. 05 2946072, in book , page , of Official Records in the office of the County Recorder of Los Angeles County, State of California. Executed by:

**ANDREW CAMERON BAILEY and CONSTANCE BAXTER MARLOW,**

WILL SELL AT PUBLIC AUCTION TO HIGHEST BIDDER FOR CASH, CASHIER'S CHECK/CASH EQUIVALENT or other form of payment authorized by 2924h(b), (Payable at time of sale in lawful money of the United States) At the front entrance to the Pomona Superior Courts Building, 350 W. Mission Blvd. Pomona, CA.

All right, title and interest conveyed to and now held by it under said Deed of Trust in the property situated in said County and State described as: AS MORE FULLY DESCRIBED IN THE ABOVE MENTIONED DEED OF TRUST APN# 5626-005-004

The street address and other common designation, if any, of the real property described above is purported to be:

**153 WESTERN AVENUE, GLENDALE, CA 91201**

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein. Said sale will be made, but without covenant or warranty, expressed or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the note(s) secured by said Deed of Trust, with interest thereon, as provided in said note(s), advances, under the terms of said Deed of Trust, fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust. The total amount of the unpaid balance of the obligation secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of the Notice of Sale is **$514,845.54.** The beneficiary under said Deed of Trust heretofore executed and delivered to the undersigned a written Declaration of Default and Demand for Sale, and a written Notice of Default and Election to Sell. The undersigned caused said Notice of Default and Election to Sell to be recorded in the County where the real property is located.

First American Title Insurance Company
First American Trustee Servicing Solutions, LLC f/k/a
First American LoanStar Trustee Services, LLC
3 FIRST AMERICAN WAY
SANTA ANA, CA 92707

Date: 07/28/2010

HANK DUONG

FOR TRUSTEE'S SALE INFORMATION
PLEASE CALL (916)939-0772

First American Trustee Servicing Solutions, LLC
f/k/a First American LoanStar Trustee Services,
LLC MAY BE ACTING AS A DEBT
COLLECTOR ATTEMPTING TO COLLECT
A DEBT. ANY INFORMATION OBTAINED
MAY BE USED FOR THAT PURPOSE.

18

3

# CALIFORNIA DECLARATION

I, _Marsha Graham_ of Wells Fargo Bank, N.A., declare under penalty of perjury, under the laws of the State of California, that the following is true and correct.

The Mortgage Loan Servicer has obtained from the Commissioner of Corporations a final or temporary order of exemption pursuant to California Civil Code Section 2923.53 that is current and valid on the date the accompanying Notice of Sale is filed.

And

The timeframe for giving Notice of Sale specified in subdivision (a) of Civil Code Section 2923.52 does not apply.

Dated: 6-17-09

By: _Marsha Graham_

Title: Assistant Vice President

Name: Marsha Graham

**EXHIBIT K**



This page is part of your document - DO NOT DISCARD

# 20101289934



Pages:
0005

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**09/14/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 24.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 24.00 |



**L E A D S H E E T**



201009140190007

00002960275



002884322

**SEQ:**
**22**

DAR - Title Company (Hard Copy)



**THIS FORM IS NOT TO BE DUPLICATED**                    t29

2

Recording Requested By
First American Trustee Servicing Solutions, LLC f/k/a
First American LoanStar Trustee Services, LLC
6 Campus Circle, 2nd Floor
Westlake  TX
76262



09/14/2010

*20101289934*

**Mail Tax Statements To :**
**Wells Fargo Home Mortgage**
**3476 Stateview Blvd**
**Fort Mill  SC**
**29715**

APN Number :           5626-005-004
Title Order Number :   3945036
TS Number :            20089070810770
Loan Type :            Conventional

# TRUSTEES DEED UPON SALE

The undersigned grantor declares under penalty of perjury
1) The grantee herein WAS the foreclosing Beneficiary
2) The amount of the unpaid debt together with costs was.......... $ 560,730.67
3) The amount paid by the Grantee at the trustee sale was.......... $ 550,000.00
4) The documentary transfer tax is ..................................... $ 0 - Exempt

5) Said property is  INCORPORATED  /  ~~UNINCORPORATED~~  **GLENDALE**

First American Trustee Servicing Solutions, LLC f/k/a First American LoanStar Trustee Services, LLC , (herein called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and convey, but without warranty, expressed or implied to :

US Bank National Association, as Trustee for WFMBS 2006-AR2

(herein called Grantee), all of its right, title and interest in and to that certain property situated in the County of Los Angeles in the State of California, described as follows :

**See Exhibit A attached hereto and made a part hereof.**

Recitals :
This conveyance is made pursuant to the powers conferred upon the Trustee by that certain Deed of Trust dated 11/16/2005 and executed by ,

**ANDREW CAMERON BAILEY and CONSTANCE BAXTER MARLOW**

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY **I.S.**

27

APN Number :      5626-005-004
Title Order Number :  3945036
TS Number :       20089070810770
Loan Type :        Conventional

As Trustor, and recorded 12/02/2005 , as Instrument Number 05 2946072 , in Book  , Page ,  of Official Records of
the County of Los Angeles in the State of California, and after fulfillment of the conditions specified in said Deed of
Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the
County Recorder of said County.

All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil
Code 2924, et. seq., regarding the mailing, publication, personal delivery and posting of the Notice of Default and
Notice of Sale, as respectively appropriate, have been met.

Said property was sold by said Trustee at public auction on 08/24/2010 at the place named in the Notice of Sale, in
the County of Los Angeles in the State of California, in which the property is situated. Grantee, being the highest
bidder at such sale, became the purchaser of said property and paid therefore to said Trustee the amount of
$550,000.00 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligation then secured by
said Deed of Trust

Trustees Deed Upon Sale

Date : _____5/24/10_____

First American Trustee Servicing Solutions, LLC
Formerly First American LoanStar Trustee Services, LLC

By : _____

DeeAnn Gregory, Trustee Officer

State of Texas
County of Tarrant

Before me Therese Pfullmann , on this day personally appeared DeeAnn Gregory, known to me to be the person whose name is subscribed to therefore going instrument and acknowledged to me that this person executed the same for the purposes and considerations therein expressed.

5/24/10

Given under my hand and seal of office this day of _____

Witness my hand and official seal

Signature : _____

THERESE PFULLMANN
Notary Public, State of Texas
My Commission Expires
January 06, 2012

**EXHIBIT L**

**ORIGINAL FILED**

MAR 0 9 2011

**LOS ANGELES SUPERIOR COURT**

1  TFLG A LAW CORPORATION
   NOAH M. BEAN (SBN: 257657)
2  ERIC G. FERNANDEZ, ESQ. (SBN: 269684)
   LAURIE HOWELL, ESQ. (SBN: 098785)
3  2121 2ND STREET, SUITE C-105
   DAVIS, CALIFORNIA 95618
4  TELEPHONE: (530) 750-3700
   FACSIMILE: (530) 750-3366
5
6  Attorney for Plaintiff
   U.S. BANK NATIONAL
7  ASSOCIATION, AS TRUSTEE

8              SUPERIOR COURT OF CALIFORNIA

9                 COUNTY OF LOS ANGELES

10                 GLENDALE COURTHOUSE

11                  LIMITED CIVIL CASE

12  U.S. BANK NATIONAL ASSOCIATION, )  Case No.     11 C 04038
    AS TRUSTEE,                     )
13                                  )
        Plaintiff,                  )
14                                  )   VERIFIED COMPLAINT FOR
    v.                              )   UNLAWFUL DETAINER
15                                  )
    ANDREW CAMERON BAILEY,          )   ACTION BASED ON CCP § 1161a
16  CONSTANCE BAXTER MARLOW, and    )
    DOES 1-5,                       )   AMOUNT DEMANDED DOES NOT
17                                  )   EXCEED $10,000
        Defendants.                 )
18
19
20      Plaintiff alleges:

21      1.      Plaintiff is a Delaware corporation having its principal offices in the City of

22  Minneapolis, State of Minnesota, and is and was at all times mentioned herein qualified to do

23  business in California.

24      2.      The real property, possession of which is sought in this action, is situated in

25  Los Angeles County, California, in the above-named judicial district, and is commonly described

26  as: 153 Western Avenue, Glendale, California 91201.  Assessor's Parcel Number 5626-005-004

27  ("the Property").

28      3.      The true names and capacities of Does 1 through 5, inclusive, are presently

                                        1
                VERIFIED COMPLAINT FOR UNLAWFUL DETAINER

Exhibit A

**BY FAX**

1  unknown to plaintiff, who therefore sues such defendants under such fictitious names pursuant to

2  Section 474 of the California Code of Civil procedure. Plaintiff is informed and believes, and on

3  such information and belief alleges, that each such "Doe" defendant is in possession of the Property,

4  without the permission or consent of plaintiff, and plaintiff will amend this complaint to state the

5  true names and capacities of said defendants when the same have been ascertained.

6      4.   On August 24, 2010, the Property was sold to plaintiff in accordance with

7  Civil Code Sections 2923.5 and 2924 *et seq.* under a power of sale contained in a Deed of Trust

8  dated November 16, 2005, executed by ANDREW CAMERON BAILEY and CONSTANCE

9  BAXTER MARLOW, as trustor(s). Plaintiff's title pursuant to the sale has been duly perfected and

10  a Trustee's Deed conveying title to plaintiff has been duly recorded in the county where the Property

11  is situated. A copy of said Trustee's Deed is attached hereto, marked as Exhibit "A", and

12  incorporated herein by this reference.

13      5.   Plaintiff is the owner of, and entitled to immediate possession of the property.

14      6.   On December 6, 2010, in the manner provided by law, plaintiff caused to be

15  served on defendant a written notice requiring defendants to vacate and deliver up possession of the

16  Property to plaintiff within 90 days after service of said notice. A copy of said Notice is attached

17  hereto, marked as Exhibit "B", and made a part hereof. The Notice was served in the manner

18  provided by law and as more particularly described in the attached Proof of Service, marked as

19  Exhibit "C", which is incorporated herein by this reference.

20      7.   More than 90 days have elapsed since the service of said Notice, but

21  defendants have failed and refused to deliver up possession of the Property.

22      8.   Defendants continue in possession of the Property without plaintiff's

23  permission or consent.

24      9.   The reasonable value for the use and occupancy of the Property is the sum of

25  $60.00 per day, and damages to plaintiff caused by defendants' unlawful detention thereof have

26  accrued at said rate since March 7, 2011, and will continue to accrue at said rate so long as

27  defendants remain in possession of the Property.

28      10.   Pursuant to California Evidence Code Section 453, Plaintiff states that at the

2

**VERIFIED COMPLAINT FOR UNLAWFUL DETAINER**

1   time of trial it will request judicial notice be taken of certified copy of the recorded document

2   referred to in paragraph 4 hereof and all proofs of service then on file herein.

3       WHEREFORE, plaintiff prays judgment against defendants as follows:

4       1.   For restitution and possession of the Property;

5       2.   For damages in the amount of $60.00 per day from March 7, 2011, and for

6            each day that defendants continue in possession of the Property through the

7            date of entry of judgment; and

8       3.   For costs and for such other and further relief as the court may deem just and

9            proper.

10                                  TFLG, A Law Corporation

11

12

13  Dated: March 8, 2011          By:
                                   Noah M. Bean (SBN: 257657)
14                                 Eric G. Fernandez, ESQ (SBN: 269684)
                                   Laurie Howell, ESQ (SBN: 098785)
15                                 U.S. BANK NATIONAL ASSOCIATION,
                                   AS TRUSTEE

16

17

18

19

20

21

22

23

24

25

26

27

28

                                        3

VERIFIED COMPLAINT FOR UNLAWFUL DETAINER

## VERIFICATION

1      I, the undersigned, declare:

2      I have read the foregoing Verified Complaint For Unlawful Detainer and know its contents.

3      I am the attorney or one of the attorneys for U.S. BANK NATIONAL ASSOCIATION, AS

4  TRUSTEE,  a party to this action. Such is absent from the county where I or such attorneys have

5  their offices and is unable to verify the document described above. For that reason, I am making this

6  verification for and on behalf of that party. I am informed and believe and on that basis allege that

7  the matters stated in said document are true and correct.

8      I declare under penalty of perjury under the laws of the State of California that the foregoing

9  is true and correct.

10     Executed this 8th day of March, 2011, at Davis, California.

11

12

13                   By: _____

14                   Laurie Howell, Attorney at Law

15

16

17

18

19

20

21

22

23

24

25

26

27

28

4

VERIFIED COMPLAINT FOR UNLAWFUL DETAINER

Recording Requested By
First American Trustee Servicing Solutions, LLC f/k/a
First American LoanStar Trustee Services, LLC
6 Campus Circle, 2nd Floor
Westlake TX
76262

Mail Tax Statements To :
Wells Fargo Home Mortgage
3476 Stateview Blvd
Fort Mill SC
29715

APN Number :          5626-005-004
Title Order Number :   3945036
TS Number :           20089070810770
Loan Type :           Conventional

## TRUSTEES DEED UPON SALE

The undersigned grantor declares under penalty of perjury
1) The grantee herein WAS the foreclosing Beneficiary
2) The amount of the unpaid debt together with costs was ..........   $ 560,730.47
3) The amount paid by the Grantee at the trustee sale was ..........   $ 550,000.00
4) The documentary transfer tax is ..............................   $ 0 - Exempt

5) Said property is INCORPORATED / ~~UNINCORPORATED~~   GLENDALE

First American Trustee Servicing Solutions, LLC f/k/a First American LoanStar Trustee Services, LLC , (herein
called Trustee), as the duly appointed Trustee under the Deed of Trust hereinafter described, does hereby grant and
convey, but without warranty, expressed or implied to :

US Bank National Association, as Trustee for WFMBS 2006-AR2

(herein called Grantee); all of its right, title and interest in and to that certain property situated in the County of Los
Angeles in the State of California, described as follows :

See Exhibit A attached hereto and made a part hereof.

Recitals :
This conveyance is made pursuant to the powers conferred upon the Trustee by that certain Deed of Trust dated
11/18/2005 and executed by .

ANDREW CAMERON BAILEY and CONSTANCE BAXTER MARLOW

RECORDING REQUESTED BY
FIRST AMERICAN TITLE COMPANY
AS AN ACCOMMODATION ONLY T.S.

Page 2 of 4



APN Number :           5626-005-004
Title Order Number :   3945036
TS Number :            20089070510770
Loan Type :            Conventional

As Trustor, and recorded 12/02/2005 , as Instrument Number 05 2946072 , in Book , Page , of Official Records of the County of Los Angeles in the State of California, and after fulfillment of the conditions specified in said Deed of Trust authorizing this conveyance.

Default occurred as set forth in a Notice of Default and Election to Sell which was recorded in the office of the County Recorder of said County.

All requirements of law and the applicable Deed of Trust including, but not limited to those enumerated by Civil Code 2924, et. seq., regarding the mailing, publication, personal delivery and posting of the Notice of Default and Notice of Sale, as respectively appropriate, have been met.

Said property was sold by said Trustee at public auction on 08/24/2010 at the place named in the Notice of Sale, in the County of Los Angeles in the State of California, in which the property is situated, Grantee, being the highest bidder at such sale, became the purchaser of said property and paid therefore to said Trustee the amount of $550,000.00 in lawful money of the United States, or by the satisfaction, pro tanto, of the obligation then secured by said Deed of Trust

Trustees Deed Upon Sale

Date : __S/24/10__

First American Trustee Servicing Solutions, LLC
Formerly First American LeanStar Trustee Services, LLC

By : _DeeAnn Gregory (signature)_

DeeAnn Gregory, Trustee Officer

State of Texas
County of Tarrant

Notary Public

Before me Therese Pfullmann , on this day personally appeared DeeAnn Gregory,
known to me to be the person whose name is subscribed to therefore going instrument
and acknowledged to me that this person executed the same for the purposes and
considerations therein expressed.

Given under my hand and seal of office this day of _____S/24/10_____

Witness my hand and official seal

Signature : _(signature)_

THERESE PFULLMANN
Notary Public, State of Texas
My Commission Expires
January 09, 2012

5

APN Number:            5626-005-004
Title Order Number:    3945036
TS Number:             20089070810770
Loan Type:             Conventional

## Exhibit A

### Legal Description

LOT 4, BLOCK 6 TRACT NO 10116, IN THE CITY OF GLENDALE, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS SHOWN BY MAP ON FILE IN BOOK 143 PAGES 98 AND 99 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

Page 4 of 4

## NOTICE TO ANY RENTERS LIVING AT
### [CCP § 1161c(b)]

### 153  WESTERN AVENUE, GLENDALE, CA 91201

The attached notice means that your home was recently sold in foreclosure and the new owner seeks to obtain possession of the property by filing an unlawful detainer action in order to lawfully evict you from the premises.

In order to understand your rights you should contact an attorney IMMEDIATELY. Please be advised that you may receive court papers in a few days. If your name is on the papers it may hurt your credit if you do not respond and/or voluntarily vacate the property.

If you do not respond within five days of receiving the papers, even if you are not named in the papers, you will likely lose any rights you may have. In some cases, you can respond without hurting your credit. Again please consult an attorney about these issues.

Please be advised, you may have the right to stay in your home for 60 or 90 days, or longer, regardless of any deadlines stated on any attached papers. In some cases, and in some cities with a "just cause for eviction law," you may not have to move at all. But you must take the proper legal steps in order to protect your rights.

### HOW TO GET LEGAL HELP

If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association

# Exhibit B

## NOTICE TO OCCUPANT(S) TO VACATE PREMISES

Located At:

### 153 WESTERN AVENUE
### GLENDALE, CA 91201

**TO ANDREW CAMERON BAILEY, CONSTANCE BAXTER MARLOW AND ALL PERSONS WHO ARE IN THE POSSESSION OF AND OCCUPY THE REAL PROPERTY AT THE ABOVE ADDRESS:**

**YOU ARE HEREBY NOTIFIED** that your right to occupy the real property at the above address has been terminated as the result of the sale of said property by the Trustee under a power of sale contained in a Deed of Trust which appeared of record against said property.

You are required to quit and deliver up possession of the above real property to the undersigned, as agent for the owner, within the notice period specified below. In the event you fail to do so you will be deemed to be unlawfully detaining the premises, which will result in commencement of court proceedings against you by the owner to recover possession of the premises, together with court costs and the reasonable rental value of the property for each day of your continued occupancy thereof.

### NOTICE

To avoid a lawsuit and the associated expense, it is necessary for you to vacate the above property within THREE (3) Days after service upon you of this Notice, unless (1) you obtained possession of the property as a "tenant or subtenant" under a "lease or rental agreement" as those terms are used in California Code of Civil Procedure section 1161b, in which event it will be necessary for you to vacate the premises within SIXTY (60) DAYS after service upon you of this Notice; or (2) you obtained possession of the property as a "bona fide tenant" under a "bona fide lease" as those terms are used in the Protecting Tenants at Foreclosure Act of 2009 (PTFA), in which event it will be necessary for you to vacate the premises within NINETY (90) days after service upon you of this Notice; however, in order to further assess your rights under the PTFA, please provide a copy of your bona fide lease and/or other proof of bona fide tenancy within 10 CALENDAR DAYS; or (3) you obtained possession of the property as a Section 8 tenant, in which event it will be necessary for you to vacate the premises within NINETY (90) days after service upon you of this Notice. Please provide our office with a copy of your lease or proof of tenancy.

You must contact the undersigned by telephone within 72 HOURS in the event you occupy the property as a tenant or subtenant, and be able to provide proof of tenancy or subtenancy.

This Notice is authorized pursuant to the provisions of Section 1161a(b)(3) of the California Code of Civil Procedure.

DATED: 12/6/2010

Authorized Agent For Owner:
THE ENDRES LAW FIRM

By: _____
Attorney at Law
(530) 601-5166

CaseID 118815

## PROOF OF SERVICE

I, the undersigned, declare that I served the Notice(s) below indicated:

Notice to Occupant(s) to Vacate Premises; Notice to Any Renters Pursuant to Ccp1161c(b)

The above described Notice(s) were served on the following named parties in the manner set forth below:

NAME:     **ANDREW CAMERON BAILEY**
ADDRESS:  **153 WESTERN AVENUE, GLENDALE, CA 91201**

[  ] 1. PERSONAL SERVICE

By delivering a copy of the Notice(s) to each of the above personally:
(1) on:
(2) at:

[ X ] 2. CONSTRUCTIVE SERVICE

After attempting to personally serve said Notice(s) on each of the above named parties on 12/6/2010 at 6:02 PM, and having been unable, by service as authorized by C.C.P. Section 1162 (2,3) in the manner set forth below:

[ X ] By posting a copy for each of the above named parties on 12/6/2010 at 6:02 PM in a conspicuous place on the property;

[ X ] and thereafter mailing a copy to each said party by depositing said copies in the United States mail on (date): December 6th, 2010, from (city): GLENDALE, CA, in a sealed envelope with postage fully prepaid, addressed to each said party at their place where the property is situated or,

[  ] a declaration of mailing is attached.

At the time of service, I was at least 18 years of age. I declare under penalty of perjury that the foregoing is true and correct.

Person who served papers
a. Name:                **Humberto Palacio**
b. Address:             **201 South Figueroa Street, Suite 100, LOS ANGELES, CA 90012**
c. Telephone number:    **213-621-9999**
d. The fee for service was:   **$89.50**
e. I am:
    (1) [  ] not a registered California process server.
    (2) [  ] exempt from registration under Business and Professions Code section 22350(b).
    (3) [ X ] registered California process server.
        (i)   [  ] owner    [  ] employee    [ X ] independent contractor
        (ii)  [ X ] Registration No.:              **2627**
        (iii) [ X ] County:                        **Los Angeles**

[ X ] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    or
[  ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 12/7/2010

_____                    _____
    **Humberto Palacio**                              (SIGNATURE)
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OF OR MARSHAL)

Page 1 of 1

**PROOF OF SERVICE**                              Order No. 6816436 SEAFIL

# Exhibit C

## PROOF OF SERVICE

I, the undersigned, declare that I served the Notice(s) below indicated:
Notice to Occupant(s) to Vacate Premises; Notice to Any Renters Pursuant to Cep1161c(b)

The above described Notice(s) were served on the following named parties in the manner set forth below:

NAME:       CONSTANCE BAXTER MARLOW
ADDRESS:    163 WESTERN AVENUE, GLENDALE, CA 91201

[  ] 1. PERSONAL SERVICE          By delivering a copy of the Notice(s) to each of the above personally:
                                  (1) on:
                                  (2) at:

[ X ] 2. CONSTRUCTIVE SERVICE     After attempting to personally serve said Notice(s) on each of the above named
                                  parties on 12/8/2010 at 6:02 PM, and having been unable, by service as
                                  authorized by C.C.P. Section 1162 (2,3) in the manner set forth below:

        [ X ]  By posting a copy for each of the above named parties on 12/8/2010 at 6:02 PM in a conspicuous place on the
        property;
        [ X ]  and thereafter mailing a copy to each said party by depositing said copies in the United States mail on (date):
        December 8th, 2010, from (city): GLENDALE, CA, in a sealed envelope with postage fully prepaid, addressed to
        each said party at their place where the property is situated or;
        [   ]  a declaration of mailing is attached.

At the time of service, I was at least 18 years of age. I declare under penalty of perjury that the foregoing is true and correct.

Person who served papers
a. Name:              Humberto Palacio
b. Address:           201 South Figueroa Street, Suite 100, LOS ANGELES, CA 90012
c. Telephone number:  213-621-9999
d. The fee for service was:    $
e. I am:
   (1) [   ]  not a registered California process server.
   (2) [   ]  exempt from registration under Business and Professions Code section 22350(b).
   (3) [ X ]  registered California process server:
              (i)  [   ] owner  [   ] employee  [ X ] independent contractor
              (ii) [ X ] Registration No.:      2627
              (iii)[ X ] County:                Los Angeles

[ X ] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
    or
[   ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: 12/7/2010

     Humberto Palacio                          _____
(NAME OF PERSON WHO SERVES PAPERS/SHERIFF OR MARSHAL)              (SIGNATURE)

                                                                              Page 1 of 1

## PROOF OF SERVICE

                                          Order No. 6616436 SEA FIL

## PROOF OF SERVICE

I, the undersigned, declare that I served the Notice(s) below indicated:

Notice to Occupant(s) to Vacate Premises; Notice to Any Renters Pursuant to Ccp1161c(b)

The above described Notice(s) were served on the following named parties in the manner set forth below:

NAME: **ALL PERSONS IN POSSESSION, C/O ANDREW CAMERON BAILEY**
ADDRESS: **153 WESTERN AVENUE, GLENDALE, CA 91201**

[  ] 1. PERSONAL SERVICE

By delivering a copy of the Notice(s) to each of the above personally:
(1) on:
(2) at:

[ X ] 2. CONSTRUCTIVE SERVICE

After attempting to personally serve said Notice(s) on each of the above named parties on 12/6/2010 at 6:02 PM, and having been unable, by service as authorized by C.C.P. Section 1162 (2,3) in the manner set forth below:

[ X ] By posting a copy for each of the above named parties on 12/6/2010 at 6:02 PM in a conspicuous place on the property;

[ X ] and thereafter mailing a copy to each said party by depositing said copies in the United States mail on (date): December 6th, 2010, from (city): GLENDALE, CA, in a sealed envelope with postage fully prepaid, addressed to each said party at their place where the property is situated or,

[  ] a declaration of mailing is attached.

At the time of service, I was at least 18 years of age. I declare under penalty of perjury that the foregoing is true and correct.

Person who served papers
a. Name: **Humberto Palacio**
b. Address: **201 South Figueroa Street, Suite 100, LOS ANGELES, CA 90012**
c. Telephone number: **213-621-9993**
d. The fee for service was: **$**
e. I am:
  (1) [  ] not a registered California process server.
  (2) [  ] exempt from registration under Business and Professions Code section 22350(b).
  (3) [ X ] registered California process server:
    (i) [  ] owner  [  ] employee  [ X ] independent contractor
    (ii) [ X ] Registration No.: **2627**
    (iii) [ X ] County: **Los Angeles**

[ X ] I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

or

[  ] I am a California sheriff or marshal and I certify that the foregoing is true and correct.

Date: **12/7/2010**

**Humberto Palacio**
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)

(SIGNATURE)

Page 1 of 1

## PROOF OF SERVICE

Order No. 8816436 SEAFIL

**EXHIBIT M**

**UD-105**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address): | TELEPHONE NO.: | FOR COURT USE ONLY |
|---|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name and Address):

Andrew C. Bailey, Constance B. Marlow 153 Western Ave, Glendale, CA 91201

ATTORNEY FOR (Name): PRO SE

NAME OF COURT: Superior Court of California, County of Los Angeles
STREET ADDRESS: 600 East Broadway
MAILING ADDRESS:
CITY AND ZIP CODE: Glendale, CA 91206
BRANCH NAME:

PLAINTIFF: US Bank National Association

DEFENDANT: Andrew C. Bailey, Constance B. Marlow

ORIGINAL FILED

MAR 1 8 2011

LOS ANGELES
SUPERIOR COURT

CASE NUMBER: 11C04038

## ANSWER—Unlawful Detainer

1. Defendant (names):   Andrew C. Bailey, Constance B. Marlow

   answers the complaint as follows:

2. **Check ONLY ONE of the next two boxes:**
   a. ☐ Defendant generally denies each statement of the complaint. (Do not check this box if the complaint demands more than $1,000.
   b. ☑ Defendant admits that all of the statements of the complaint are true EXCEPT
      (1) Defendant claims the following statements of the complaint are false (use paragraph numbers from the complaint or explain):     **Paragraphs 4, 5 & 9**
      US Bank National Association lacks standing to bring suit.

      ☑ Continued on Attachment 2b (1).
      (2) Defendant has no information or belief that the following statements of the complaint are true, so defendant denies them (use paragraph numbers from the complaint or explain):

      **Paragraphs 4, 5 & 9**

      ☐ Continued on Attachment 2b (2).

3. AFFIRMATIVE DEFENSES   (NOTE: For each box checked, you must state brief facts to support it in the space provided at the top of page two (Item 3j)).
   a. ☐ (nonpayment of rent only) Plaintiff has breached the warranty to provide habitable premises.
   b. ☐ (nonpayment of rent only) Defendant made needed repairs and properly deducted the cost from the rent, and plaintiff did not give proper credit.
   c. ☐ (nonpayment of rent only) On (date):                           before the notice to pay or quit expired, defendant offered the rent due but plaintiff would not accept it.
   d. ☐ Plaintiff waived, changed, or canceled the notice to quit.
   e. ☐ Plaintiff served defendant with the notice to quit or filed the complaint to retaliate against defendant.
   f. ☐ By serving defendant with the notice to quit or filing the complaint, plaintiff is arbitrarily discriminating against the defendant in violation of the Constitution or laws of the United States or California.
   g. ☑ Plaintiff's demand for possession violates the local rent control or eviction control ordinance of (city or county, title of ordinance, and date of passage):
      **Title VII Protecting Tenants at Foreclosure Act of 2009 Sec 702, Public Law 111-22, May 20, 2009**
      (Also, briefly state the facts showing violation of the ordinance in item 3j.)
   h. ☐ Plaintiff accepted rent from defendant to cover a period of time after the date the notice to quit expired.
   i. ☐ Other affirmative defenses are stated in item 3j.

*Exhibit C*

ANSWER—Unlawful Detainer

Form Approved by the Judicial
Council of California
UD-105 [Rev. January 1, 2007]

Page 1 of 2

Civil Code, §1940 et seq.;
Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

**UD-105**

| PLAINTIFF (Name): US Bank National Association | CASE NUMBER: |
|---|---|
| DEFENDANT (Name): Andrew C. Bailey, Constance B. Marlow | 11C04038 |

3. **AFFIRMATIVE DEFENSES (cont'd)**

j. Facts supporting affirmative defenses checked above (identify each item separately by its letter from page one):

US Bank National Association is not lawful landlord. Defendant is not tenant. Tenants not properly notified. US Bank National Association not identified as creditor in foreclosure pooceedings. Creditor was identified as Wells Fargo Bank National Association.

(1) [✓] All the facts are stated in Attachment 3j.       (2) [ ] Facts are continued in Attachment 3j.

4. **OTHER STATEMENTS**

a. [ ] Defendant vacated the premises on (date):

b. [✓] The fair rental value of the premises alleged in the complaint is excessive (explain):

Current rent is $1200/month

c. [✓] Other (specify):
Defendant is bringing a complaint to quiet title which will determine right of possession.

5. **DEFENDANT REQUESTS**

a. that plaintiff take nothing requested in the complaint.

b. costs incurred in this proceeding.

c. [✓] reasonable attorney fees.

d. that plaintiff be ordered to (1) make repairs and correct the conditions that constitute a breach of the warranty to provide habitable premises and (2) reduce the monthly rent to a reasonable rental value until the conditions are corrected.

e. [ ] Other (specify):
Dismissal for lack of standing and subject matter jurisdiction involving quiet title.

6. [ ] Number of pages attached (specify):

**UNLAWFUL DETAINER ASSISTANT (Business and Professions Code sections 6400- 6415)**

7. (Must be completed in all cases) An unlawful detainer assistant [✓] did not [ ] did   for compensation give advice or assistance with this form. (If defendant has received any help or advice for pay from an unlawful detainer assistant, state:

a. Assistant's name:                                   b. Telephone No.:

c. Street address, city, and ZIP:

d. County of registration:                e. Registration No.:              f. Expires on (date):

ANDREW C. BAILEY
(TYPE OR PRINT NAME)                                              (SIGNATURE OF DEFENDANT OR ATTORNEY)

CONSTANCE B. MARLOW
(TYPE OR PRINT NAME)                                              (SIGNATURE OF DEFENDANT OR ATTORNEY)

(Each defendant for whom this answer is filed must be named in item 1 and must sign this answer unless his or her attorney signs.)

**VERIFICATION**

(Use a different verification form if the verification is by an attorney or for a corporation or partnership.)

I am the defendant in this proceeding and have read this answer. I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Date:

ANDREW C. BAILEY
(TYPE OR PRINT NAME)                                              (SIGNATURE OF DEFENDANT)

**EXHIBIT N**

1   ANDREW CAMERON BAILEY
    CONSTANCE BAXTER MARLOW
2   153 Western Avenue
    Glendale, CA 91201
3
4   Phone: (928) 451-2043
    Email: andrew@cameronbaxter.net
5
6   *Defendants in pro per*

7          SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    COUNTY OF LOS ANGELES

9

10  US BANK NATIONAL ASSOCIATION      CASE NO:  11C04038

11  AS TRUSTEE FOR WFMBS 2006-AR2

12          **Plaintiff**                DEMURRER TO PLAINTIFF US

13                                       BANK NATIONAL ASSOCIATION 'S

14  Vs                                   UNLAWFUL DETAINER

15                                       COMPLAINT

16  ANDREW CAMERON BAILEY

17  CONSTANCE BAXTER MARLOW             Hearing Date: May 6, 2011
            **Defendants**
18                                       Time: 8:30 AM

19                                       Place: Glendale Superior Court

20

21

22  Defendants Andrew Cameron Bailey and Constance Baxter Marlow demur to the Cause of

23  Action of the complaint filed by Plaintiff US Bank National Association As Trustee For

24  WFMBS 2006-AR2 on the grounds set forth below:

25                          *Exhibit D*

                            -1-

1. Defendants demur to the Complaint, pursuant to California Code of Civil Procedure CCP §430.10, on the following grounds:

- Another action is pending between the same parties for the same cause of action, to wit Case No. CV11-3227 GW(CWX) in the United States District Court for the Central District Of California.
- The Complaint fails to state facts sufficient to constitute a cause of action.

2. This Demurrer is supported by the following Memorandum of Points and Authorities.

**Memorandum of Points and Authorities**

3. California Code of Civil Procedure §430.10 states: §430.10. The party against whom a Complaint or cross-Complaint has been filed may object, by demurrer or answer as provided in Section 430.30, to the pleading on any one or more of the following grounds: (a) The court has no jurisdiction of the subject of the cause of action alleged in the pleading. (b) The person who filed the pleading does not have the legal capacity to sue. (c) There is another action pending between the same parties on the same cause of action. (d) Failure to state facts sufficient to constitute a cause of action.

4. The main issue in an unlawful detainer (UD) case is possession. The pending quiet title action over ownership will necessarily decide the issue of possession. There is another action pending in this matter and that is a basis to sustain a demurrer to the UD complaint. The pending action is Case No. CV11-3227 GW(CWX) in the United State District Court for the Central District Of California.

Bank NA, not US Bank. US Bank was not mentioned anywhere in the sale proceedings.

19. Plaintiff US Bank bases its claim for title and possession on the allegation that it is the Trustee for the WFMBS 2006-AR2 Trust that includes Plaintiff's loan.

20. No evidence has ever been offered that the Note is in the WFMBS 2006-AR2 Trust. In fact, the evidence shows that Defendants' promissory note was never properly or timely added into the Trust.

21. The copy of the Note offered as exhibit "A" on July 9, 2009 and certified as a true and correct copy has no endorsement or allonge assigning the note to the Trust or to anyone else.

22. Plaintiff has provided no evidence that Note was timely assigned/transferred/conveyed to the WFMBS 2006-AR2 Trust pursuant to the February 1, 2006 Pooling and Servicing Agreement (PSA).

23. Defendants' loan was not timely assigned to the Trust pursuant to terms of the Pooling and Servicing Agreement (PSA) for WFMBS 2006-AR2, a New York common law trust. The Note is not lawfully in the Trust. Therefore US Bank as Trustee and its agents and assigns lack any authority or standing to do anything.

24. Further, according to the PSA, the "loan originator" Wells Fargo Bank NA sold Defendants' loan to Lehman et al pursuant to PSA on or before February 26, 2006.

25. There is a question of law as to Lehman's interest. The PSA says the loan was sold to

1   Lehman on or before February 26, 2006. Lehman declared bankruptcy on Sept 15, 2008.

2   The subject property is subject to the control of the U.S. Trustee in Lehman's bankruptcy

3   proceedings.

4

5   26. The Deed of Trust was belatedly assigned to US Bank on January 29, 2009 on dubious

6   authority. The parties appear to have improperly granted each other authority when

7   convenient.

8   27. The PSA required the Mortgage to be assigned to US Bank on or before February 26,

9   2006.

10

11  28. The authority relied upon in the foreclosure was a Limited Power of Authority (LPOA)

12  issued by US Bank to Wells Fargo before the date of assignment to US Bank. Stay relief

13  was thus granted and the trustee's sale was thus conducted upon the dubious and challenged

14  authority of the LPOA, which neither asserts nor confers any authority.

15

16  29. The chain of title is broken. There are three undated unrecorded true sales in the chain

17  of title.

18

19  30. As set forth above, the Note was never lawfully put into the trust, and the Deed of Trust

20  was assigned years too late. Consequently:

21      (i) US Bank had no authority or standing.

22      (ii) The Trustee's Deed upon Sale is a false and fraudulent document.

23

24      (iii) The LPOA is a false and defective document. The Automatic Stay was lifted on

25  basis of the LPOA. Defendants' counsel admitted that Wells Fargo was not the beneficiary

-- 6 --

1   as asserted in their motion for stay relief, but claimed the LPOA as authority. The

2   bankruptcy court relied upon the LPOA in lifting the automatic stay.

3

4   31. The Complaint asserts that US Bank purchased the property at the August 24, 2010

5   auction. This assertion contradicts the trust's February 1, 2006 pass-through conduit

6   pooling and servicing agreement. The cut-off date shows that the trust didn't purchase the

7   property at the August 24, 2010 auction. It is clear that Plaintiff US Bank has not stated

8   facts constituting a cause of action.

9   32. Defendants have not had their day in court. The essential issues have not been fully and

10  fairly disposed of in any earlier proceeding. Stay Relief is a summary proceeding, not a trial

11  on the merits. No discovery has been allowed or conducted. No full and fair hearing on the

12  merits has been held.

13

14  33. The essential issues, including the issue of right to possession, will be fully and fairly

15  disposed of in the Federal District Court proceedings.

16  **CONCLUSION**

17  On the basis of the facts set forth above and for cause shown, the Defendants' demurrer to

18  the Complaint should be sustained.

19

20  **WHEREFORE**, defendants request that:

21

22  1. Defendant's demurrer be sustained without leave to amend;

23

24  2. The court enter an order dismissing the action;

25  3. Defendant be awarded the costs of this action; and

-7-

4. The court grant such other and further relief that the court considers proper.

Respectfully submitted this April 18th, 2011

_Andrew C. Bailey_

**Andrew C. Bailey, Defendant Pro Se**

_Constance B. Marlow_ pro se

**Constance B. Marlow, Defendant Pro Se**

## NOTICE OF SERVICE

Copy of the foregoing mailed this April 18, 2011 to:

TFLG a Law Firm,
Noah M. Bean, Esq.
Eric G. Fernandez, Esq.
Laurie Howell, Esq.
2121 2nd Street, Suite C-105
Davis, CA 95618

**EXHIBIT O**

1   **ANDREW CAMERON BAILEY**
2   **CONSTANCE BAXTER MARLOW**
    153 Western Avenue
3   Glendale, CA 91201

4   Phone: (928) 451-2043
5   Email: andrew@cameronbaxter.net

6   Defendants in pro per

7

8   **ORIGINAL** UNITED STATES DISTRICT COURT

9       CENTRAL DISTRICT OF CALIFORNIA   "fuPaid"

10

11      National Association
12  U.S. BANK NA AS TRUSTEE,        CV11-3770-GW(Ex)
                                    Case No: _____
13              Plaintiff,

14

15                              NOTICE OF REMOVAL OF
16          vs.                 ACTION UNDER 28 U.S.C. § 1441

17  **ANDREW CAMERON BAILEY**
18  **CONSTANCE BAXTER MARLOW** and   **Removal of California Superior**
    DOES 1-5,    Defendants.    **Court Case No. 11C04038**
19

20

21  TO: THE CLERK OF THE ABOVE-ENTITLED COURT AND ALL

22  INTERESTED PARTIES:

23

24      PLEASE TAKE NOTICE that Defendants Constance Baxter Marlow and

25  Andrew Cameron Bailey, (hereinafter "removing defendants") who are California

26  residents, hereby remove Los Angeles County Superior Court Case No. 11C04038

27  to the United States District Court for the Central District, Los Angeles Division.

28

ORIGINAL


PAID

MAY 2 2011

Clerk, U.S. District Court

1

2      1.      On or about March 9, 2011, an action was commenced in the

3  Superior Court of the State of California in and for the County of Los Angeles,

4  entitled U.S.BANK NATIONAL ASSOCIATION, AS TRUSTEE, "Plaintiff" vs.

5  ANDREW CAMERON BAILEY, CONSTANCE BAXTER MARLOW AND

6  DOES 1 – 5, "Defendants", as Case No. 11C04038. A true and correct copy of

7  the Complaint is attached hereto as Exhibit "A".

8

9      2.      The first date upon which removing defendants Constance Baxter

10  Marlow and Andrew Cameron Bailey received a copy of said Complaint and the

11  Summons in the action was on or about March 14, 2011. A true and correct copy

12  of the Summons that accompanied the Complaint is attached hereto as Exhibit

13  "B".

14

15      3.      On or about March 18, 2011, removing defendants filed an answer to

16  the complaint; a true and correct copy of the answer is attached hereto as Exhibit

17  "C".

18

19      4.      On or about April 12, 2011, removing defendants filed a Demurrer to

20  the Complaint; a true and correct copy is attached hereto as Exhibit "D".

21

22      5.      On or about April 25, 2011, plaintiffs filed an Opposition to the

23  Demurrer to the Complaint; a true and correct copy is attached hereto as Exhibit

24  "E".

25

26      6.      Removing defendants are the trustors under a deed of trust secured by

27  the property that is the subject of plaintiff's complaint 153 Western Avenue,

28  Glendale, California (the "Property") with the beneficiary being WELLS FARGO

1  BANK, NA and/or US BANK, NATIONAL ASSOCIATION AS TRUSTEE

2  FOR WFMBS, MORTGAGE ASSET-BACKED PASS-THROUGH

3  CERTIFICATES SERIES 2006-AR2.

4

5         7.     On or about April 15, 2011, removing defendants filed in the United

6  States District Court, Central District of California, Case No. CV11-3227 GW

7  (CWx) Complaint to Quiet Title to Real Property and for Injunctive Relief.

8  Additional causes of action exist and may be asserted for Fraud, TILA and

9  RESPA violations, Wrongful Foreclosure, *inter alia.*

10

11         8.     Once a case number has been assigned to the removed case,

12  removing defendants will move this Court to consolidate the two cases, which

13  address the same issues. Resolution of the quiet title action will necessarily

14  determine right of possession.

15

16         9.     Removing defendants allege that Title is in question as a result of

17  violations of federal law and New York Trust law, *inter alia.*

18

19        10.    Moreover, removing defendants respectfully submit to this Court that

20  U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2 through its counsel of

21  record filed the underlying complaint without providing evidence that it can meet

22  the prima facie requirements necessary to establish its standing or real party in

23  interest status to bring its complaint. Plaintiff failed to provide any evidence that

24  defendants' loan is in the WFMBS 2006-AR2 Trust, and did not provide a properly

25  endorsed and "duly perfected" promissory note and properly certified and "duly

26  perfected" deed of trust, thus rendering its non-judicial foreclosure sale and or

27  purchase of Defendants' home and the resulting trustee's deed upon sale void as a

28

1  matter of law.

2

3      11.    Removing defendants' allegations in the pending Federal Court

4  Complaint are primarily premised upon the true dispute as to ownership of the

5  subject Property.

6

7      12.    This Court has original jurisdiction of this civil action pursuant to 28

8  U.S.C. § 1331, and hence this action may be removed to this Court by removing

9  defendant pursuant to the provisions of 28 U.S.C. § 1441(b) in that Plaintiff's

10  allegations and claims appear to arise under the following federal statutes: 28

11  U.S.C. § 1446; violation of RESPA 12 U.S.C. § 2605, violation of Truth in

12  Lending Act 15 U.S.C. § 1601 et. seq., violation of Fair Debt Collection Practices

13  Act 15, U.S.C. §§ 1692 et. seq., rescission pursuant to TILA 15 U.S.C. § 1635(a)

14  and Regulation Z § 226.23(a)(3).

15

16      13.    Pursuant to 28 U.S.C. §1445(a), removing defendants filed this

17  Notice of Removal in the District Court of the United States for the District and

18  Division within which the State Court action is pending.

19

20      14.    Pursuant to 28 U.S.C, § 1446(a) hereby attached as Exhibits A-E, are

21  true and correct copies of all pleadings filed with the state court that are in

22  possession of the removing defendants.

23

24      15.    Pursuant to 28 U.S.C. § 1446(d), removing defendants will promptly

25  give written notice of the removal to all adverse parties and will file a copy of the

26  notice with the clerk of the Los Angeles County Superior Court.

27

28

4

NOTICE OF REMOVAL

1   16.  Removing defendants reserve the right to supplement this Notice of

2   Removal when additional information becomes available. Removing defendants

3   further reserve all rights including, but not limited to, defenses and objections as

4   to venue, personal jurisdiction and service. The filing of this Notice of Removal is

5   subject to and without waiver of any such defense or objection.

6

7       WHEREFORE, removing defendants hereby remove Los Angeles County

8   Superior Court Case No.11CO4038 to the United States District Court for the

9   Central Division of California.

10

11  DATED:  April 30, 2011

12

13

14

15  Andrew Cameron Bailey, Defendant in Pro Per

16

17

18

19  Constance Baxter Marlow, Defendant in Pro Per

20

21  Copy of the foregoing mailed on April 30, 2011 to:

22

23  TFLG a Law Firm,
    Noah M. Bean, Esq.

24  Eric G. Fernandez, Esq.
    Laurie Howell, Esq.

25  2121 2nd Street, Suite C-105

26  Davis, CA 95618

27  Attorneys for Plaintiff U.S. BANK NA AS TRUSTEE FOR WFMBS 2006-AR2

28

5

NOTICE OF REMOVAL

## CERTIFICATE OF SERVICE

I, the undersigned, declare that I am over the age of 18 and am not a party to this action. I am employed in the City of Irvine, California. My business address is Severson & Werson, 19100 Von Karman Avenue, Suite 700, Irvine, California 92612.

On the date below I served the within document(s) described as: **REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO CONSOLIDATE** on the interested parties in this action:

☒ by placing ☐ the original ☒ true copy(ies) thereof enclosed in sealed envelope(s) ☐ addressed as follows: ☐ address as stated on the attached mailing list.

Andrew Cameron Bailey        Plaintiffs in pro per
Constance Baxter Marlow
153 Western Avenue
Glendale CA 91201

☒ **BY MAIL** (C.C.P. § 1013(a)) - I deposited such envelope(s) for processing in the mail room in our offices. I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. It is deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Irvine, California, in the ordinary course of business. I am aware that on motion of a party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after the date of deposit for mailing in affidavit.

☐ **(BY ELECTRONIC SERVICE)** Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities. The Court's CM/ECF system sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.

☒ **FEDERAL** - I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. Executed on May 24, 2011, at Irvine, California.

By: _Linda D. Owen_
        LINDA D. OWEN